1  Gary E. Mason (pro hac vice)
   gmason@masonlawdc.com
2  Donna F. Solen (pro hac vice)
   dsolen@masonlawdc.com
3  MASON LLP
   1625 Massachusetts Ave., NW
4  Washington, DC  20036
   Telephone:  (202) 429-2290
5  Facsimile:  (202) 429-2294

6  Michael F. Ram (SBN 104805)
   mram@ramolson.com
7  RAM & OLSON LLP
   555 Montgomery Street, Suite 820
8  San Francisco, California  94111
   Telephone:  (415) 433-4949
9  Facsimile:  (415) 433-7311

10 [Additional Counsel listed on signature page]

11 Attorneys for Plaintiff and the Proposed Class

13            **THE UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14                         **SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE USER PRIVACY LITIGATION | Case No.: 10-CV-00672-JW |
| This Pleading Relates To: ALL CASES | **CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT** |
| | DEMAND FOR JURY TRIAL |

Plaintiffs, ANDRANIK SOUVALIAN ("Plaintiff Souvalian"), KATHERINE C. WAGNER ("Plaintiff Wagner"), and MARK NEYER ("Plaintiff Neyer"), BARRY FELDMAN ("Plaintiff Feldman"), ROCHELLE WILLIAMS ("Plaintiff Williams"), JOHN CASE ("Plaintiff Case"), and LAUREN MAYTIN ("Plaintiff Maytin"), by and through their attorneys, allege on personal knowledge as to all facts related to themselves and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiffs through their counsel and personal knowledge, as follows:

**PRELIMINARY STATEMENT**

1. This is a class action lawsuit, brought by, and on behalf of, a nationwide class of individuals whose privacy rights were violated by the actions of Google Inc. ("Google") through its Buzz program.

2. Google automatically added the Google Buzz service to the accounts of all users of Google's "Gmail" service.

3. Google Buzz made private data belonging to Gmail users publicly available without the users' knowledge or authorization. This information included some or all of the following: personal contact information, place of residence, occupation, and a list of the users' frequent email contacts.

4. Google Buzz searched for and acquired pictures, video, text and other data that users had posted to websites such as Picasa and YouTube. Buzz automatically sent those posts to the email accounts of the users' frequent email contacts without the users' knowledge or authorization.

5. When launching its Buzz service, Google failed to provide users with clear information detailing the nature of the new service, including the automatic application of the Buzz program and its provisions for default disclosure of personal information and default sharing of posts previously made to other websites.

6. Google has publicly admitted that its Buzz program presents privacy concerns, and Google has made several waves of modifications to the program. However, Google's modifications do not go far enough to address the problem. Furthermore, Google's actions have already caused damage because the Buzz program disclosed private user information the moment Google launched the service. The bell of breached privacy cannot be un-rung.

7. Google's public disclosure of private user data violates users' rights under the Federal Wiretap Act, the Federal Computer Fraud and Abuse Act, the Federal Stored Communications Act, and California common law.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for deprivation of rights guaranteed under the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' state common law claims. Jurisdiction is also founded upon 28 U.S.C. § 1332(d) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and minimal diversity of citizenship.

9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and (c). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. Defendant Google resides here as it maintains its principle office and headquarters in this District.

## PARTIES

10. Plaintiff Andranik Souvalian is a user of Google's "Gmail" email service. He is a citizen of Cranston, Rhode Island. Prior to Google's launch of the Buzz program, Plaintiff Souvalian used the Gmail program to create a personal "Google Profile." Google automatically activated the Buzz program on Plaintiff Souvalian's email account. As a result, Buzz broadcast his personal information, including a list of his frequent email contacts and the information stored in his Google Profile, to other Gmail users and/or made this information publicly viewable on the Internet.

11. Plaintiff Katherine C. Wagner is a user of Google's "Gmail" email service. She is a citizen of New Hanover County, State of North Carolina. Google automatically activated the Buzz program on Plaintiff Wagner's email account, as a result of which Buzz broadcast her personal information to other Gmail users and/or made this information publicly viewable on the Internet.

