Gary E. Mason (pro hac vice)
gmason@masonlawdc.com
Donna F. Solen (pro hac vice)
dsolen@masonlawdc.com
MASON LLP
1625 Massachusetts Ave., NW
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Michael F. Ram (SBN 104805)
mram@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

William B. Rubenstein (SB #235312)
rubenstein@law.harvard.edu
1545 Massachusetts Avenue
Cambridge, Massachusetts 02138
Telephone: (617) 496-7320
Facsimile: (617) 496-4865

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION | Case No. 5:10-CV-00672-JW |
| This Pleading Relates To:<br><br>ALL CASES | **NOTICE OF MOTION AND MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND APPOINTING CLASS COUNSEL; (3) AUTHORIZING DISTRIBUTION OF NOTICE OF SETTLEMENT; AND (4) SETTING A SCHEDULE FOR THE FINAL APPROVAL PROCESS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date: December 20, 2010<br>Time: 9:00 a.m.<br>Place: Courtroom 8, 4th Floor<br>[Hon. James Ware] |

10-cv-00672-JW

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      STATEMENT OF ISSUES TO BE DECIDED .................................................. 2

II.     BACKGROUND OF THE LITIGATION ........................................................... 2

        A.      Background ............................................................................................. 2

        B.      Google's Response To The Privacy Concerns ..................................... 3

        C.      Mediation and Settlement ..................................................................... 4

        D.      Confirmatory Discovery ....................................................................... 5

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................. 5

        A.      The Settlement Class .............................................................................. 6

        B.      Settlement Benefits ................................................................................ 6

        C.      Attorneys' Fees and Expenses .............................................................. 6

        D.      Release of Claims ................................................................................... 7

        E.      Notice ....................................................................................................... 7

        F.      Objections and Opt-Out Procedures ................................................... 8

IV.     ARGUMENT ...................................................................................................... 8

        A.      The Court Should Grant Preliminary Approval of the Proposed Settlement .......... 8

                1.      The Standard for Preliminary Approval ................................... 8

                2.      The Proposed Settlement Is Fair and Within The Range of Possible
                        Approval ........................................................................................ 10

                        a.      The Settlement Is the Result of Serious, Arm's-Length,
                                Informed Negotiations. ................................................... 10

                        b.      The Terms of the Settlement Are Fair and Reasonable. ............... 11

        B.      The Court Should Provisionally Certify a Settlement Class Pursuant to
                Federal Rule of Civil Procedure 23(b)(3). ........................................ 13

                1.      The Class is So Numerous that the Individual Joinder of All Class
                        Members Would Be Impracticable. ........................................... 14

                2.      There Are Questions of Law and Fact Common to Plaintiffs and
                        Members of the Class. ................................................................. 14

                3.      The Claims of the Representative Plaintiffs are Typical of the
                        Claims of the Class. .................................................................... 15

4.    The Class Representatives and Their Counsel Have Fairly and Adequately Protected the Interests of the Class, and Will Continue to Do So. ................................................................................... 16

5.    The Rule 23(b)(3) Elements are Satisfied as Common Questions Predominate and Certification Presents the Superior Method for Adjudication. ........................................................................... 16

C.    The Court Should Approve The Proposed Settlement Notices and Authorize Their Dissemination. ................................................... 19

D.    The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order. ................................................... 20

V.    CONCLUSION. ........................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ...................................................................................... 17

*Austin v. Pa. Dep't of Corrections.*
    876 F. Supp. 1437 (E.D. Pa. 1995) .............................................................. 9

*Chamberlan v. Ford Motor Co.*
    402 F.3d 952 (9th Cir. 2005)....................................................................... 17

*DSeLise v Farenheit Entertainmen*
    Civ. Act. No. CV-014297 (Cal. Sup. Ct., Marin Cty. Sept. 2001) ................... 12

*Duhaime v. John Hancock Mut. Life. Ins. Co.*
    177 F.R.D. 54 (D. Mass. 1997)................................................................... 9

*Dukes v. Wal-Mart, Inc.*
    474 F.3d 1214 (9th Cir. 2007).................................................................... 15

*Eisenberg v. Gagnon*
    766 F.2d 770 (3d Cir. 1985)........................................................................ 17

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)......................................................... 14, 15, 16, 17

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)....................................................................... 15

*In re DoubleClick, Inc. Privacy Litig.*
    No. 00 Civ 0641 (NRB) (S.D.N.Y. 2001)...................................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.*
    176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................. 9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*
    176 F.R.D. 158 (E.D. Pa. 1997) ................................................................. 9

*In re Portal Software, Inc. Sec. Litig.*
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. Jun. 30, 2007) ............. 14

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008)..................................................................... 9

*In re Vitamins Antitrust Litig*
    Nos. Misc. 99-197, MDL 1285, 2001 WL 856292, at * 4-5 (D.D.C., Jul. 25, 2001).......... 9

*Jaffe v. Morgan Stanley & Co., Inc.*
    No. C-06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .................... 13

*Kresnick v. Cendant Corp.*
    No. 4:07-00013, 2007 WL 1795793 (N.D. Cal. June 20, 2007)...................... 14

*Lane v. Facebook, Inc*
  No. 08-cv-3845 (N.D. Cal. 2009) ................................................. 12

*Lerwill v. Inflight Motion Pics., Inc.*
  582 F.2d 507 (9th Cir. 1978)...................................................... 16

*Mullane v. Central Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ................................................................. 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................. 9

*Natl. Federation of Blind v. Target Corp.*
  No. C-06-1802, 2007 WL 2846462 (N.D. Cal. October 2, 2007) ................... 14

