1  Gary E. Mason (*pro hac vice*)
   gmason@masonlawdc.com
2  Donna F. Solen (*pro hac vice*)
   dscolen@masonlawdc.com
3  MASON LLP
   1625 Massachusetts Ave., NW
4  Washington, DC 20036
   Telephone:  (202) 429-2290
5  Facsimile:  (202) 429-2294

6  Michael F. Ram (SBN 104805)
   mram@ramoson.com
7  RAM & OLSON LLP
   555 Montgomery Street, Suite 820
8  San Francisco, California 94111
   Telephone:  (415) 433-4949
9  Facsimile:  (415) 433-7311

10 William B. Rubenstein (SBN 235312)
   rubenstein@law.harvard.edu
11 1545 Massachusetts Avenue
   Cambridge, Massachusetts 02138
12 Telephone:  (617) 496-7320
   Facsimile:  (617) 496-4865

13
   *Attorneys for Plaintiffs and the Proposed Class*
14

15                    UNITED STATES DISTRICT COURT
16                   NORTHERN DISTRICT OF CALIFORNIA
                            SAN JOSE DIVISION
17

18 | IN RE GOOGLE BUZZ USER | Case No. 5:10-CV-00672-JW |
|---|---|
19 | PRIVACY LITIGATION | **NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| This Pleading Relates To: | |
| ALL CASES | |
| | Date:   January 31, 2011<br>Time:   9:00 a.m.<br>Place:  Courtroom 8, 4th Floor<br>   **[Hon. James Ware]** |

26

27

28

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................................. 2

      A.    Background ........................................................................................... 2

      B.    Plaintiffs' Legal Claims and Google's Defenses ................................... 2

      C.    Google's Response to the Privacy Concerns .......................................... 3

      D.    Negotiations, Mediation, and Settlement .............................................. 3

      E.    Confirmatory Discovery ........................................................................ 4

      F.    Preliminary Approval ............................................................................ 5

II.   THE PROPOSED SETTLEMENT ............................................................... 5

      A.    The Settlement Class ............................................................................. 5

      B.    The Settlement Benefits ........................................................................ 6

      C.    Attorneys' Fees and Costs ..................................................................... 7

      D.    Settlement Administration and Notice ................................................... 7

      E.    Requests for Exclusions From and Objections to the Settlement ........... 8

III.  ARGUMENT ................................................................................................ 8

      A.    The Court-Ordered Notice Program is Constitutionally Sound and Has
            Been Fully Implemented ........................................................................ 8

      B.    The Settlement Agreement is Fair, Adequate and Reasonable ............... 9

            1.    The Relief Obtained Provides Substantial Benefits to the Class
                  Members .................................................................................. 11

            2.    The Positive Reaction of the Class Supports Final Approval ..... 15

            3.    The Strength of Plaintiffs' Case Balanced Against the Risk and
                  Expense of Continued Litigation Supports Final Approval ...... 15

            4.    Through Discovery, Independent Investigation, and Formal
                  Discussions with Google, Class Counsel Gained Ample
                  Understanding of the Buzz Program and the Class Members'
                  Claims ...................................................................................... 16

            5.    The Recommendation of Experienced Counsel Supports Final
                  Approval .................................................................................. 17

            6.    The Settlement Agreement is the Product of Good Faith and Hard-
                  Fought Negotiation Between Experienced Counsel ................... 18

      C.    The Court Should Certify the Settlement Class Pursuant to Federal Rule of
            Civil Procedure 23(b)(3) ..................................................................... 18

1.      The criteria for class certification under Rule 23(a) are satisfied ............ 18

        a.      The class is so numerous that joinder of all members is
                impracticable ................................................................................ 18

        b.      There are many questions of law and fact common to the
                class ............................................................................................... 19

        c.      The class representatives' claims are typical of the class.............. 19

        d.      The named plaintiffs and their counsel adequately represent
                the proposed class ......................................................................... 20

2.      The proposed settlement class meets the predominance and
        superiority requirements of rule 23(b)(3) ................................................ 20

        a.      Common questions predominate .................................................... 21

        b.      Class treatment is superior to alternate methods of
                adjudication ................................................................................... 21

        c.      The nature of the remedies herein is consistent with (b)(3)
                certification ................................................................................... 22

IV.   CONCLUSION ..................................................................................... 23

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*7-Eleven Owners for Fair Franchising v. Southland Corp.*
   102 Cal. Rptr. 2d 777 (Cal. App. 1 Dist. 2000) .................................................................17

4

*Abels v. JBC Legal Group, P.C.*
   227 F.R.D. 541 (N. D. Cal. 2005) ...................................................................................14

5

6

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997) ........................................................................................21, 22

7

*Boyd v. Bechtel Corp.*
   485 F. Supp. 610 (N. D. Cal. 1979 ..........................................................................10, 17

8

9

*Browning v. Yahoo! Inc.*
   2006 WL 3826714 (N.D. Cal. Mar. 19, 2010) ....................................................................9

10

*Catala v. Resurgent Capital Services L.P.*
   2010 WL 2524158 (S.D. Cal., June 22, 2010) ...........................................................12, 23

11

12

*Chamberlan v. Ford Motor Co.*
   402 F.3d 952 (9th Cir. 2005)...................................................................................21

13

*Churchill Vill., L.L.C. v. G.E.*
   361 F.3d 566 (9th Cir. 2004)...................................................................................15

14

15

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992)..............................................................................10, 16

16

*DeLise v Farenheit Entertainment*, Civ. Act.
   No. CV-014297 (Cal. Sup. Ct., Marin Cty. Sept. 2001) ....................................................11

17

18

*Diamond Chemical Co., Inc v. Akzo Nobel*
   517 F.Supp. 2d 212 (D. D.C. 2007) ...............................................................................14

19

*DirecTV, Inc. v. Rawlins*
   523 F.3d 318 (4th Cir. 2008)...................................................................................14

20

21

*DirecTV, Inc. v. Ruiz*
   2006 WL 1458204 (D. N.J. May 24, 2006) ....................................................................14

22

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15 (N. D. Cal. 1980) .................................................................................10

23

24

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)..............................................................................passim

25

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992)...................................................................................19

26

27

*In re Consol. Pinnacle West Secs.*
   51 F.3d 194 (9th Cir. 1995).....................................................................................18

28

*In re DoubleClick, Inc. Privacy Litig.*
    No. 00 Civ 0641 (NRB) (S.D.N.Y. 2001) ........................................................ 11

*In re Omnivision Techs., Inc.*
    559 F.Supp.2d 1036 (N. D. Cal. 2008) ........................................................ 10, 15

*In re Toys "R" Us Antitrust Litig.*
    191 F.R.D. 347 (E. D. N.Y. 2000) .................................................................. 23

*In re Vitamin Cases*
    132 Cal. Rptr. 2d 425 (Cal. App. 1 Dist. 2003) ............................................. 12

*Kresnick v. Cendant Corp.*
    2007 WL 1795793 (N.D. Cal. June 20, 2007) ................................................. 19

*Lerwill v. Inflight Motion Pics., Inc.*
    582 F.2d 507 (9th Cir. 1978) ......................................................................... 20

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) ....................................................................... 17

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977) ....................................................................... 15

*Mullane v. Central Hannover Bank & Trust Co.*
    339 U.S. 306 (1950) ......................................................................................... 9