12. Plaintiff Mark Neyer is a user of Google's "Gmail" email service. He is a citizen of Orange County, State of North Carolina. Google automatically activated the Buzz program on Plaintiff Neyer's email account, as a result of which Buzz broadcast his personal information to

1  other Gmail users and/or made this information publicly viewable on the Internet.

2       13.   Plaintiff Barry Feldman is a user of Google's "Gmail" email service. He is a
3  citizen of New York, New York. Google automatically activated the Buzz program on Plaintiff
4  Feldman's email account, as a result of which Buzz broadcast his personal information to other
5  Gmail users and/or made this information publicly viewable on the Internet.

6       14.   Plaintiff Rochelle Williams is a user of Google's "Gmail" email service. She is a
7  citizen of Alameda, California. Google automatically activated the Buzz program on Plaintiff
8  Williams' email account, as a result of which Buzz broadcast her personal information to other
9  Gmail users and/or made this information publicly viewable on the Internet.

10      15.   Plaintiff John Case is a user of Google's "Gmail" email service. He is a citizen of
11 Colorado. Google automatically activated the Buzz program on Plaintiff Case's email account,
12 as a result of which Buzz broadcast his personal information to other Gmail users and/or made
13 this information publicly viewable on the Internet.

14      16.   Plaintiff Lauren Maytin is a user of Google's "Gmail" email service. She is a
15 citizen of Colorado. Google automatically activated the Buzz program on Plaintiff Maytin's
16 email account, as a result of which Buzz broadcast her personal information to other Gmail users
17 and/or made this information publicly viewable on the Internet.

18      17.   Defendant Google Inc. is a Delaware corporation headquartered at 1600
19 Amphitheatre Parkway, Mountain View, CA 94043. Google provides a variety of Internet-
20 related services, including email service through its "Gmail" program. Google does business
21 throughout the United States, and in particular, does business in the State of California and in this
22 district.

### STATEMENT OF COMMON FACTS

24      18.   Google launched the Google Buzz program on or about Tuesday, February 9,
25 2010. Google Buzz enables users of Google's "Gmail" service to share written posts, photos,
26 hyperlinks, and other information with other Gmail users. It is Google's attempt to compete with
27 social networking programs such as Facebook and Twitter.

28      19.   To jump-start that competition, Google, without any authorization by Gmail users,

automatically added Google Buzz to the accounts of all Gmail users.

20. When Buzz was first rolled out on February 9, Gmail users who accessed their mail accounts were initially given two options: (1) set up Google Buzz; or (2) continue to Gmail inbox. Regardless of which option the user chose, Google automatically activated the Buzz program on that user's Gmail account. Option (2) therefore deceptively implied that by selecting it, and not the "set up Google Buzz" option, the user was not activating Buzz. In fact Google activated Buzz even if the user did not elect to "set up" the program.

21. Google Buzz automatically created a list of "followers" for each Gmail user.

22. Google Buzz also automatically created a list of persons whom the user was automatically "following."

23. Google Buzz "posted" to Buzz any information that was previously posted to certain other websites, some of which are owned by Google, including but not limited to Picasa, YouTube, Google Reader, and Twitter.

24. Google created the "follower" and "following" lists by using an algorithm that selected those email contacts with whom a Gmail user communicated most frequently. This meant that Google shared information about a Gmail user with the users' frequent mail contacts. By contrast, a social networking program such as Facebook shares information with "Friends" only after both parties have agreed to become Friends. An individual's email contacts may be a different group of people (for example, professional contacts) than the group with whom a user would want to be in a *social* network. By implementing the Buzz program, Google forced upon its Gmail users Google's own definition of an appropriate social network, all in an effort to jump-start Google's entry into a new consumer market.