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*
  688 F.2d. 615 (9th Cir. 1982)..................................................... 9

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001)..................................................... 18

**Statutes**

California Business & Professions Code §17200 ................................... 3

**Rules**

Fed. R. Civ. P. 23(e)........................................................... 1, 8

**Treatises**

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTION
  §11.25 (4th ed. 2002 & 2010 Updates) ........................................... 9

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS
  § 3.10 (4th ed. 2002 & 2010 Updates) ........................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

Please take notice that on December 20, 2010 at 9:00 a.m., or on such other date as the Court directs, in Courtroom 8, 4th Floor of the United States District Court, Northern District of California, San Jose Division, before the Honorable James Ware, Plaintiffs Andrew Souvalian ("Souvalian"), Katherine C. Wagner ("Wagner"),  Mark Neyer ("Neyer"), Barry Feldman ("Feldman"), John H. Case ("Case"), Lauren Maytin ("Maytin"), and Rochelle Williams ("Williams") (collectively "Plaintiffs" or "Class Representatives") on behalf of themselves and all those similarly situated and Google Inc. ("Google") will respectfully move this Court for an order (1) preliminarily approving the proposed settlement; (2) provisionally certifying the Settlement Class and appointing Class Representatives and Class Counsel; (3) approving the proposed notice and authorizing its dissemination to the members of the class; and (4) setting a schedule for the final approval process.

Plaintiffs make this motion, with the support of counsel for defendant, pursuant to Federal Rule of Civil Procedure 23(e) as set forth in the accompanying brief.

This Motion will be based on this Notice; the accompanying Memorandum of Points and Authorities in Support of the Motion; the Declaration of Gary E. Mason, filed herewith, the Settlement Agreement and exhibits, attached to this Memorandum as Exhibit 1; the Court's file in this action, and such other argument or evidence as may be presented at or prior to the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

The parties to this putative class action, Plaintiffs Andrew Souvalian ("Souvalian"), Katherine C. Wagner ("Wagner"),  Mark Neyer ("Neyer"), Barry Feldman ("Feldman"), John H. Case ("Case"), Lauren Maytin ("Maytin"), and Rochelle Williams ("Williams") (collectively "Plaintiffs" or "Class Representatives") and Google Inc. ("Google") have reached a settlement agreement resolving all claims asserted in the action. Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), the Parties seek an order from this Court (i) preliminarily approving the proposed settlement; (ii) provisionally certifying the Settlement Class and appointing Class

1   Representatives and Class Counsel; (iii) approving the proposed notice and authorizing its

2   dissemination to the members of the class; and (iv) setting dates and procedures for the fairness

3   hearing, including deadlines for class members to file objections to the proposed settlement or

4   request that they be excluded from the settlement.  The Settlement Agreement is attached hereto

5   as Exhibit 1.

6   **I.      STATEMENT OF ISSUES TO BE DECIDED**

7          Plaintiffs identify the following issues to be decided:  whether the Settlement Agreement

8   reached by the parties can be preliminarily approved as fair, adequate and reasonable; whether the

9   Settlement Class can be provisionally certified, and the Class Representatives and Class Counsel

10  provisionally appointed; and whether the proposed notice can be approved and dissemination of

11  that notice to the class can be authorized.

12  **II.     BACKGROUND OF THE LITIGATION**

13         **A.      Background**

14         Google launched a social networking product, "Google Buzz" (or "Buzz"), on February 9,

15  2010.  Google Buzz was built into "Gmail," Google's email program.  In the terms used in Google

16  Buzz, Buzz users are networked with those other individuals whom they are "following" and have

17  individuals who are "followers" of them.  Buzz suggests follower/following lists to prospective

18  Buzz users based in part upon who they email and chat with the most in Gmail.  A Buzz user's

19  follower/following list may be publicly viewable through their Google profile. Plaintiffs alleged

20  that this approach to a social networking program raised privacy concerns (1) because email users

21  did not necessarily want to be in social networks with their email contacts; and (2) because public

22  knowledge of how the "follower/following" lists were populated, coupled with the potential

23  public availability of these lists, appeared to divulge a Gmail user's most frequent email contacts

24  without sufficient consent.

25         On February 17, 2010, Plaintiff Eva Hibnick filed the initial class action Complaint in this

26  action, on behalf of all United States users of Gmail to whose Gmail accounts Google added

27  Google Buzz.  Additional complaints were filed against the Defendant on March 3, 2010, April 5,

28

2010, May 27, 2010 and June 7, 2010.  The plaintiffs in each of these actions alleged that aspects of the operations of Google Buzz violated:  (i) the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*; (ii) the Stored Communications Act, 18 U.S.C. §2701 *et seq*; (iii) the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq*; (iv) the common law tort of Public Disclosure of Private Facts as recognized by California common law; and (v) the California Unfair Competition Law, California Business & Professions Code §17200.

Google contends that plaintiffs have mischaracterized and misunderstood how Google Buzz operates, has denied and continues to deny plaintiffs' allegations, and denies that it has engaged in any wrongdoing whatsoever relating to Google Buzz.  Google denies that the plaintiff and putative class are entitled to any form of damages or other relief, and has maintained throughout this litigation that it has meritorious defenses to all claims alleged in the Complaint and that it was and is prepared to vigorously defend against those claims.

On June 30, 2010, this Court granted Plaintiff Hibnick's motion to consolidate the cases and to appoint interim lead class counsel and liaison counsel.