*Murillo v. Pac. Gas & Elec. Co.*
    2010 WL 2889728 (E.D. Cal. July 21, 2010) ................................................. 15

*Natl. Federation of Blind v. Target Corp.*
    2007 WL 2846462 (N.D. Cal. Oct. 2, 2007) ................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ....................................................................... 9, 18

*Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................... 10, 15

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815 (1999) ....................................................................................... 18

*Reade-Alvarez v. Eltman, Eltman & Copper, P.C.*
    237 F.R.D. 26 (E. D. N.Y. 2006) .................................................................... 23

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994) ........................................................................... 8

*Six (6) Mexican Workers v. Ariz. Citrus Grower*
    904 F.2d 1301 (9th Cir. 1990) ....................................................................... 12

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 10

*Sullivan v. Kelly Services, Inc.*
    268 F.R.D. 356 (N. D. Cal. 2010) .................................................................. 21

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001)......................................................................21, 22

**Statutes**

Cal. Bus. & Prof. Code §17200...........................................................................2

**Rules**

Fed. R. Civ. P. 23(b)(3)..........................................................................passim

Fed. R. Civ. P. 23(c)(2)(B).........................................................................8, 9

Fed. R. Civ. P. 23(e) ..........................................................................1, 10, 18

**Treatises**

4 W. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS
  § 11.41 (4th ed. 2002 & 2010 Supp.) ..............................................................10

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH
  § 30.42 (2004) .............................................................................................10

Case No. 10-00672-JW – NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT
CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

v

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on January 31, 2011 at 9:00 a.m., or on such other date as the Court directs, in Courtroom 8, 4th Floor of the United States District Court, Northern District of California, San Jose Division, before the Honorable James Ware, Plaintiffs Andrew Souvalian ("Souvalian"), Katherine C. Wagner ("Wagner"),  Mark Neyer ("Neyer"), Barry Feldman ("Feldman"), John H. Case ("Case"), Lauren Maytin ("Maytin"), and Rochelle Williams ("Williams") (collectively "Plaintiffs" or "Class Representatives") on behalf of themselves and all those similarly situated and Google Inc. ("Google") will respectfully move this Court for an order (1) finally approving the proposed Settlement; and (2) certifying the Settlement Class and appointing Class Representatives and Class Counsel.  Plaintiffs make this motion, with the support of counsel for defendant, pursuant to Federal Rule of Civil Procedure 23(e) as set forth in the accompanying brief.

This Motion will be based on this Notice; the accompanying Memorandum of Points and Authorities in Support of the Motion; the Declaration of Gary E. Mason, the Declaration of Susan Fahringer, the Declaration of Brian Stoler, and the Affidavit of Jennifer M. Keough filed herewith, the Settlement Agreement and exhibits, attached to the Preliminary Approval Memorandum as Exhibit 1; the Court's file in this action, and such other argument or evidence as may be presented at or prior to the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

The parties to this putative class action, Plaintiffs Andrew Souvalian, Katherine C. Wagner, Mark Neyer, Barry Feldman, John H. Case, Lauren Maytin, and Rochelle Williams (collectively "Plaintiffs" or "Class Representatives"), and Google Inc. ("Google"), have reached a Settlement Agreement resolving all claims asserted in this action.  The Settlement's terms were reached after an extensive, arms-length negotiation before a mediator, the Hon. Fern Smith. Pursuant to Federal Rule of Civil Procedure 23(e), the parties respectfully request an order from this Court granting final approval to the proposed Settlement, the terms of which are set forth as Exhibit 1 to the Notice of Motion and Motion for Order Preliminarily Approving Class Action Settlement (Docket No. 41) previously submitted by the parties on September 2, 2010 (the

1   "Settlement Agreement").   The parties also respectfully request that the order certify the

2   Settlement Class and appoint Class Counsel and the Lead Plaintiffs as Class Representatives.

3   **I.      STATEMENT OF FACTS**

4            **A.      Background**

5            Google launched a social networking product, "Google Buzz" (or "Buzz"), on February 9,

6   2010.  Google Buzz was built into Gmail, Google's email program.  In the terms used in Google

7   Buzz, Buzz users are networked with those other individuals whom they are "following" and

8   have individuals who are "followers" of them.   Buzz suggests follower/following lists to

9   prospective Buzz users based in part upon who they email and chat with the most in Gmail.  Buzz

10  users' follower/following list may be publicly viewable through their Google profile. Plaintiffs

11  alleged that this approach to a social networking program raised privacy concerns (1) because

12  email users did not necessarily want to be in social networks with their email contacts; and (2)

13  because public knowledge of how the "follower/following" lists were populated, coupled with

14  the potential public availability of these lists, appeared to divulge a Gmail user's most frequent

15  email contacts without sufficient consent.

16           **B.      Plaintiffs' Legal Claims and Google's Defenses**

17           Eva Hibnick filed the initial class action complaint in this action on February 17, 2010, on

18  behalf of all Gmail users in the United States to whose accounts Google introduced the Buzz

19  program.  Additional complaints were filed against Google on March 3, April 5, May 7, and June

20  7, 2010.  The plaintiffs in these actions alleged that aspects of the operation of Google Buzz

21  violated:  (i) the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*.; (ii) the Stored

22  Communications Act ("SCA"), 18 U.S.C. §2701 *et seq*.; (iii) the Computer Fraud and Abuse Act,

23  18 U.S.C. §1030 *et seq*.; (iv) the California common law tort of public disclosure of private facts;

24  and (v) the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200.

25           Google contends that the plaintiffs have mischaracterized and misunderstood how Google

26  Buzz operates, has denied and continues to deny plaintiffs' allegations, and denies that it has

27  engaged in any wrongdoing whatsoever relating to Google Buzz.   Google denies that the

28  plaintiffs and putative class are entitled to any form of damages or other relief, and has

maintained throughout this litigation that it has meritorious defenses to all alleged claims and that it was and is prepared to vigorously defend against those claims.

On June 30, 2010, this Court granted Plaintiff Hibnick's motion to consolidate the cases and to appoint interim lead class counsel and liaison counsel.

## C.   Google's Response to the Privacy Concerns

While denying any legal liability, Google responded quickly to improve Google Buzz and to address concerns that had been raised about it.   Google announced and implemented several modifications within the first week after Buzz's release.   These changes included: (1) modifying the introductory screens to provide a more visible option for users to opt-out of the public display of their "follower" and "following" lists on their profile page; (2) improving the ease with which users could block unwanted followers; (3) moving from a system that automatically selected the people a user was "following" to an "auto-suggest" model that displayed a suggested list and made the ability to de-select individuals a user did not wish to follow more prominent and user-friendly; (4) changing the default so that users must affirmatively opt-in if they wish Buzz to connect to other publicly shared Google content (such as photo albums uploaded to Picasa); and (5) adding a Buzz tab to the Gmail settings page, through which users could control privacy and other settings relating to their Buzz account, as well as disable their Buzz account completely if so desired.   Then, on April 5, 2010, several months after the original plaintiffs filed their case, Google presented a "confirmation page" to each Buzz user.   The page described the settings on the user's Buzz account and asked the user to confirm that the account was set up the way the user wanted, placing particular emphasis on the privacy settings for the user's account.