25. Google does not provide Gmail users with sufficient control over the user's followers. For example, any person who has exchanged at least one email with the user can add the user to his "following" list and immediately view the user's profile, buzz posts, and "follower" and "following" list. The user receives no notice of the new follower, nor does the user have an opportunity to block the new follower before the follower views her information. This is in contrast to other social networking sites such as Facebook, in which users must approve

a new "friend" before the friend can view the user's profile and newsfeed items.

26. When Google automatically activated Google Buzz in a user's Gmail account, Google's unilateral actions had significant privacy consequences, including but not limited to:

- the "following" and "follower" lists of each user were made publicly available on the web;

- the "following" and "follower" lists of each user were made available to persons following that user;

- followers could view any information posted on Buzz by someone they were following;

- for Gmail users who had created a "Google Profile," the contents of the profile became visible to all persons who were "following" the user. A user's Google Profile may contain information such as the user's occupation, place of residence, and contact information;

- for Gmail users who had created a "Google Profile," the "following" and "follower" lists of the user became visible to all persons who were "following" the user, and were made publicly available to be searched and viewed by any person on the Internet.

27. Google's own privacy policy confirms these points:

When you first enter Google Buzz, to make the startup experience easier, we may automatically select people for you to follow based on the people you email and chat with most. Similarly, we may also suggest to others that they automatically follow you . . . Your name, photo, and the list of people you follow and people following you will be displayed on your Google profile, which is publicly searchable on the Web.

Google Buzz Privacy Policy, February 11, 2010, available at

http://www.google.com/buzz/help/intl/en/privacy.html.

28. The procedures by which Gmail users could opt-out of Buzz were either unavailable or difficult to understand and execute.

29. Google's automatic sharing of user contact information, profile information, and postings had the effect of revealing to the public confidential and sometimes highly sensitive information. This means that, for example, the names of a doctor's patients or a lawyer's clients were made public in contravention of the privileges that attach to those relationships. Private contacts - for instance, the contacts of a gay person who was struggling to come out of the closet and had contacted a gay support group - could be revealed to the world. Sensitive personal information might be exposed to an employer, or an ex-spouse.

30. This parade of horribles is more than hypothetical. The media reported the following exemplary accounts:

- The Buzz program made publicly viewable the "follower" and "following" lists of Andrew McLaughlin, Deputy Chief Technology Officer in charge of Internet policy for the Obama administration. The lists revealed Mr. McLaughlin's continuing close connections with many higher-ups at Google, prompting one consumer advocacy group to raise questions about Mr. McLaughlin's impartiality and to file a FOIA request seeking access to all emails between Mr. McLaughlin and Google executives, employees, and paid lobbyists. Jessica Guynn, *Watchdog Group Requests White House Official's E-mail After Google Buzz Mishap*, L.A. Times Technology Blog, April 1, 2010, available at http://latimesblogs.latimes.com/technology/2010/04/google-buzz-privacy-lobbyist.html.

- A mother who discovered that the Buzz program shared messages posted by her 9-year-old daughter with an anonymous stranger who had adopted a sexually explicit username. Jessica Guynn, *Google Buzz May Put Children at Risk, Parents Fear*, L.A. Times, February 23, 2010, available at http://articles.latimes.com/2010/feb/23/business/la-fi-google-privacy23-2010feb23.

- A woman whose contact information was made available to her abusive ex-boyfriend because Google Buzz automatically selected him as one of her "followers" in Google Buzz. *See* Miguel Helft, *Critics Say Google Invades Privacy With a New Service*, N.Y. Times, February 13, 2010.

- Lawyers and journalists concerned that Google Buzz might reveal confidential client and contact lists. Don Cruse, *Lawyers (or journalists) with Gmail Accounts: Careful with the Google Buzz*, February 11, 2010, available at http://www.scotxblog.com/legal-tech/lawyer-privacy-on-google-buzz.