### B.     Google's Response To The Privacy Concerns

While denying any legal liability, Google responded quickly to improve Google Buzz and to address concerns that had been raised about it.  Google announced its first modifications within days after launch and implemented them within the following week.  These changes included:  (1) making a more visible option for users to avoid displaying their "followers;" (2) adding more links so users could more easily block individuals from following them; (3) changing Google's original concept that users automatically "followed" others to one in which users were given automatic "suggestions"; (4) changing its default connection to other Google content (such as a user's public photo albums previously uploaded on line) to give users more autonomy over this choice; and (5) adding a Buzz tab to Gmail settings, enabling users to have more autonomy over the connection between these two programs.  Then, on April 5, 2010, several months after these suits were filed and after additional refinements to Buzz, Google enabled Buzz users a "second chance" by providing a "confirmation page" that displayed a Buzz users choices to the user and

1  sought confirmation from the user about his/her privacy settings.

2  **C.    Mediation and Settlement**

3  Consistent with Google's attempt to address concerns about Buzz, the company reached

4  out to Class Counsel to discuss concerns about Buzz and to see if resolution of the litigation could

5  be advanced through in-persons meetings and discussions.  The first such meeting was held at

6  Google's counsel's office in San Francisco on April 21, 2010.  See Declaration of Gary E. Mason

7  in Support of Preliminary Approval ("Mason Dec.") (Sept. 2, 2010), ¶ 5. At that meeting,

8  Google's Vice President for Product Management, whose responsibilities included the launch of

9  Buzz, spent several hours discussing the program with Class Counsel. *Id.* He explained Buzz's

10  operation and responded to questions posed by Class Counsel present at the meeting and available

11  through teleconference, enabling Class Counsel to better understand the facts about how Buzz

12  works, how it was launched, and what changes had already been made; simultaneously, Class

13  Counsel's questioning enabled Google to better appreciate the concerns presented in the

14  complaints.  *Id.* At this meeting, Google's counsel also made an extended presentation of the

15  company's legal defenses to the allegations of the complaints, characterizing the presentation as

16  essentially showing Class Counsel what the content of Google's motion to dismiss would be.  *Id.*

17  Class counsel debated these legal issues with Google's counsel for several hours.  *Id.* Following a

18  break for lunch, the parties spent the remainder of their time together discussing the issues in the

19  case and exploring the possibilities of settlement. *Id.* These discussions ultimately culminated

20  with the parties agreeing to a formal mediation.  *Id.*

21  Prior to the agreed upon mediation, Google provided further factual material to Class

22  Counsel to enable Counsel to further investigate the factual aspects of the complaints,

23  supplementing the information Google had conveyed to Class Counsel at the April meeting.

24  Mason Dec., ¶ 6.  Based on the information obtained from Google and through thorough

25  independent investigation of the facts and law, Class Counsel produced for Google and the

26  Mediator a 73-page Mediation Statement (with exhibits) that included a 31-page legal brief.  *Id.*

27  This brief outlined the plaintiffs' affirmative legal argument, while responding to the legal

28

1   presentation that Google's counsel had made at the April meeting; it represented Class Counsel's

2   response to Google's orally-presented arguments for dismissal.  *Id.* Google similarly produced a

3   Mediation Statement for the Mediator, some of which was shared with Class Counsel. *Id.*

4         On June 2, 2010, the parties met for the formal mediation session at the JAMS office in

5   San Francisco, California. Mason Dec., ¶ 7.  Hon. Fern Smith, a retired federal district court

6   judge with extensive class action experience, presided over the session.  *Id.* It lasted for

7   approximately 14 hours.  *Id.*  At the outset of the mediation session, the Mediator approved Class

8   Counsel's request to make a formal presentation of their briefs and arguments, as Google had

9   made to Class Counsel during the April meeting.  *Id.* Class Counsel Rubenstein presented the

10   plaintiffs' case to the Mediator and Google's counsel for the first portion of the mediation

11   session.  *Id.*  The parties spent the remainder of the day discussing the factual and legal issues in

12   the case and the bases for resolution of it.  *Id.* Very late that evening, the mediation proved

13   successful, resulting in a Term Sheet and ultimately in the formal Settlement Agreement

14   described below.  *Id.*

15        **D.**    **Confirmatory Discovery**

16         As part of the settlement, the parties negotiated factual materials that would be made

17   available by Google to Class Counsel and the processes for that discovery.  Pursuant to that

18   agreement, Google made available to Class Counsel all consumer feedback that it had received

19   about the Buzz program from Buzz users throughout the world.  Google also produced a series of

20   sworn statements by which its relevant employees delineated particular aspects of Buzz's launch

21   and subsequent operations.  Class counsel has reviewed these thousands of pages of documents.

22   Class counsel also developed a coding system for the consumer comments and complaints and

23   analyzed those.  Of all consumer feedback sent to Google about Buzz, Class Counsel could

24   identify no class members who allege that they suffered out-of-pocket damages.

25   **III.**    **THE TERMS OF THE SETTLEMENT AGREEMENT**

26         As the result of the extensive arm's-length negotiations described above, the parties have

27   agreed to settle the litigation on the terms set forth in the Settlement Agreement.  The Settlement

28

Agreement includes key terms recognizing changes to the Buzz program, providing for public education about the privacy aspects of Buzz, providing extensive monetary relief for the creation of a fund payable to cy pres recipients to be agreed upon and attorneys' fees and expenses, and providing notice to the class and an opportunity to object to the Settlement.

### A.    The Settlement Class

The Settlement Class is defined as all Persons in the United States who were Gmail users presented with the opportunity to utilize Buzz through the date of notice provided for in the Settlement Agreement.

### B.    Settlement Benefits

The Settlement confers three significant sets of benefits on the class and public.