## D.   Negotiations, Mediation, and Settlement

Google proposed to Class Counsel an in-person meeting to discuss the way the Buzz program functioned and the possible resolution of the litigation.   The first meeting between the parties took place on April 21, 2010 at the office of Google's Counsel in San Francisco.   *See* Declaration of Gary E. Mason in Support of Preliminary Approval of Class Action Settlement, Docket No. 42 ("Mason Prelim. Decl.") (filed September 3), at ¶ 5.   Google's Vice President for Product Management, whose responsibilities included the launch of Buzz, spent several hours

Case No. 10-00672-JW – NOTICE OF MOTON AND MEMORANDUM IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

3

1   discussing the program with Class Counsel.  *Id.*  He provided an explanation of how Buzz

2   functioned and responded to Class Counsel's questions.  *Id.*  Google's Counsel also made an

3   extended presentation of the company's defenses to the allegations in the complaints,

4   characterizing the presentation as essentially representing the substantive contentions that Google

5   would pursue were it to file a motion to dismiss.  *Id.*  Class Counsel debated these legal issues

6   with Google's Counsel.  *Id.*  These discussions culminated with an agreement to exchange

7   information and to then engage in a formal mediation session.  *Id.*

8        Prior to the mediation, Google provided further material to Class Counsel, including

9   numerous screenshots showing the functioning of the Buzz program at various times since its

10  launch.  Mason Prelim. Decl., ¶ 6.  Using this information and through an independent

11  investigation of the facts and law, Class Counsel produced for Google and the Mediator a 73-

12  page Mediation Statement that included a 31-page legal brief in support of plaintiffs' case.  *Id.*

13  This brief outlined the plaintiffs' affirmative legal argument and responded to the de facto motion

14  to dismiss Google's Counsel had presented at the April meeting.  *Id.*   Similarly, Google

15  produced a Mediation Statement for the Mediator, some of which was shared with Class Counsel.

16  *Id.*

17       On June 2, 2010, the parties met for the formal mediation session at the JAMS office in

18  San Francisco.  Mason Prelim. Decl., ¶ 7.  Hon. Fern Smith, a retired judge of the U.S. District

19  Court for the Northern District of California with extensive experience in class actions, presided.

20  *Id.*  At the outset, Class Counsel made a formal presentation of plaintiffs' factual and legal case

21  to the mediator and Google's Counsel.  *Id.*  The parties spent the remainder of the day discussing

22  the factual and legal issues and the possibilities for settlement.  *Id.*  After approximately 14 hours,

23  the mediation proved successful, resulting in a Term Sheet and ultimately in the formal

24  Settlement Agreement described below.  *Id.*

25       **E.     Confirmatory Discovery**

26       As part of the Settlement, the parties agreed that Google would provide materials to Class

27  Counsel for the purpose of confirmatory discovery.  Mason Prelim. Decl., ¶ 8.  Shortly after the

28  mediation, Google made available to Class Counsel all consumer feedback that it had received

---

about the Buzz program from users throughout the world.  *Id.*  Google also produced a series of sworn statements in which Google employees described relevant aspects of Buzz's launch and subsequent operations.  *Id.*  Class Counsel reviewed these documents, which amounted to thousands of pages.  *Id.*  Class Counsel developed a coding system to analyze the user feedback. Class Counsel identified no instances in which a class member alleged they had suffered out-of-pocket damages due to Buzz's release.

### F.     Preliminary Approval

This Court held a preliminary approval hearing on October 4, 2010.  On October 7, 2010, the Court issued an Order preliminarily approving the Settlement and ordering notice to the class. The Court conditionally certified a Settlement Class and found that the requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3), were satisfied for that purpose. Order Granting Preliminary Approval of Class Action Settlement, Docket No. 50, ("Preliminary Approval Order") (filed October 7), at ¶ 4.  The Court preliminarily found that the terms of the Settlement were "fair, reasonable, and adequate, and in the best interests of the Settlement Class as a whole."  *Id.* at ¶ 5.  The Court approved the notice program, finding it to be "the best notice practicable under the circumstances."  *Id.* at ¶ 6.

The Court set the following schedule for final approval: (1) the email notice program and joint press release would be distributed within thirty days of the Order; (2) exclusions and opt-outs were to be received within sixty days of the Order; (3) Plaintiffs' petition for fees and expenses was due by December 20, 2010; (4) objections are to be received by January 10, 2011; and (5) the fairness hearing is scheduled for January 31, 2011 at 9:00 a.m.  Preliminary Approval Order, at ¶¶ 8, 12-13.

## II.    **THE PROPOSED SETTLEMENT**

### A.     The Settlement Class

On October 7, 2010, the Court preliminarily certified the following Settlement Class:

> All Gmail users in the United States presented with the opportunity to use Google Buzz through the Notice Date.  Excluded from the Class are: (1) Google, or any entity in which Google has a controlling interest, and its respective legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's staff and immediate family; and (3) any person who, in accordance with the terms of this

Case No. 10-00672-JW – NOTICE OF MOTON AND MEMORANDUM IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

5

1   Agreement, properly executes and submits a timely request for exclusion from the
2   Class.

3   Notice was disseminated beginning on November 2, 2010, which is the Notice Date.

4   **B.      The Settlement Benefits**

5   The Settlement recognizes and secures three significant benefits for the class.

6   *Changes to the Buzz Program.*  The Settlement recognizes that, since the inception of
7   these lawsuits, Google has made changes to the Buzz program to address privacy and other
8   concerns raised by users.  These changes are described in part I(C) above.

9   *Public Education.*  The Settlement requires that Google undertake wider public education
10  about the privacy aspects of Buzz.  Google will report back to Class Counsel identifying the
11  content of the educational efforts it undertakes within 90 days of the entry of final judgment.

12  *Settlement Fund.*  The Settlement provides for the creation of an $8.5 million Settlement
13  Fund.  After deduction of attorneys' fees and expenses, incentive awards and administrative
14  costs, the balance of the Settlement Fund will be paid to *cy pres* beneficiaries, which shall be
15  existing organizations focused on Internet privacy policy or privacy education.  Settlement at
16  ¶3.4.  The Settlement provides that the parties shall mutually agree on the *cy pres* recipients and
17  the amounts for each.

18  The parties have agreed upon a fair process for identifying a strong set of worthy *cy pres*
19  recipients.  Class Counsel has solicited applications from several independent organizations with
20  extensive expertise in designing *cy pres* distribution processes to assist in identifying a fair cross
21  section of potential *cy pres* recipients and is in the process of finalizing a selection of one of these
22  organizations to assist in this effort.   Google, which has significant experience working with
23  privacy groups, will employ its own process for identifying potential grantees.  The parties have
24  agreed that they will then negotiate a final list of grant recipients under the auspices of the
25  mediator, the Hon. Fern Smith, who will assist the parties in resolving any disagreement between
26  them regarding the final selection of the *cy pres* recipients.  This process will ensure that the *cy*
27  *pres* funds are distributed to a cross-section of pre-existing organizations to support policy and
28  educational efforts about internet privacy, the central concern underlying the class's claims.

### C.      Attorneys' Fees and Costs

Concurrently with this motion and brief, Class Counsel have submitted a separate application for attorneys' fees and costs.  The requested fee is 25% of the settlement fund, or $2,125,000.  As discussed more fully in Counsel's fee application, a 25% fee is the benchmark in the Ninth Circuit for percentage fee awards and is an appropriate award in this case.