- A political commentator concerned that authoritarian governments might "check on Google Buzz accounts for political activists and see if they have any connections that were previously unknown to the government." Evgeny Morozov, *Wrong Kind of Buzz Around Google Buzz*, February 11, 2010, available at http://neteffect.foreignpolicy.com/posts/2010/02/11/wrong_kind_of_buzz_around_google_buzz.

31. A Google spokesperson confirmed to one blogger that Buzz automatically makes user contact lists public:

> [B]efore you change any settings in Google Buzz, someone could go into your profile and see the people you email and chat with most.
>
> A Google spokesperson asked us to phrase this claim differently. Like this: "In other words, after you create your profile in Buzz, if you don't edit any of the default settings, someone could visit your profile and see the people you email and chat with most (provided you didn't edit this list during profile creation)."

Nicholas Carson, *WARNING: Google Buzz has Huge Privacy Flaw*, February 10, 2010, available

at http://www.businessinsider.com/warning-google-buzz-has-a-huge-privacy-flaw-2010-2.

**Google Admits to Privacy Problems with Buzz**

32. On Thursday, February 11, 2010, Google reacted to the stream of negative press and blog postings by changing some of the default settings in Google Buzz.

33. Also on February 11, Google issued an official blog posting in which the company admitted that many users had concerns that Buzz violated their privacy. Todd Jackson, *Millions of Buzz Users, and Improvements Based on Your Feedback*, February 11, 2010, available at http://gmailblog.blogspot.com/.

34. Despite making several rounds of modifications in the week after introducing Buzz, Google has not sufficiently altered the Buzz program to remedy the ongoing privacy violations caused by Buzz. For example, the information sharing features of the Buzz program continue to operate unless the user affirmatively opts out of these features, and users still lack the ability to block some new followers before these followers can view the user's information.

35. In a March 25 letter, eleven members of the U.S. Congress wrote to the Chair of the Federal Trade Commission requesting that the FTC investigate Google's roll out of the Buzz program in order to "determine whether Google failed to adequately protect consumers' privacy rights." The letter implies that the Buzz program represents a "change in the company's privacy practices" and asks the FTC to determine how Google will "revise the Gmail privacy policy, notify consumers, and obtain consent for this change."

36. On April 4, 2010, Google announced that the next day Google would present every Buzz user with a screen asking the user to confirm that "Buzz is set up just the way you like it." *See* Robin Wauters, *Google to Buzz Users: Are You Sure You're Not Oversharing*, TechCrunch, April 5, 2010, *available at* http://techcrunch.com/2010/04/05/google-buzz-privacy-reset/. The screen allows the user to make her "follower" and "following" lists private by "unchecking" the appropriate box. *Id.* The user may also click through to another screen in order to block particular unwanted followers. *Id.*

37. Despite Google's decision to present each user with this "confirmation" screen,

1  the default choice selected by Buzz still makes the user's "follower" and "following" list publicly
2  available. The onus remains on the user to affirmatively opt-out of public sharing of "follower"
3  and "following" lists.

4      38.    Google's official Privacy Policy assures customers that, because "[p]eople have
5  different privacy concerns and needs. . . Google strives to offer [its users] *meaningful and fine*
6  *grained choices* over the use of their personal information." Google Privacy Policy,
7  http://www.google.com/privacy.html.

8      39.    By automatically sharing user information without user authorization or
9  knowledge, Google Buzz does precisely the opposite. Far from granting its customers a fine-
10 grained set of controls by which users can control the use of their personal data, the Google Buzz
11 program is an indiscriminate bludgeon, forcing all Gmail users to share their personal data in a
12 public forum without their consent or knowledge.

13 **CLASS ALLEGATIONS**

14     40.    Plaintiffs bring this complaint on behalf of themselves and the class of all Gmail
15 users who reside in the United States and to whose accounts Google added the Buzz social
16 networking application.