*First*, the Settlement recognizes that, since the inception of these lawsuits, Google has made changes to the Buzz program to address privacy and other concerns raised by users.  These changes are generally described in Part II(B), above.

*Second*, the Settlement requires that Google undertake wider public education about the privacy aspects of Buzz.  The plaintiffs have made and may make further recommendations to Google about the content of that public education.  Google will consider the recommendations of Plaintiffs about the content of that public education, will select and design the final content of the public education efforts in its discretion, and will report back to Class Counsel identifying the particular aspects of the educational efforts it undertakes within 90 days of a final judgment in this matter.

*Third*, the Settlement provides for the creation of an $8.5 million Settlement Fund. After deduction of attorneys' fees and expenses, incentive awards and administrative cost, the balance of the Settlement Fund, in its entirety, will be paid out to cy pres recipients, who will be existing organizations focused on Internet privacy policy or privacy education.

### C.    Attorneys' Fees and Expenses

Google has agreed that Class Counsel is entitled to seek an award of reasonable attorneys' fees and expenses for prosecuting this action and would not object to Class Counsel's petition for

fees provided the request is for no more than 30 percent of the Settlement Fund.  Class Counsel

intend to petition for a fee constituting 25% of the Common Fund.  See Mason Decl. at ¶10.

**D.      Release of Claims**

Under the Settlement Agreement, each member of the class will be deemed to have

released any and all claims, demands, rights, liabilities and causes of action of every nature and

description whatsoever, known or unknown, suspected or unsuspected, asserted or that might

have been asserted, by the Plaintiffs or any Settlement Class Member, against Google arising out

of or related to the facts giving rise to the subject matter of the Consolidated and Amended

Complaint and the predecessor complaints.

**E.      Notice**

The parties have agreed, subject to Court approval, to a notice plan that includes (1) a

third-party website (the "Settlement Website") created to provide neutral information about the

settlement and containing a proposed settlement notice (the "Class Notice") (attached to the

Settlement Agreement as Exhibit B); (2) a joint press release mutually agreed by the Parties,

announcing the settlement and listing the address of the Settlement Website, that Defendant shall

cause to be wired to major news outlets; and (3) individual email notification, sent by Google to

all Gmail users whom Google can identify through reasonable efforts as residing in the United

States, which notification shall include a hypertext link to the Settlement Website.

The Class Notice informs Class Members of the nature of the action, the litigation

background and the terms of the agreement, including the definition of the Settlement Class, the

relief provided by the Settlement Agreement, the entitlement of Class Counsel to fees and

expenses, and the scope of the release and binding nature of the settlement on Class Members. It

also describes the procedure for objecting to the settlement, advises class members that they have

the right to opt out of the settlement and describes the consequences of opting out, and states the

date and time of the final approval hearing. *Id.*

The Agreement proposes that notice program set forth above be established, and the

emails and joint press release sent, within thirty (30) days after the Court enters an order granting

preliminary approval of the Settlement Agreement.  Pursuant to the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, the Defendant also shall serve notice of the Settlement Agreement on the appropriate federal and state officials not later than ten (10) days after the Settlement Agreement is filed with the Court.

### F.    Objections and Opt-Out Procedures

To be excluded from the Settlement Class, a class member must send a written request for exclusion to the Administrator.  The request for exclusion must contain the name, current postal address, current telephone number, and Gmail user name of the Settlement Class member and a specific statement that he, she or it requests to be excluded from the Settlement Class and be postmarked no later than sixty (60) days after the Court enters an order granting preliminary approval of the Settlement Agreement.  Plaintiffs shall provide the Court with a list of all conditional Settlement Class members submitting an Exclusion Request in accordance with Section I(3)(a)(1) above (the "Exclusion List") at or before the Fairness Hearing.

Any Settlement Class Member who does not submit a valid and timely Exclusion Request may object to the Settlement by mailing a written statement of his, her or its objection to the Court.  The Objection must be received no later than the twenty-one (21) days prior to the Fairness Hearing and include the Settlement Class Member's name, current postal address, current telephone number, the basis for the objection, and whether the Settlement Class Member or his, her or its lawyer intends to appear at the Fairness Hearing.

## IV.   ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Proposed Settlement.

#### 1.    The Standard for Preliminary Approval.

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Fed. R. Civ. P. 23(e). Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. *Manual for Complex Litigation,* Fourth, § 21.61 (2004). The approval process typically involves two steps: first, the settlement is approved preliminarily following the

submission of the parties of relevant information concerning the terms of the settlement and the history of the litigation; second, after notice of the proposed settlement is given to the class, the Court conducts a final approval hearing, also known as a fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco.,* 688 F.2d. 615, 625 (9th Cir. 1982).

At this first preliminary approval stage, the Court's estimation of whether a settlement is fair, reasonable, and adequate is limited. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also In re Syncor ERISA Litig.,* 516 F.3d 1095, 1110 (9th Cir. 2008); *Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at * 5 (N.D. Cal., Oct. 25, 2006); *In re Vitamins Antitrust Litig.,* Nos. Misc. 99-197 (TFH), MDL 1285, 2001 WL 856292, at * 4-5 (D.D.C., Jul. 25, 2001); WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002 & 2010 Updates). Additionally, the Court's analysis should begin with the presumption that the settlement is fair.