### D.      Settlement Administration and Notice

The notice plan approved by the Court on October 7, 2010 has been implemented.  The parties retained the Garden City Group ("GCG") as the Settlement Administrator.  GCG established a website, www.buzzclassaction.com, which includes a summary of the proposed Settlement, a timeline to object, a link to the Class Notice, Frequently Asked Questions, and links to important court documents including the Settlement Agreement.  Affidavit of Jennifer M. Keough in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Keough Decl."), at ¶ 3.   The Class Notice includes further information including a description of plaintiffs' legal claims and detailed instructions on how to opt-out or object.  The website remains available to the public for review and downloading of documents.  *Id.*  GCG also maintains a twenty-four hour toll-free help line for the benefit of class members.  *Id.* at ¶ 4.

On November 2, 2010, Google distributed an email to all Gmail users whom Google could identify through reasonable efforts as residing in the U.S.  The email informed users of the nature of the action, described the relief contained in the Settlement, told users of the right to opt-out and gave the deadline for exclusion, and provided a link to the settlement website. Declaration of Brian Stoler, ¶ 2 & Exh. 1.  Industry research suggests there are more than 37 million Gmail users in the US.[1]  In addition, Class Counsel and Google mutually agreed to a joint press release, which, like the email, described the relief contained in the Settlement, told users of the right to opt-out and gave the deadline for exclusion, and provided a link to the settlement website.   The press release was sent to major news organizations over Business Wire on

---

[1] *See Gmail Nudges Past AOL Email in the U.S. To Take No. 3 Spot*, TechCrunch.com, Aug. 14, 2009, available at http://techcrunch.com/2009/08/14/gmail-nudges-past-aol-email-in-the-us-to-take-no-3-spot/.

1   November 2, 2010, and news of the Settlement was announced by several news organizations.

2   Declaration of Gary E. Mason in Support of Motion for Final Approval and Application for

3   Award to Attorneys' Fees and Reimbursement of Expenses, at ¶ 5 ("Mason Final Decl.").

4        The notice program was successful in reaching the class.  The settlement website has had

5   more than 1.4 million hits.  Keough Aff., at ¶ 3.  The notice not only reached the class, it also

6   provided sufficient information to class members to make an informed decision about whether to

7   accept, opt-out of, or object to the proposed Settlement.

8        Pursuant to its obligation under the Class Action Fairness Act of 2005 ("CAFA"), 28

9   U.S.C. §1715, the defendant also provided notice to the requisite public officials on September

10  10 and 17, 2010.  Declaration of Susan Fahringer, ¶¶ 2-4.

11      **E.**    **Requests for Exclusions From and Objections to the Settlement**

12       Pursuant to the Court's October 7 Order granting preliminary approval, class members

13  who did not wish to participate in the Settlement were afforded ample opportunity to request

14  exclusion.  Requests for exclusion were to be sent to the administrator and received no later than

15  December 6, 2010.  A total of 578 class members sought exclusion from the Settlement, Keough

16  Aff., at ¶ 7, which amounts to less than 1/100 of a percent of the estimated 37 million member

17  class.  Keough Decl., at ¶ 7 .  Class members were also afforded the opportunity to object to the

18  Settlement.  Objections are due by January 10, 2011.  Class Counsel will report on – and respond

19  to – objections in its final reply brief, to be filed on or before January 26, five days prior to the

20  January 31st Fairness Hearing.

21  **III.**   **ARGUMENT**

22      **A.**    **The Court-Ordered Notice Program is Constitutionally Sound and Has Been**
23          **Fully Implemented**

24       Rule 23 requires that the class receive "the best notice practicable under the

25  circumstances, including individual notice to all members who can be identified through

26  reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Actual notice is not required.  *Silber v. Mabon*,

27  18 F.3d 1449, 1454 (9th Cir. 1994).  Notice to the class must be "reasonably calculated under all

28  the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Browning v. Yahoo! Inc.*, 2006 WL 3826714, at *8 (N.D. Cal. Mar. 19, 2010) (approving notice to the class by email that included a link to the settlement website).

The notice program in this case has four components and clearly meets the statutory and constitutional standard. *First*, Google sent individual email notice to the Gmail account of each class member.  Email notice was particularly appropriate in this case because the alleged harm took place through users' Gmail accounts.  Moreover, email account holders do not necessarily register U.S. mail addresses when opening an email account, so mailed notice would have been both prohibitively expensive and impracticable.  The email notice contained a link to the settlement website, accessible via a single click, and the large number of visits the website has received – 1.4 million – is evidence that email notice was effective.  Keough Decl., at ¶ 3. *Second,* the parties issued the joint press release containing key information about the Settlement and a link to the settlement website, and this release was picked up in a number of major media outlets.   Mason Final Decl. at ¶ 5.  *Third,* the notice program encompassed the settlement website.   The website, [www.buzzclassaction.com](www.buzzclassaction.com), contains detailed information about the Settlement, the right to opt-out or object, and links to important documents.  As noted, the website has received 1.4 million visits.  Keough Decl., at ¶ 3.  *Fourth*, the parties posted at the website a full notice containing detailed information about the Settlement in a simple question and answer format.

The four-prong notice program was "the best notice practicable under the circumstances," and accomplished "individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

## B. The Settlement Agreement is Fair, Adequate and Reasonable

Ninth Circuit law has long embodied a strong policy favoring voluntary settlement of complex class actions.   "[V]oluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).   Complex class actions lend themselves to compromise because of the difficulties of proof, uncertainty of outcome, and

Case No. 10-00672-JW – NOTICE OF MOTON AND MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT
CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

9

1    length and complexity of litigation. *Id.*; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d

2    1268, 1276 (9th Cir. 1992) ("strong judicial policy . . . favors settlements, particularly where

3    complex class action litigation is concerned"); 4 W. RUBENSTEIN, ET AL., NEWBERG ON CLASS

4    ACTIONS § 11.41 (4th ed. 2002 & 2010 Supp.) ("*Newberg on Class Actions*") (gathering cases).

5        A class action settlement must be "fair, adequate and reasonable." Fed. R. Civ. P. 23(e).

6    A settlement is fair, adequate, and reasonable when "the interests of the class as a whole are

7    better served if the litigation is resolved by the settlement rather than pursued." FEDERAL

8    JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH § 30.42 (2004).  The decision to

9    approve or reject a proposed settlement is committed to the Court's sound discretion.  *City of*

10   *Seattle*, 955 F.2d at 1276. The Ninth Circuit has identified a non-exhaustive list of factors to

11   guide the final approval inquiry, including: "the strength of the plaintiffs' case; the risk, expense,

12   complexity, and likely duration of further litigation; the risk of maintaining class action status

13   throughout the trial; the amount offered in settlement; the extent of discovery completed and the

14   stage of the proceedings; the experience and views of counsel; the presence of a governmental

15   participant; and the reaction of the class members to the proposed settlement."  *Hanlon v.*

16   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d

17   938, 959 (9th Cir. 2003).   "The recommendations of plaintiffs' counsel should be given a

18   presumption of reasonableness," particularly when counsel has significant experience litigating

19   similar cases.  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N. D. Cal. 2008)

20   (*quoting Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N. D. Cal. 1979)).

21       The issue is not whether the settlement could be better, but whether it is fair, adequate and

22   reasonable and free from collusion. *Hanlon*, 150 F.3d at 1027.  Where, as here, the settlement is

23   the product of arm's-length negotiations conducted by capable counsel with extensive experience

24   in complex class action litigation, the Court begins its analysis with a presumption that the

25   settlement is fair and should be approved.  *See Newberg on Class Actions*, § 21.41; *see also Ellis*

26   *v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N. D. Cal. 1980) ("the fact that experienced

27   counsel involved in the case approved the settlement after hard-fought negotiations is entitled to

28   considerable weight").  All of the relevant factors support approval.