17     41.    The members of the putative class are so numerous that joinder of individual
18 claims is impracticable. In January of 2009, Gmail had 31.2 million users in the United States.
19 Anthony Ha, *Zimbra Tops 40M Paid Users: More Popular Than Gmail?*, March 5, 2009,
20 available at http://venturebeat.com/2009/03/05/zimbra-tops-40m-paid-users-more-popular-than-
21 gmail/. Google automatically added the Buzz program to most or all of these accounts.

22     42.    There are significant questions of fact and law common to the members of the
23 class. These issues include: whether the Google Buzz program publicly shared user information
24 and if so, what user information Google shared and how; whether Google failed to provide
25 adequate information and opt out procedures for its Gmail users; whether by committing these
26 acts and omissions Google violated federal and state laws; and whether class members are
27 entitled to injunctive, declarative and monetary relief as a result of Google's conduct.

28     43.    Plaintiffs' claims are typical of the claims of the putative class. Plaintiffs and all

members of the putative class have been adversely affected and damaged in that Google publicly shared their private information without the class members' knowledge or consent.

44. The proposed class representatives will fairly and adequately represent the putative class because they have the class members' interest in mind, their individual claims are co-extensive with those of the class, and because they are represented by qualified counsel experienced in class action litigation of this nature.

45. A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative class is impracticable. Many members of the class are without the financial resources necessary to pursue this matter. Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Google's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economy of scale and comprehensive supervision over the entire controversy by a single court.

46. The putative class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Google has acted on grounds generally applicable to the putative class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the class.

47. The putative class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to class members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT ONE

**(Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)**

48. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1

through 38 above.

49. Defendant Google provides an electronic communications service to the public via its "Gmail" email program. 18 U.S.C. § 2510(15).

50. A user's contact list is an electronic communication within the meaning of 18 U.S.C. § 2510(12).

51. As part of its Gmail service, Google holds its users' contact lists in electronic storage on its servers. 18 U.S.C. § 2510(17).

52. The Buzz program automatically creates for each user a list of "followers" and "persons following" the user. Buzz creates the follower/following list by selecting the most frequent contacts on the user's contact list.

53. A user's follower/following list is an electronic communication within the meaning of 18 U.S.C. § 2510(12).

54. Google holds its users' follower/following lists in electronic storage. 18 U.S.C. § 2510(17).

55. By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

56. A Gmail user's Google Profile is created by the user and contains information that the user chooses to place in her Profile, such as the user's contact information, likes and dislikes, occupation, etc.

57. A user's Google Profile is an electronic communication within the meaning of 18 U.S.C. § 2510(12).

58. Google holds its users' Google Profiles in electronic storage. 18 U.S.C. § 2510(17).

59. By sharing users' Google Profiles with the users' "followers" without consent from its users, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

60. Pictures, videos, and text that individuals post on public websites such as Picasa and YouTube are electronic communications with the meaning of 18 U.S.C. § 2510(12).

61. Google holds information that individuals have posted to Picasa, YouTube, and other public websites owned by Google in electronic storage. 18 U.S.C. § 2510(17).

62. Without authorization or consent from its users, the Google Buzz program searches for and collects information that its users have posted on various public websites owned by Google, including but not limited to Picasa and YouTube. The Buzz program then sends the collected information to the user's "followers."

63. By sharing with the users' "followers" posts that users had placed on YouTube, Picasa, and other websites, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

64. Google provides remote computing services to the public because it provides computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

65. Google carries and maintains its users' contact lists, follower/following lists, Google Profile information, and Picasa, YouTube, and other website posts solely for the purpose of providing storage and computer processing services to its users. Google is not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C. § 2702(a)(2).

66. By engaging in the foregoing acts and omissions, Google knowingly divulges the contents of communications that are carried and maintained by Google on behalf of, and received by transmission from, users of Google's Gmail service in violation of 18 U.S.C. § 2702(a)(2).

67. By engaging in the foregoing acts and omissions, Google divulges its users' electronic communications to persons who are not the intended addressees or recipients. 18 U.S.C. § 2702(b)(1).