A presumption of fairness exists where the settlement is reached through arm's-length negotiations, sufficient investigation has taken place to allow counsel and the Court to act intelligently, and counsel is experienced in similar types of litigation. *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) (settlement is presumed fair where it is the product of arm's-length negotiations); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class'") (quoting *Austin v. Pa. Dep't of Corrections.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995). Thus, at this stage, so long as the settlement falls into the range of possible approval — giving deference to the result of the

parties' arm's-length negotiations and the judgment of experienced counsel following sufficient investigation — the settlement should be preliminarily approved and a final fairness hearing scheduled.

### 2. The Proposed Settlement Is Fair and Within The Range of Possible Approval.

The proposed Settlement Agreement in this case is fair, reasonable, and adequate, and clearly falls within the range of possible approval.

### a. The Settlement Is the Result of Serious, Arm's-Length, Informed Negotiations.

One indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's-length negotiations following serious investigation of the merits of the case. Such negotiation and investigation minimize any concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

The Settlement in this case easily meets that standard. Class counsel separately undertook significant factual and legal investigation of the issues prior to filing the cases and prior to meeting with Google. The parties then engaged in extensive discussion about both the facts and law at issue. Google presented what amounted to a factual and legal motion to dismiss to Class Counsel at their initial meeting in April 2010. Google there made available an executive who oversees product management for Google product applications, including Google Buzz. Class Counsel had the opportunity to review with him how Buzz worked and to clarify various facts material to plaintiffs' claims. Google and Class Counsel had extensive discussions about the facts of the case and the merits of the applicable legal claims, culminating in the parties' scheduling a formal mediation.

In preparation for the mediation, Class Counsel conducted further extensive research and analysis of plaintiffs' claims. At Class Counsels' request, Google provided critical information about Buzz and its launch, including screenshots of the various web pages shown to Gmail users who "checked out" Buzz when it was initially launched, and screenshots of these same pages as

1   subsequently modified.  Synthesizing these materials in preparation for the mediation, Class

2   Counsel produced a 73-page written response to Google's factual and legal claims, essentially a

3   vigorous written opposition to Google's oral motion to dismiss presentation.  At the outset of the

4   mediation presided over by the retired federal district court judge Fern Smith, Class Counsel

5   orally presented its position on the facts and law in the case.  The parties then engaged in

6   mediation for roughly 14 hours under Judge Smith's direction, culminating in a term sheet late in

7   the evening.  At all times, the mediation was hard fought and arm's-length.  Attorney's fees were

8   never discussed.

9          Following the successful resolution of the formal mediation and pursuant to the terms

10  adopted there, Class Counsel has conducted confirmatory discovery.  Google has made thousands

11  of pages of documents available to Class Counsel, including about 2,000 emails that Gmail users

12  sent to Google providing feedback about Buzz, as well as sworn statements from Google

13  employees about various aspects of the Buzz program.  Class Counsel have reviewed these

14  documents, including carefully scrutinizing the complaints about Buzz by coding and entering

15  them in a database so that they could be formally analyzed.

16         The Settlement Agreement clearly emerges from a formal, arms-length negotiation

17  process between the parties and Class Counsel are confident, based on their extensive experience

18  as class action litigators, that they have a full understanding of the facts at issue and the strengths

19  and weaknesses of the legal  allegations in the complaint.

20                  **b.      The Terms of the Settlement Are Fair and Reasonable.**

21         There can be little doubt that the proposed settlement is "within the range of possible

22  approval."  The Settlement (1) acknowledges changes that Google has made to Buzz since the

23  filing of these cases; (2) requires Google to undertake further public education on the privacy

24  aspects of Buzz; and (3) creates a $8.5 million Settlement Fund payable to cy pres recipients.

25  This package of benefits is significant on its own terms and compares well to settlements in

26  comparable cases.

27         On its own terms, the Settlement is a fair and reasonable resolution to this litigation

28

because it recognizes three important concerns raised by plaintiffs.  *First,* Google has made a series of changes to Buzz to address the concerns raised about privacy and other issues.  *See supra*, Section II.B.  Plaintiffs believe that Google's changes to Buzz are significant achievements of this Settlement.   *Second*, and more specifically, via the Settlement Agreement, Google has agreed to provide further public education concerning the privacy aspects of Buzz.  The particular content of this "injunctive" relief is being developed, with the plaintiffs providing suggestions to Google, who will provide Lead Class Counsel with a report on these educational efforts within ninety days of the date of final approval of the settlement.  *Last*, but certainly not least, the Settlement provides for the creation of a $8.5 million cy pres fund; payments will be made to qualified organizations focused on enhancing internet privacy and/or furthering public education about internet privacy.  The work of these organizations enabled by the cy pres money will benefit class members by helping to protect their internet privacy in the future.

This package of settlement benefits compares favorably to settlements in other cases concerning alleged privacy violations that did not involve significant actual damages. *See, e.g., Lane v. Facebook, Inc.,* No. 08-cv-3845 RS (N.D. Cal. 2009) (unconsented sharing of personal information with third-parties; settlement created privacy foundation with funding of $9.5 million); *In re DoubleClick, Inc. Privacy Litig.*, No. 00 Civ 0641 (NRB) (S.D.N.Y. 2001) (Defendant, an Internet ad-serving company, revised its notice, choice and data collection practices and conducted a privacy-oriented public information campaign); *DSeLise v Farenheit Entertainment,* Civ. Act. No. CV-014297 (Cal. Sup. Ct., Marin Cty. Sept. 2001) (sellers of interactive music CD updated privacy policies, added warning labels to CDs, and purged previously collected data).

Of particular relevance to the reasonableness of the relief obtained under the proposed settlement is the fact that Google has and would continue to contest vigorously the merits of Class Members' claims as well as named Plaintiffs' ability to pursue this action on a class-wide basis. Google denies that it engaged in any unlawful conduct and, in addition, has interposed several defenses to the claims asserted.  Moreover, Google argues that Class Counsel will be unable to

demonstrate that any plaintiffs have suffered actual compensatory damages.