**1.    The Relief Obtained Provides Substantial Benefits to the Class Members**

The Settlement provides for three forms of relief.  *First*, it recognizes that since the inception of this litigation Google has made changes to the Buzz program that address the privacy concerns plaintiffs raised in their complaints.  *See* Section I(C) above.  *Second*, Google will undertake a public education program about the privacy aspects of Google Buzz.  This portion of the relief will bring a substantial benefit to the class because many of users' privacy concerns arose from misunderstandings and insufficient information regarding the functioning of Buzz, default settings in the program, and the tools with which users could control the public display of their data.  *Third,* the Settlement creates an $8.5 million fund payable to existing organizations that focus on Internet privacy; after fees and expenses, more than $6 million will likely be distributed, should the Court finally approve the Settlement and requested fees and expenses.  This is, to Counsel's knowledge, the largest distribution of funding ever directed at internet privacy.   This litigation produced these three forms of relief and each will benefit the class:  all class members may now use a more privacy-friendly Buzz program; all class members will receive further public education about the privacy features of Buzz; and all class members will benefit significantly from the Internet privacy initiatives funded by this Settlement.

This package of settlement benefits compares favorably to settlements in other cases concerning alleged privacy violations.  *See In re DoubleClick, Inc. Privacy Litig*., No. 00 Civ 0641 (NRB) (S.D.N.Y. 2001) (defendant, an Internet ad-serving company, revised its notice and data collection practices, and conducted a privacy-oriented public information campaign); *DeLise v Farenheit Entertainment*, Civ. Act. No. CV-014297 (Cal. Sup. Ct., Marin Cty. Sept. 2001) (defendants, sellers of music CDs who allegedly collected and divulged user contact information and data about music preferences, updated their privacy policies, added warning labels to CDs, and purged previously collected data).[2]

---

[2] The one case that created a *cy pres* fund similar in size to this one, *Lane v. Facebook, Inc*., No. 08-cv-3845 RS (N.D. Cal. Feb. 1, 2010) (Docket No. 96), drew substantial objections because the monies were not distributed but sent to a new foundation created and controlled by Facebook.  By contrast, this settlement will fund only existing organizations focusing on Internet privacy policy or privacy education.

1    Theoretically, the Settlement might have created a claiming process for class members

2    who suffered individual injuries and distributed only the residual funds via *cy pres*.  That familiar

3    structure, however, is nothing but theoretical in these circumstances for three reasons: *first*, each

4    class member's claim is so small, and the class so large, that the costs of distribution would have

5    far outweighed the benefits received; *second*, there is no evidence that any individual class

6    members suffered actual out-of-pocket damages; and *third*, in the absence of out-of-pocket

7    damages, the primary basis upon which Counsel could have sought recovery for the class – had

8    the case produced a final judgment in plaintiffs' favor – would have been statutory damages

9    under the SCA; but by their nature, statutory damages are intended to serve purposes other than

10   strict compensation, and these purposes are better accomplished through *cy pres* distribution.

11   1.    *Small claims and large class.*  If the total $8.5 million fund herein were distributed

12   among the estimated 37 million Gmail users in the United States, each user would receive

13   approximately 23 cents.   A recovery of less than a single quarter per class member would not

14   justify the expense of sending the funds.  Where the amount of money that would be distributed

15   to each class member is too small to justify the expense, it is well-established that a *cy pres*

16   distribution is a more appropriate and effective use of the fund.

17   Ninth Circuit law states that:  "Cy pres distribution is appropriate where distribution to

18   individual class members is impracticable." *Catala v. Resurgent Capital Services L.P.*, 2010 WL

19   2524158 (S.D. Cal., June 22, 2010) (approving *cy pres* distribution of the entire settlement fund

20   where "the de minimus recovery of approximately 13 cents per class member would make

21   distribution to the class members impracticable because of the burden and expense of

22   distribution."); *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir.

23   1990) ("Federal courts have frequently approved [*cy pres* awards] in the settlement of class

24   actions where the proof of individual claims would be burdensome or the distribution of damages

25   costly.").  California state law also approves full *cy pres* distribution in these circumstances.  *See*

26   *In re Vitamin Cases*, 132 Cal. Rptr. 2d 425 (Cal. App. 1 Dist. 2003).  In the primary California

27   state case on point, Class Counsel achieved a $38 million fund for a class smaller than this one

28   (30 million members).  The court approved a *cy pres* distribution because of the small recovery

1   (about $1.27) that each class member would receive were the money distributed individually. *Id.*

2   at 432-33.  If a $38 million fund for 30 million people supports a full *cy pres* distribution, then a

3   $8.5 million fund for a larger number of class members surely does.  Finally, in an influential

4   recent study, the American Law Institute issued a report that supports *cy pres* in a case such as

5   this on the grounds.  *See* American Law Institute, *Principles of Law of Aggregate Litigation,* §

6   3.07 (2010).

7        While *cy pres* distribution of a fund is appropriate in any case involving small claims and

8   a large class, it is especially appropriate in this case given the following additional factors.

9        2.    *No, or Very Few, Class Members Have Out-Of-Pocket Damages.*  Class Counsel

10  secured from Google all user feedback it received, including all complaints, regarding the Buzz

11  program.  Counsel analyzed, coded, and catalogued each of these 1,865 user comments.  See Part

12  I(E) above.  Counsel similarly reviewed the class representatives' experiences with Buzz, as well

13  as the experiences of persons who posted complaints about Buzz on the Internet.  After reviewing

14  all of these data points, Counsel were unable to identify any instances in which class members

15  had reported privacy breaches resulting in out-of-pocket damage.  It would have made little

16  sense, in this context, to go to the trouble of creating a claims facility, a claiming form, a

17  claiming process, and a claims distribution system.  The time and money invested in such an

18  effort would have likely far out-stripped any amounts actually distributed to individual class

19  members, and hence would have simply reduced the total amount available for *cy pres*

20  distribution.  If there are atypical class members with out-of-pocket individual damage claims,

21  these individuals were free to opt out of this Settlement and to pursue their claims individually.[3]

22       3.    *Class Members' Damage Allegations Are Statutory in Nature and Statutory*

23  *Damages Serve Functions Other Than Compensation.*[4]  An individual claiming process would

24  not only have been futile in this case, it would also have been an inefficient use of the class's

25

26

27  [3] The fact that only 578 class members excluded themselves is further evidence that out-of-pocket damages were rare, if not non-existent.

28  [4] Google, of course, denies that the class members are entitled to recover any damages, statutory or otherwise.

1    recovery in light of the purposes that statutory damage provisions (such as those found in the

2    applicable federal statutes) are intended to serve.    The SCA, for example, provides that a

3    successful plaintiff may be entitled to *statutory damages* of $1,000, regardless of individual

4    damages.   Because their amount is untethered from any actual harm individual plaintiffs may

5    suffer, statutory damages do not serve purely compensatory purposes.  Rather, statutory damages

6    stand in where out-of-pocket damages are small or difficult to prove, as in the case of privacy

7    violations.   They "stand in" not to compensate individual plaintiffs, but rather to serve the

8    exemplary function of identifying wrongdoing, to encourage plaintiffs to file suits that will deter

9    such wrongdoing, and to set a predetermined value for an injury that is difficult to quantify.   *See*

10   *DirecTV, Inc. v. Ruiz*, 2006 WL 1458204, at *2-3 (D. N.J. May 24, 2006) (stating that statutory

11   damages under ECPA are designed to serve as a deterrent to the wrongdoer rather than strict

12   compensation, and that ECPA statutory damages also exist "due to difficulty with quantifying the

13   amount of damages"); *DirecTV, Inc. v. Rawlins*, 523 F.3d 318 (4th Cir. 2008) (reversing the

14   denial of statutory damages under ECPA when the district court failed to consider the deterrence

15   purpose underlying ECPA's statutory damage provision).