68. Google engages in the foregoing acts and omissions without obtaining the lawful consent of either the originators or the intended addressees or recipients. 18 U.S.C. § 2702(b)(3).

69. For some Gmail users, Google activates the information-divulging features of the Buzz program if the user fails to affirmatively opt-out of those features. A user's failure to affirmatively opt-out does not constitute consent within the meaning of 18 U.S.C. § 2702(b)(3).

70. For some Gmail users, Google activated the information-divulging features of the Buzz program automatically, without providing the user any opportunity to opt-out and without obtaining any consent or authorization from the user.

71. None of the foregoing acts and omissions taken by Google are necessarily incident to Google's rendition of its Gmail service or to the protection of Google's rights or property. 18 U.S.C. § 2702(b)(5).

72. Because of the foregoing violations, Plaintiffs on behalf of the class are entitled to appropriate relief, including preliminary and other equitable or declaratory relief as this court may deem appropriate. 18 U.S.C. § 2707(b)(1).

73. Plaintiffs on behalf of the class are entitled to a reasonable attorney's fee and other litigation costs reasonably incurred as provided by 18 U.S.C. § 2707(b)(3).

74. Defendant Google profits from the information-divulging aspects of the Buzz program. Google makes money by providing targeted advertising to persons who use its services. Google introduced the Buzz program in an effort to draw traffic from "pure" social networking sites such as Facebook and MySpace. By inducing users to spend more time using services provided by Google, and thus viewing advertisements provided by Google, Buzz increases Google's revenue.

75. The Buzz program also increases the amount of information Google knows about each user, thus allowing Google to provide more narrowly tailored advertisements and increasing Google's revenue.

76. Plaintiffs on behalf of the class are entitled to recover monetary damages including actual damages, profits made by Google as described above, and statutory damages in the amount of not less than $1,000 per class member as provided by 18 U.S.C. § 2707(c).

77. Because Google's violations were willful and intentional, plaintiffs on behalf of the class are entitled to recover punitive damages as provided by 18 U.S.C. § 2707(c).

**COUNT TWO**

**(Wiretap Act, 18 U.S.C. §2510 *et seq.*)**

78. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1 through 68 above.

79. Gmail users' contact lists, follower/following lists, Google Profiles, Picasa photographs, YouTube videos, and posts to other similar websites are electronic communications with the meaning of 18 U.S.C. § 2510(12).

80. By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally intercepts and discloses electronic communications in violation of 18 U.S.C. § 2511(1)(a) & (c).

81. By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally divulges the contents of communications while in transmission on Google's Gmail service to persons other than the intended recipients in violation of 18 U.S.C. § 2511(3)(a).

82. By sharing users' Google Profiles with the users' "followers" without consent from its users, Defendant Google intentionally intercepts and discloses electronic communications in violation of 18 U.S.C. § 2511(1)(a) & (c).

83. By sharing users' Google Profiles with the users' "followers" without consent from its 1sers, Defendant Google intentionally divulges the contents of communications while in transmission on Google's Gmail service to persons other than the intended recipients in violation of 18 U.S.C. § 2511(3)(a).

84. By collecting users' public website posts and sending those posts to the users' "followers," Google intentionally intercepts and discloses electronic communications in violation of 18 U.S.C. § 2511(1)(a) & (c).

85. Google is not a party to any of the above-mentioned communications, nor have any of the parties to the communications given prior consent to Google's interception or divulging of those communications.  18 U.S.C. § 2511(2)(d).

86. For some Gmail users, Google activates the information-divulging features of the

Buzz program if the user fails to affirmatively opt-out of those features. A user's failure to affirmatively opt-out does not constitute prior consent within the meaning of 18 U.S.C. § 2511(2)(d).

87. For some Gmail users, Google activated the information-divulging features of the Buzz program automatically, without providing the user any opportunity to opt-out and without obtaining any consent or authorization from the user.

88. Google does not obtain prior consent from Gmail users who have posted video, pictures, or text on public websites such as Picasa and YouTube before sending these posts to the users' "followers."