The claims raised in this litigation are based primarily upon federal privacy statutes that have not been specifically applied by courts to internet-based social networks.  Numerous issues would necessarily be subject to novel and extensive litigation, and possible appeal, including whether the information at issue here is protected by the Stored Communication Act, whether the information was "intercepted" within the meaning of the federal Wiretap Act, and whether Google's use of its own computer servers can create liability under the Computer Fraud and Abuse Act.  Other defenses are fact-based and would be determined by the trier of fact if the case proceeded to trial. There is, in short, certainly no guarantee that Plaintiffs would ultimately prevail on these legal and factual issues. Thus, as in any case, the risk of losing must be considered in evaluating the adequacy of a proposed settlement.

Indeed, throughout the course of settlement negotiations, the parties considered factors such as the past and ongoing cost of the contentious litigation, the scope of relief that was being sought and that might be provided, the cost and benefit of such relief, the potential damages at issue, the risks to each party of class certification and trying the matter, and the possibility of appeals of any judgment in the trial court - adding to the expense, delay and uncertainty of litigation. The parties believe that the settlement is fair, reasonable, and adequate and – given the uncertainties of continued litigation coupled with the fact that Plaintiffs have concluded that few, if any, Gmail users suffered out-of-pocket damages as a result of the launch of Buzz – there can really be no doubt that this proposed Settlement falls well within the range of possible approval.

**B.      The Court Should Provisionally Certify a Settlement Class Pursuant to Federal Rule of Civil Procedure 23(b)(3).**

Plaintiffs propose that the Court provisionally certify this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the purpose of settlement.  Such provisional certification is considered an appropriate device in the settlement of class actions where the agreement to settle the case occurs before certification. *See, e.g.*, *Jaffe v. Morgan Stanley & Co., Inc.,* No. C-06-3903 TEH, 2008 WL 346417, at * 2-3 (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 WL 1991529, at * 2-3 (N.D. Cal. Jun. 30,

2007).  Although Google disagrees that a class could be certified if the litigation proceeded, the parties agree that the settlement class may be certified under Rule 23(b)(3) and have provided in the Settlement Agreement and the proposed notice that class members will have the opportunity to exclude themselves from the settlement, as required by Rule 23(c)(2)(B)(v) and 23(e)(4). However, plaintiffs speak only for themselves in addressing class certification.

### 1. The Class is So Numerous that the Individual Joinder of All Class Members Would Be Impracticable.

The Class that Plaintiffs seek to represent consists of millions of Gmail users.  This class is ascertainable, and indeed so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23 (a)(1).  While Plaintiffs need not allege a precise number of class members, this Court has noted that a class consisting of as few as 41 members is sufficient to satisfy the numerosity requirement, particularly where the size of each individual claim is relatively small or the members are geographically diverse.  *See e.g., Natl. Federation of Blind v. Target Corp.*, No. C-06-1802, 2007 WL 2846462, at *13 (N.D. Cal. October 2, 2007) (citing 5 James Wm. Moore et al., Moore's Federal Practice §23.22[1][b] (3d ed. 2004)); *Kresnick v. Cendant Corp.*, No. 4:07-00013, 2007 WL 1795793, at *7 (N.D. Cal. June 20, 2007); *see also Xiufang Situ*, 240 F.R.D. at 560.  Here, the class consists of several million individuals. There is, therefore, no question that the numerosity requirement is satisfied.

### 2. There Are Questions of Law and Fact Common to Plaintiffs and Members of the Class.

Next, Rule 23(a)(2), which is construed permissively by the courts, requires that common questions of law or fact exist among class members.  *Xiufang Situ*, 240 F.R.D. at 56.  The requirements for finding commonality are minimal.  *Id*.; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Accordingly, it is sufficient that Plaintiffs show the "existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon,* 150 F.3d at 1019.  In fact, in order to satisfy this requirement, Plaintiffs need only evince a single significant common question between the Class Representative and the prospective Class.  *Dukes v. Wal-Mart, Inc.*, 474 F.3d

1214, 1225 (9th Cir. 2007); *see also* WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 3.10 (4th ed. 2002 & 2010 Updates) (stating that the Rule 23(a)(2) requirement "is easily met in most cases. When the party opposing the class has engaged in some conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all persons affected.").

The claims of Plaintiffs and the Class Members all arise from the same legal theory—that Google disclosed private information without consent. The common issues include: whether the Google Buzz program publicly shared user information and if so, what user information Google shared and how; whether Google failed to provide adequate information and opt out procedures for its Gmail users; whether by allegedly committing these acts and omissions Google violated federal and state laws; and whether class members are entitled to injunctive, declarative and monetary relief as a result of Google's alleged conduct.

These questions form the basis of Plaintiffs' and Class Members' consumer protection claims, and are indisputably sufficient to establish commonality.

### 3. The Claims of the Representative Plaintiffs are Typical of the Claims of the Class.

Rule 23(a)(3), which requires that the named plaintiffs be members of the class and possess claims that are "reasonably co-extensive with those of the absent class members," is also interpreted permissively. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted).

Here, Google's alleged practice of disclosing private contact information without adequate notice or consent is alleged to have resulted in an intrusion into class members' privacy in violation of state and federal law. Plaintiffs allege that Google violated each proposed class members' rights in an identical manner. While Google denies these allegations, Plaintiffs' claims are typical of the proposed class and the typicality requirement is satisfied.