16          *Cy pres* distribution of the Settlement Fund to organizations that conduct Internet privacy

17   policy and education will far more significantly accomplish these statutory goals than would

18   distribution of 23 cents to each class member.  *See Abels v. JBC Legal Group, P.C.*, 227 F.R.D.

19   541, 546 (N. D. Cal. 2005) (granting class certification in a statutory damages action because

20   "application of the recovery for the benefit of class members under cy pres doctrines, would

21   fulfill the deterrence objectives" of the lawsuit); *Diamond Chemical Co., Inc v. Akzo Nobel*, 517

22   F.Supp. 2d 212, 220 (D. D.C. 2007) (reasoning that *cy pres* distribution was particularly

23   appropriate in light of the "deterrence and punitive goals" of the statute).   Even if it were

24   economically feasible to distribute this amount to individual class members, 23 cents is unlikely

25   to make any difference in the lives of class members.  By contrast, by aggregating the money and

26   applying it to Internet privacy policy and education, the Settlement ensures that the fund will

27   serve a socially beneficial purpose closely related to the motivating purpose of the lawsuit and

28   the privacy-protecting purposes underlying the SCA.

In sum, in a situation with (a) small individual recoveries, for a very large class; (b) where few, if any, class member sustained out-of-pocket harm; and (c) where available damages are primarily statutory in nature, a *cy pres* distribution of the settlement funds is not a second-best resolution of a class suit:  it is a preferred resolution.  Approving the *cy pres* distribution in this case, however, would set no precedent beyond the unique facts presented here.  The first factor in favor of settlement approval is therefore met here:  the Settlement's benefits – changes to the Buzz program, more public education, and possibly the largest privacy fund in history – are considerable and support approval of the Settlement.

### 2.    The Positive Reaction of the Class Supports Final Approval

The response of the class to the Settlement has been overwhelmingly positive.  The Settlement Administrator has received only 578 requests for exclusion, Keough Aff., at ¶ 6, which represents less than 1/11 of a percent of the Settlement Class.  Such a minute proportion of opt-outs weighs in favor of a Court's finding that the Settlement is fair, adequate, and reasonable. *See, e.g. Churchill Vill., L.L.C. v. G.E.*, 361 F.3d 566, 577 (9th Cir. 2004) (upholding district court's approval of class settlement where 500 members opted out from a class of 90,000); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  The absence of a large number of opt-outs to a proposed class action settlement "raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Murillo v. Pac. Gas & Elec. Co.*, 2010 WL 2889728 at *9 (E.D. Cal. July 21, 2010) (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)).

The deadline for class members to file objections is January 10, 2011.  Although several objections have been received to date, the final objection deadline is still several weeks off.  Class Counsel will respond in its reply brief to all individual objectors and to the content of the objections they raise, rather than responding to some here and some later.

### 3.    The Strength of Plaintiffs' Case Balanced Against the Risk and Expense of Continued Litigation Supports Final Approval

Although Class Counsel believe that all claims asserted in the complaint are meritorious, the significant burdens plaintiffs would have faced in pursuing a class judgment against Google

1   and the substantial risk of failure weigh strongly in favor of final approval of the Settlement. Of

2   particular relevance to the reasonableness of the relief obtained under the proposed Settlement is

3   the fact that Google has and would continue to contest vigorously (a) the factual allegations about

4   Buzz's operations that plaintiffs make; (b) the substantive merits of class members' legal claims;

5   and (c) the named plaintiffs' ability to pursue this action on a class-wide basis.

6          If the plaintiffs had continued litigating, they would have faced numerous factual and

7   legal hurdles, any of which might have been fatal to the case, resulting in no recovery for the

8   class. These include: (1) demonstrating that the user information divulged by Google was

9   "content" rather than "record" information and thus not subject to the "records" exception to the

10  SCA found at 18 U.S.C. §2702; (2) winning the dispute over whether users consented to the

11  divulging of their information when they clicked through the screens Google presented to them

12  when it introduced Buzz; (3) proving that the plaintiffs' claims are typical of the class despite

13  variations in individual users' experiences with Buzz and in the way the Buzz program

14  functioned at various times during the class period; and (4) achieving class certification over

15  statutory damage claims that, when multiplied by the number of class members, would have

16  resulted in disproportionate and disastrous liability for the defendant.

17         In addition to the risk of little or no recovery, litigation would have incurred substantial

18  expense and caused lengthy delay in recovery for the class members. Even if the class had

19  prevailed at trial, Google would likely have appealed any adverse rulings against it. Accordingly

20  class members would likely not obtain relief, if at all, for a period of several years. The fact that

21  the Settlement avoids these challenges and provides prompt, substantial relief for class members

22  weighs in favor of final approval. *See City of Seattle*, 955 F.2d at 1291-92.

23          **4.     Through Discovery, Independent Investigation, and Formal**
                     **Discussions with Google, Class Counsel Gained Ample Understanding**
24                   **of the Buzz Program and the Class Members' Claims**

25         Prior to Settlement, Class Counsel conducted substantial independent investigation of the

26  functioning of the Buzz program and the strength of the class' legal claims. This effort included:

27  (a) communicating with class members about their experiences; (b) reviewing publicly available

28  material about Buzz found on the Internet, in concerns raised by public and private officials

throughout the world, and in public documents; (c) communicating with other individuals and groups alleging privacy problems with Buzz; (d) extensively communicating with Google about Buzz's operations; (e) meeting with Google officials and questioning them about Buzz's operations; (f) reviewing documents provided by Google about Buzz's operations; (g) reviewing all user complaints supplied to Google about Buzz's operations.

Moreover, this is not a case in which there were complex factual disputes requiring significant formal inquiry and employment of expert witnesses – as would, for example, a complex antitrust matter – nor one where extensive formal discovery would have uncovered many additional relevant facts. The facts of the case turned on the way the Buzz program worked, and most of the important information on this topic was available through basic Internet research and direct experimentation with the Buzz program. "[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) (internal quotation omitted); *see also 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 102 Cal. Rptr. 2d 777, 786-87 (Cal. App. 1 Dist. 2000).

The above-described factual and legal research allowed Class Counsel to negotiate the Settlement with ample knowledge of the case's strengths and weaknesses. Furthermore, after the parties had signed a term sheet, Google provided plaintiffs with affidavits from several employees regarding the launch and operation of the Buzz program as well as copies of every consumer comment, including every privacy complaint, Google had received regarding Buzz. Class Counsel reviewed all of these thousands of pages of documents. The information obtained confirmed representations Google had made to Class Counsel during settlement negotiations.