89. None of the foregoing acts and omissions taken by Google are necessarily incident to Google's rendition of its Gmail service or to the protection of Google's rights or property. 18 U.S.C. § 2511(2)(i).

90. Because of the foregoing violations, Plaintiffs on behalf of the class are entitled to appropriate relief, including preliminary and other equitable or declaratory relief as this court may deem appropriate. 18 U.S.C. § 2520(b)(1).

91. Plaintiffs on behalf of the class are entitled to a reasonable attorney's fee and other litigation costs reasonably incurred as provided by 18 U.S.C. § 2520(b)(3).

92. Plaintiffs on behalf of the class are entitled to recover monetary damages in amounting to the greater of: (a) the sum of actual damages and any profits made by Google as a result of the violations of law caused by its introduction of Buzz; or (b) statutory damages in the amount of $100 per day of violation per class member, up to a maximum amount of $10,000 per class member. 18 U.S.C. § 2520(c)(2).

## COUNT THREE

**(Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)**

93. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1 through 83 above.

94. The servers on which Gmail users store their contact lists, other account information, and backup copies of previously transmitted emails are protected computers because

they are used in and affect interstate and foreign commerce and communication.  18 U.S.C. § 1030(e)(2)(B).

95. The servers on which users of websites such as Picasa and YouTube store their videos, photographs, text and other information are protected computers because they are used in and affect interstate and foreign commerce and communication.  18 U.S.C. § 1030(e)(2)(B).

96. By taking stored user contact lists and using them to create follower/following lists, Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

97. By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

98. By collecting users' Google Profile information and public website posts and sending this information to the users' "followers," Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

99. By engaging in the foregoing acts and omissions, Defendant Google caused economic damage to its users including but not limited to loss caused by the misappropriation of the economic value of plaintiffs' personality.

100. Defendant Google has caused loss to one or more persons during a one-year period aggregating to at least $5,000 in value.  18 U.S.C. § 1030(c)(4)(A)(i)(I).

101. Because of the foregoing violations, Plaintiffs on behalf of the class are entitled to compensatory damages, injunctive relief, and any other equitable relief this court deems appropriate as provided by 18 U.S.C. § 1030(g).

## COUNT FOUR

### (Public Disclosure Tort)

102. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1

through 92 above.

103. By engaging in the forgoing acts and omissions, defendant Google committed the common law tort of Public Disclosure of Private Facts as recognized by California common law. The Google Buzz program resulted in the public disclosure of private facts which would be offensive and objectionable to a reasonable person, and which facts are not of legitimate public concern.

## PRAYER FOR RELIEF

104. **WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand judgment against defendant Google as follows:

    a. For an order certifying the Class proposed herein and appointing Plaintiffs and their counsel to represent the Class;

    b. For a declaration that Google's acts and omissions constitute a knowing and unauthorized invasion of its users' privacy rights in violation of the laws of the United States and the State of California;

    c. For preliminary and permanent injunctive relief enjoining and preventing Google from continuing to operate its Buzz program without appropriate safeguards, default provisions and opt-in mechanisms to ensure that the private data of its users is not improperly disclosed or transmitted in the future;

    d. For an award of damages, including without limitation damages for actual harm, profits made by Google in the operation of its Buzz program, and statutory damages where applicable;

    e. For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the members of the putative class in prosecuting this matter; and

    f. For an award of such other relief in law and equity to which Plaintiffs and the members of the putative class may be entitled.