### 4.    The Class Representatives and Their Counsel Have Fairly and Adequately Protected the Interests of the Class, and Will Continue to Do So.

Finally, Rule 23(a)(4) and Rule 23(g) together ensure the satisfaction of what courts have recognized as a two-part test: (1) that the named plaintiffs and their counsel do not have conflicts of interest with the proposed class; and (2) that the named plaintiffs and their counsel can prosecute the action vigorously through qualified counsel.  *Hanlon*, 150 F.3d at 1020 (*citing Lerwill v. Inflight Motion Pics., Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)); *Tierno*, 2006 WL 2535056, at *3.  In considering the adequacy of counsel, the court must consider (1) the work counsel has done in investigating the potential claims in the action; (2) counsel's experience in handling class actions and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Xiufang Situ*, 240 F.R.D. at 562 (citing Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv)).   Both aspects of the adequacy test are satisfied here.

First, as shown above, Plaintiffs' interests are squarely aligned with the interests of absent class members as all are Gmail users who were presented with the opportunity to utilize Buzz during the class period.  Plaintiffs' claims are typical of, and in fact identical to, those of the proposed Class.  There is no conflict of interest among Plaintiffs and the Class Members since all share the same goal of establishing Google's liability for launching Buzz in a manner that allegedly disclosed Plaintiffs' private information without their consent.

The firms representing the Plaintiffs and the Class are well-respected members of their legal communities and have extensive experience prosecuting class action lawsuits. Further detailed credentials of counsel are enumerated on their firm resumes.  Mason Decl., Ex. Accordingly, both Plaintiffs and Class Counsel have and will adequately represent the class.

### 5.    The Rule 23(b)(3) Elements are Satisfied as Common Questions Predominate and Certification Presents the Superior Method for Adjudication.

The settlement of this action is maintainable under Rule 23(b)(3), which permits class certification if the court finds (1) that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) that "a class

1    action is superior to other available methods for fair and efficient adjudication of the

2    controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) certification is proper because the

3    predominance and superiority requirements of that prong of Rule 23 are satisfied.  *See* Fed. R.

4    Civ. P. 23(b)(3); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) ("The Rule

5    23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

6    adjudication by representation").  Since certification of the class under Rule 23(b)(3) is in the

7    settlement context, the Court need not consider the manageability requirement.  *See Amchem*

8    *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

9        The predominance inquiry looks to whether a proposed class is sufficiently cohesive to

10   warrant adjudication by representation.  *Amchem,* 521 U.S. at 623.  Because there is no defined

11   test to determine whether common issues predominate in a class action, the Court must

12   "pragmatically assess" the issues involved in each case.  *Tierno*, 2006 WL 2535056, at *5.  As the

13   United States Supreme Court emphasized, "predominance is a test readily met in certain cases

14   alleging consumer . . . fraud."  *Amchem*, 521 U.S. at 625.  Common issues "predominate" where a

15   common nucleus of facts and potential legal remedies dominate the litigation.  *See Chamberlan v.*

16   *Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005).  Furthermore, the existence of individual

17   issues will not, by itself, defeat certification.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d

18   Cir. 1985); *Dal Ponte*, 2006 WL 2403982, at *7.  Rather, they must be less significant than the

19   common issues and must not be so unmanageable as to defeat class treatment.  *Dal Ponte*, 2006

20   WL 2403982, at *7.  Inasmuch as Plaintiffs' claims arise out of the same set of operative facts

21   and are premised on identical legal theories, the predominance requirement is easily satisfied

22   here.  This is particularly true in that few, if any, Class Members appear to have suffered

23   individualized out-of-pocket damages.  Common questions clearly predominate in this case,

24   where each class member would seek to remedy the same grievance.

25       With respect to superiority, Rule 23(b)(3) requires Plaintiffs to demonstrate that the

26   proposed class action is superior to other available forms of adjudication.  In determining

27   superiority, four considerations are relevant: (1) the interests members of the class have in

28

17

individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-93 (9th Cir. 2001).

As to the first factor, Class Members have little interest in controlling this action on their own as the alleged damages affecting each individual are slight compared to the cost of litigating a case of this complexity.  Class actions, as a general proposition, are favored for the very purpose of providing individuals with relatively small damages, and therefore little incentive to litigate, an opportunity to prosecute their rights.  The United States Supreme Court crystallized this notion in *Amchem* explaining that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem,* 521 U.S. at 617.  *See also Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."); *see also* Wright, Miller & Kane, Federal Practice and Procedure §1779 at 557 (2d ed. 1986) ("For example, a group composed of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.  When this is the case it seems appropriate to conclude that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.").  Here, few if any Class Members suffered out-of-pockets damages and Class Members are therefore are unlikely to pursue litigation against Google on their own.

Next, while other class actions have been brought against Google concerning its launch of Buzz, all of these cases have now been consolidated in the Northern District of California and will be resolved by the proposed Settlement.  Thus, as a result of the Settlement, the litigation, already concentrated in this forum, will now be fully and finally resolved.

18

For all of the above reasons, plaintiffs contend that common questions predominate and a class action is the superior method of settling this controversy.

**C.     The Court Should Approve The Proposed Settlement Notices and Authorize Their Dissemination.**

In any proceeding which is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Id.* Additionally, the notice must be designed so as to have a reasonable chance of reaching a substantial percentage of the class members; *Id.* at 318 (notice must be reasonably calculated to reach interested parties).