### 5. The Recommendation of Experienced Counsel Supports Final Approval

The judgment of experienced counsel regarding the settlement is entitled to significant weight, *see, e.g., Hanlon*, 150 F.3d at 1026, and the recommendation of experienced Class Counsel should be given a presumption of reasonableness. *See Boyd*, 485 F. Supp. at 622. Class Counsel in this case are experienced and skilled in consumer class action litigation; their firm

resumes are attached to the previously-filed Declaration of Gary E. Mason in Support of Preliminary Approval of Class Action Settlement.  See Mason Prelim. Decl., at ¶ 9 Exhibits 1-9. These experienced Class Counsel conducted a comprehensive legal and factual investigation of the claims, and Class Counsel firmly believe that the proposed Settlement agreement easily satisfies Rule 23(e)'s requirements and is in the best interest of all class members.  The decision by such experienced counsel to adopt this Settlement supports the conclusion that it is fair, reasonable, and adequate, and in the best interests of the class as a whole.

> **6.      The Settlement Agreement is the Product of Good Faith and Hard-Fought Negotiation Between Experienced Counsel**

Courts should also consider the presence of good faith and the absence of collusion on the part of the settling parties. *Officers for Justice*, 688 F.2d at 625.  To that end, courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements.  Here, the very experienced counsel negotiated this Settlement over many months with defense counsel.  The ultimate mediation session was overseen by a retired federal judge, Hon. Fern Smith, with significant class action and mediation experience.  There can be little doubt that this was an arms-length negotiation lacking in collusive qualities.  As the Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-length bargaining . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999); *see also In re Consol. Pinnacle West Secs.*, 51 F.3d 194, 197 n.6 (9th Cir. 1995).

> **C.      The Court Should Certify the Settlement Class Pursuant to Federal Rule of Civil Procedure 23(b)(3)**

> > **1.      The criteria for class certification under Rule 23(a) are satisfied**

> > > **a.      The class is so numerous that joinder of all members is impracticable**

The class that plaintiffs seek to represent consists of millions of Gmail users.  Industry research estimates there were 37 million Gmail users in the United States in August of last year, and the number of users has likely grown substantially since.  This Court has noted that a class consisting of as few as 41 members is sufficient to satisfy the numerosity requirement,

Case No. 10-00672-JW – NOTICE OF MOTON AND MEMORANDUM IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

18

1  particularly where the size of each individual claim is relatively small or the members are

2  geographically diverse.  *See e.g., Natl. Federation of Blind v. Target Corp.*, 2007 WL 2846462,

3  at *13 (N.D. Cal. Oct. 2, 2007); *Kresnick v. Cendant Corp*., 2007 WL 1795793, at *7 (N.D. Cal.

4  June 20, 2007).  With a class of tens of millions, there is no question that the numerosity

5  requirement is satisfied.

6          **b.**     **There are many questions of law and fact common to the class**

7        Rule 23(a)(2) requires that there be questions of law or fact common to the class. Not all

8  questions of law or fact need be common to every single member of the class; rather, at least one

9  issue must be common to the claims of all the class members. *Hanlon*, 150 F.3d at 1019.  Courts

10 do not treat commonality as a difficult hurdle, but construe the requirement "permissively" and

11 require a "minimal" showing.

12       The claims of plaintiffs and the class members all arise from the same legal theory – that

13 Google divulged user contact information without sufficient consent.  The common issues

14 include:  whether the Google Buzz program publicly shared user information and if so, what user

15 information it shared and how; whether Google failed to provide adequate information and

16 procedures for Buzz users to opt-out of the public display of their information; whether by

17 allegedly committing these acts and omissions Google violated federal and state laws; and

18 whether class members are entitled to injunctive, declarative and monetary relief as a result of

19 Google's alleged conduct.  These common questions form the basis of plaintiffs' and class

20 members' claims, and are sufficient to establish the commonality requirement.

21         **c.**     **The class representatives' claims are typical of the class**

22       Representative claims are "typical" if they are "reasonably coextensive with those of the

23 absent class members." *Hanlon*, 150 F.3d at 1020.  The class representatives' claims "need not

24 be substantially identical." *Id*.  Rather, "[t]he test of typicality is whether other members have

25 the same or similar injury, whether the action is based on conduct which is not unique to the

26 named plaintiffs, and whether other class members have been injured by the same course of

27 conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotes

28 omitted).  Here, Google added Buzz to the Gmail accounts of the named class representatives just

---

as it did to the Gmail accounts of other users.  All the injuries claimed arise from the same alleged conduct.  Like the class as a whole, the named class representatives have expressed concerns about the privacy issues arising from Buzz, but none have articulated any special, unique, atypical injury arising therefrom.  The class representatives claims are typical of those of the class.

**d.  The named plaintiffs and their counsel adequately represent the proposed class**

Rule 23(a)(4) and Rule 23(g) together ensure the satisfaction of what courts have recognized as a two-part test: (1) that the named plaintiffs and their counsel do not have conflicts of interest with the proposed class; and (2) that the named plaintiffs and their counsel can prosecute the action vigorously through qualified counsel.  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pics., Inc*., 582 F.2d 507, 512 (9th Cir. 1978)).  In considering the adequacy of counsel, the court must consider (1) the work counsel has done in investigating the potential claims in the action; (2) counsel's experience in handling class actions and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Both aspects of the adequacy test are satisfied here.

*First*, as shown above, plaintiffs' interests are squarely aligned with the interests of absent class members.  Plaintiffs' claims are typical of those of all Gmail users who were presented with the opportunity to use Buzz.  There is no conflict of interest among plaintiffs and the class members, who all experienced the addition of Google Buzz to their Gmail accounts.  *Second,* Class Counsel are well-respected members of their legal communities and have extensive experience prosecuting class action lawsuits.  Further detailed credentials of counsel are enumerated on their firm resumes.  See Mason Prelim. Decl., at ¶ 9 Exhibits 1-9.  Accordingly, both plaintiffs and Class Counsel have and will adequately represent the class.

**2.  The proposed settlement class meets the predominance and superiority requirements of rule 23(b)(3)**

Rule 23(b)(3) certification is proper because the predominance and superiority requirements are satisfied and because nothing about the *cy pres* nature of the relief alters the

1  Rule 23(b) analysis.

2  **a.      Common questions predominate**

3  The predominance inquiry looks to whether a proposed class is sufficiently cohesive to

4  warrant adjudication by class representation.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591

5  (1997).   Common issues "predominate" where a common nucleus of facts and potential legal

6  remedies dominate the litigation.  *See Chamberlan v. Ford Motor Co*., 402 F.3d 952, 962 (9th

7  Cir. 2005).   The existence of individual issues will not, by itself, defeat certification.  *See*

8  *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356 (N. D. Cal. 2010); *Hanlon*, 150 F.3d 15 at 1022

9  ("When common questions present a significant aspect of the case and they can be resolved for

10  all members of the class in a single adjudication, there is clear justification for handling the

11  dispute on a representative rather than on an individual basis").  Because class members' claims

12  arise out of the same set of operative facts and are premised on identical legal theories, the

13  predominance requirement is satisfied here.  This is particularly true because few, if any, class

14  members have suffered individualized out-of-pocket damages.  Moreover, the underlying legal

15  claims arise out of three federal statutes, which apply similarly to all class members throughout

16  the United States, and out of California tort law, which applies to all class members by virtue of

17  the choice of law provision in Google's Gmail Terms of Service.  In short, each class member's

18  claim has an identical factual predicate and the same legal causes of action.