| | |
|---|---|
| DATED: July 30, 2010 | RAM & OLSON LLP |
| | By: /s/ Gary E. Mason |
| | Gary E. Mason (pro hac vice) |
| | Donna F. Solen (pro hac vice) |
| | MASON LLP |
| | 1625 Massachusetts Ave., NW |
| | Suite 605 |
| | Washington, DC  20036 |
| | Phone: (202) 429-2290 |
| | Fax: (202) 429-2294 |
| | Email: gmason@masonlawdc.com |
| | dsolen@masonlawdc.com |
| | |
| | Michael F. Ram (SBN 104805) |
| | 555 Montgomery Street, Suite 820 |
| | San Francisco, California  94111 |
| | Phone:  (415) 433-4949 |
| | Fax:  (415) 433-7311 |
| | Email: mram@ramolson.com |
| | |
| | William Rubenstein (SBN 235312) |
| | 1545 Massachusetts Avenue |
| | Cambridge, MA  02138 |
| | Phone: (617) 496-7320 |
| | |
| | Peter N. Wasylyk (pro hac vice) |
| | LAW OFFICES OF PETER N. WASYLYK |
| | 1307 Chalkstone Avenue |
| | Providence, Rhode Island 02908 |
| | Phone: (401) 831-7730 |
| | Fax:    (401) 861-6064 |
| | Email: pnwlaw@ao1.com |
| | |
| | Andrew S. Kierstead (SBN 132105) |
| | LAW OFFICE OF ANDREW KIERSTEAD |
| | 1001 SW 5th Avenue, Suite 1100 |
| | Portland, Oregon 97204 |
| | Phone: (508) 224-6246 |
| | Fax:    (508) 224-4356 |
| | Email: ajkier@aol.com |
| | |
| | Michael D. Braun (SBN 167416) |
| | Braun Law Group, P.C. |
| | 12304 Santa Monica Blvd., Suite 109 |
| | Los Angeles, CA 90025 |
| | Phone:  (310)  836-6000 |
| | Fax:    (310)  836-6010 |
| | Email:    service@braunlawgroup.com |

```
 1
 2                                          Peter W. Thomas
                                            THOMAS GENSHAFT, P.C.
 3                                          0039 Boomerand Rd, Ste 8130
                                            Aspen, Colrado 81611
 4                                          Phone: (970) 544-5900
                                            Email: peter@thomasgenshaft.com
 5
                                            Donald Amamgbo
 6                                          AAMAMGBO & ASSOCIATES
                                            7901 Oakport St., Ste 4900
 7                                          Oakland, California 94261

 8                                          Reginald Terrell, Esq.
                                            THE TERRELL LAW GROUP
 9                                          P.O. Box 13315, PMB # 149
                                            Oakland, California 94661
10
                                            Jonathan Shub (SBN 237708)
11                                          SHUB LAW LLC
                                            1818 Market Street, 13th Floor
12                                          Philadelphia, Pennsylvania 19102
                                            Phone: (610) 453-6551
13                                          Fax: (215) 569-1606
                                            Email:  jshub@shublaw.com
14
                                            Christopher A. Seeger
15                                          SEEGER WEISS LLP
                                            One William Street
16                                          New York, New York
                                            Phone:  (212) 584-0700
17                                          Fax:  (212) 584-0799
                                            Email:  cseeger@seegerweiss.com
18
                                            Lawrence Feldman
19                                          LAWRENCE E. FELDMAN &
                                            ASSOCIATES
20                                          423 Tulpehocken Avenue
                                            Elkins Park, Pennsylvania 19027
21                                          Phone:  (215) 885-3302
                                            Fax:  (215) 885-3303
22                                          Email:  leflaw@gmail.com

23                                          Eric Freed (SBN 162546)
                                            FREED & WEISS LLC
24                                          111 West Washington Street, Ste 1311
                                            Chicago, IL 60602
25                                          Phone:  (312) 220-0000
                                            Fax:  (313) 220-7777
26                                          Email:  eric@freedweiss.com

27                                          Howard G. Silverman
                                            KANE & SILVERMAN, P.C.
28                                          2401 Pennsylvania Ave, Ste 1C-44
                                            Philadelphia, PA 19130
                                            Phone:  (215) 232-1000
```

Fax:  (215) 232-0181
Email:  HGS@palegaladvice.com

*Attorneys for Plaintiffs
and the Proposed Class*