Here, the proposed notice and the method of dissemination meet each of these requirements.  Google will send all identifiable Class Members notification via an email to their Gmail account, which email will notify them of the settlement and provide a hyperlink to the Settlement website.  On the Settlement website class members can review the detailed Notice which provides clear and concise information with respect to all the relevant aspects of the litigation, including  (a) the class definition and statement of claims; (b) the litigation history; (c) the terms of the Settlement Agreement; (d) the binding effect of any judgment approving the Settlement on those who do not opt out; (e) the right to (and procedure for) opting out or back into the Settlement Class; (f) the right to (and procedure for) objecting to the Settlement; (g) whom to contact to obtain additional information regarding the Settlement or the litigation; (h) the manner in which compensation will be provided to the Class Representatives to compensate them for their service to the class; and (g) the manner in which Class Counsel will be compensated. (Settlement Agreement, Exhibit B).  Thus, the Notice provides all the information necessary for Class Members to make informed decisions with respect to whether they remain in or opt out of the Settlement Class or object to the proposed Settlement.

Accordingly, the content and method of dissemination of the proposed Notice fully comports with the requirements of due process and applicable case law. As such, the Court should approve the proposed Notice and direct that it be distributed as agreed by the parties.

**D.    The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order.**

Once the Court has ruled on the motion for preliminary approval, the times for providing notice, opting out of the Settlement Class, and submitting claims will begin to run.  The parties propose the following sequence of events and deadlines, assuming the Court grants this motion for preliminary approval.

| | Event | Timing |
|---|---|---|
| 1. | Deadline for Dissemination of Class Notice | **Within Thirty (30) days after Preliminary Approval Order Signed** |
| 2. | Deadline for Class Counsel to file petition for award of attorneys' fees and reimbursement of expenses and request for incentive awards to the Class Representatives. | **No Later than Twenty-One (21) Days before the Fairness Hearing** |
| 3. | Deadline for filing Requests for Exclusion | **Postmarked No Later than Sixty (60) days after Preliminary Approval Order Signed** |
| 4. | Deadline for filing Objections | **Received No Later than Twenty-One (21) days prior to the Fairness Hearing** |
| 5. | Deadline for Responses to Class Counsel's petition for an award of attorneys' fees and reimbursement of expenses and request for incentive awards to the Class Representatives. | **Postmarked No Later than Ten (10) days prior to the Fairness Hearing** |
| 6. | Deadline to File Affidavit of Notice of Mailing. | **At or Before the Fairness Hearing** |
| 7. | Deadline for Class Counsel to file any Reply in Support of an award of attorneys' fees and reimbursement of expenses and request for incentive awards to the Class Representatives. | **No Later than Five (5) Days Prior to the Fairness Hearing** |

| Event | Timing |
|-------|--------|
| 8. Deadline for Filing Submissions in Support of the Settlement. | **No Later than Twenty-One (21) Days Prior to the Fairness Hearing** |
| 9. Deadline for Class Counsel to Reply to any opposition to memorandum filed by any objector. | **No Later than Five (5) Days Prior to the Fairness Hearing** |
| 10. Fairness Hearing. | **At Least Ninety (90) Days Following Preliminary Approval** |

## V.   CONCLUSION.

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant this motion for preliminary approval of the Settlement, provisionally certify the class, approve the content and authorize the dissemination of the proposed settlement notice, and schedule a fairness hearing and adopt the proposed schedule of events and deadlines.

Respectfully submitted,

Dated:  September 3, 2010        By:        */s/ Gary E. Mason*

Gary E. Mason, Esq. (admitted *pro hac vice*)
MASON LLP
1625 Massachusetts Ave., N.W., Suite 605
Washington, D.C. 20036
Tel. (202) 429-2290
Fax. (202) 429-2294

Michael F. Ram (SBN 104805)
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Phone: (415) 433-4949
Fax: (415) 433-7311

Peter N. Wasylyk (pro hac vice)
LAW OFFICES OF PETER N. WASYLK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Phone: (401) 831-7730

Andrew S. Kierstead (SBN 132105)
LAW OFFICE OF ANDREW
    KIERSTEAD
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Phone: (508) 224-6246

Michael D. Braun (SBN 167416)
Braun Law Group, P.C.
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Phone: (310) 836-6000

Peter W. Thomas
THOMAS GENSHAFT, P.C.
0039 Boomerand Rd, Ste 8130
Aspen, Colrado 81611
Phone: (970) 544-5900

William B. Rubenstein (SBN 235312)
1545 Massachusetts Avenue
Cambridge, Massachusetts 02138
Phone: (617) 496-7320
Fax: (617) 496-4865

Donald Amamgbo
AAMAMGBO & ASSOCIATES
7901 Oakport St., Ste 4900
Oakland, California 94261

Reginald Terrell, Esq.
THE TERRELL LAW GROUP
P.O. Box 13315, PMB # 149
Oakland, California 94661

Jonathan Shub (SBN 237708)
SHUB LAW LLC
1818 Market Street, 13th Floor
Philadelphia, Pennsylvania 19102
Phone: (610) 453-6551

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, New York
Phone: (212) 584-0700

Lawrence Feldman
LAWRENCE E. FELDMAN &
       ASSOC.
423 Tulpehocken Avenue
Elkins Park, Pennsylvania 19027
Phone: (215) 885-3302

Eric Freed (SBN 162546)
FREED & WEISS LLC
111 West Washington Street, Ste 1311
Chicago, IL 60602
Phone: (312) 220-0000

Howard G. Silverman
KANE & SILVERMAN, P.C.
2401 Pennsylvania Ave, Ste 1C-44
Philadelphia, PA 19130
Phone: (215) 232-1000

*Attorneys for Plaintiffs and the
Proposed Class*