19  **b.      Class treatment is superior to alternate methods of adjudication**

20

21  In determining superiority, four considerations are relevant: (1) the interests members of

22  the class have in individually controlling the prosecution or defense of the separate actions; (2)

23  the extent and nature of any litigation concerning the controversy already commenced by or

24  against members of the class; (3) the desirability or undesirability of concentrating the litigation

25  of the claims in the particular forum; and (4) the difficulties likely encountered in the

26  management of a class action.  Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Research Inst., Inc.*,

27  253 F.3d 1180, 1190-93 (9th Cir. 2001).  Because the proposed certification of the class is in the

28  settlement context, the Court need not consider the manageability requirement.  *See Amchem*

1    *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

2           As to the first factor, class members have little interest in controlling this action on their

3    own, because the alleged damages affecting each individual are slight compared to the cost of

4    litigating a case of this complexity.  Class actions, as a general proposition, are favored for the

5    very purpose of providing individuals with relatively small damages, and therefore little incentive

6    to litigate, an opportunity to prosecute their rights.  The Supreme Court explained that "[t]he

7    policy at the very core of the class action mechanism is to overcome the problem that small

8    recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or

9    her rights."  *Amchem*, 521 U.S. at 617.   *See also Zinser*, 253 F.3d at 1190 ("Where damages

10   suffered by each putative class member are not large, this factor weighs in favor of certifying a

11   class action.").   Here, few if any class members suffered out-of-pocket damages and class

12   members are therefore are unlikely to pursue litigation against Google on their own.  With regard

13   to the second and third factors, while other class actions have been brought against Google

14   concerning its launch of Buzz, all of these cases have now been consolidated here and will be

15   resolved by the proposed Settlement.  Thus, as a result of the Settlement, the litigation will be

16   fully and finally resolved.

17                    **c.    The nature of the remedies herein is consistent with (b)(3)
                            certification**

18

19           While a central feature of this Settlement is the *cy pres* relief, 23(b)(3) remains the proper

20   mode of class certification for five reasons.

21           1.     Nothing in Rule 23(b)(3) requires either that there be monetary damages or that

22   the monetary damages be distributed to the class members themselves.  While it is common to

23   certify money damages cases under (b)(3), the only requirements for certification under (b)(3) are

24   the predominance and superiority requirements which, as noted above, are easily met here.  There

25   is no 23(b)(3) requirement that monies be distributed to individual class members.

26           2.     To the extent monetary damages are the anchor of a (b)(3) class, this case secured

27   monetary damages: Google will make an $8.5 million payment.  The fact that for administrative

28   reasons this money will be distributed using *cy pres* rather than directly does not render this a

---

Case No. 10-00672-JW – NOTICE OF MOTON AND MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT
CLASS, AND APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL

22

non-monetary damage case.

     3.    Although Google has agreed to undertake certain measures as part of this Settlement, the Settlement Agreement seeks no court-ordered injunctive relief, so certification under 23(b)(2) would be inappropriate. For the same reason, certification of a "hybrid" (b)(2)/(b)(3) class is also unavailable, given the absence of (b)(2) relief.[5]

     4.    Certification under (b)(3) enables class members who may have suffered out-of-pocket damages to opt out and pursue their individual claims. This is an important element of the Settlement because it addresses any concerns that out-of-pocket damages are unavailable.

     5.    Settlements in which the full fund is distributed using *cy pres* are regularly certified by courts under Rule 23(b)(3). *See, e.g. Catala v. Resurgent Capital Services L.P.*, 2010 WL 2524158, at *9 (S.D. Cal., June 22, 2010); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E. D. N.Y. 2000); *Reade-Alvarez v. Eltman, Eltman & Copper, P.C.*, 237 F.R.D. 26 (E. D. N.Y. 2006). Class Counsel knows of no precedent requiring certification on other grounds, or rejecting (b)(3) certification for this reason.

     Rule 23(b)(3) certification for this Settlement is appropriate, applicable, and is well-supported in the case law.

## IV.   <u>CONCLUSION</u>

     For the foregoing reasons, the Settlement is fair, adequate, and reasonable. Plaintiffs respectfully request that the Court grant this motion and enter an order finally approving the Settlement, certifying the Settlement Class, and appointing class representatives and Class Counsel.

                                   Respectfully submitted,

DATED: December 20, 2010                <u>   */s/ Gary E. Mason*   </u>
                                     Gary E. Mason, Esq. (admitted *pro hac vice*)
                                     MASON LLP
                                     1625 Massachusetts Ave., N.W., Suite 605
                                     Washington, D.C. 20036
                                     Tel. (202) 429-2290
                                     Fax. (202) 429-2294

---

    [5] Class certification under Rule 23(b)(1) is also inapposite since this is neither an incompatibility situation nor a limited fund.

1

2   Michael F. Ram (SBN 104805)
    RAM & OLSON LLP
3   555 Montgomery Street, Suite 820
    San Francisco, California 94111
4   Phone: (415) 433-4949
    Fax: (415) 433-7311
5
    William B. Rubenstein (SBN 235312)
6   1545 Massachusetts Avenue
    Cambridge, Massachusetts 02138
7   Phone: (617) 496-7320
    Fax: (617) 496-4865
8

9   Peter N. Wasylyk (pro hac vice)
    LAW OFFICES OF PETER N. WASYLK
10  1307 Chalkstone Avenue
    Providence, Rhode Island 02908
11  Phone: (401) 831-7730

12
    Andrew S. Kierstead (SBN 132105)
13  LAW OFFICE OF ANDREW KIERSTEAD
    1001 SW 5th Avenue, Suite 1100
14  Portland, Oregon 97204
    Phone: (508) 224-6246
15

16  Peter W. Thomas
    THOMAS GENSHAFT, P.C.
17  0039 Boomerand Rd, Ste 8130
    Aspen, Colorado 81611
18  Phone: (970) 544-5900

19
    Michael D. Braun (SBN 167416)
20  BRAUN LAW GROUP, P.C.
    12304 Santa Monica Blvd., Suite 109
21  Los Angeles, CA 90025
    Phone: (310) 836-6000
22

23  Donald Amamgbo
    AMAMGBO & ASSOCIATES
24  7901 Oakport St., Ste 4900
    Oakland, California 94261
25

26  Reginald Terrell, Esq.
    THE TERRELL LAW GROUP
27  P.O. Box 13315, PMB # 149
    Oakland, California 94661
28
    Jonathan Shub (SBN 237708)

1   SEEGER WEISS LLP
    1818 Market Street, 13th Floor
2   Philadelphia, Pennsylvania 19102
    Phone: (610) 453-6551
3

4   Christopher A. Seeger
    SEEGER WEISS LLP
5   One William Street
    New York, New York
6   Phone: (212) 584-0700

7
    Lawrence Feldman
8   LAWRENCE E. FELDMAN & ASSOC.
    423 Tulpehocken Avenue
9   Elkins Park, Pennsylvania 19027
    Phone: (215) 885-3302
10

11  Eric Freed (SBN 162546)
    FREED & WEISS LLC
12  111 West Washington Street, Ste 1311
    Chicago, IL 60602
13  Phone: (312) 220-0000

14  Howard G. Silverman
    KANE & SILVERMAN, P.C.
15  2401 Pennsylvania Ave, Ste 1C-44
    Philadelphia, PA 19130
16  Phone: (215) 232-1000

17
    *Attorneys for Plaintiffs and*
18  *the Proposed Class*

19

20

21

22

23

24

25

26

27

28