# THOMAS L. COX, JR.
4934 TREMONT
DALLAS, TEXAS 75214
(469) 531-3313
(214) 855-7878

RECEIVED

2010 DEC 27 P 2: 30

December 23, 2010

Clerk, U. S. District Court
Northern District of California
San Jose Division
280 S. First Street
San Jose, CA 95113

    Re:    Case 10-CV-00672-JW; *IN RE: Google Buzz User Privacy Litigation*

Dear Sir or Madam:

    Enclosed for filing in the above-referenced matter is an Objection to Proposed Settlement by Class Members, Brent Clifton and Warren Sibley. Please return a filed copy to me in the envelope provided for your convenience.

    By copy of this letter, I am forwarding a copy of the above Objection by regular mail, postage prepaid to Gary Mason and David J. Burman.

    Thank you for your assistance in this matter. If you have any questions, please call me.

                                         Sincerely,

                                         Thomas L. Cox, Jr.

Enclosures
cc:    Gary Mason                           David J. Burman
       Mason LLP                            Perkins Cole LLP
       1625 Massachusetts Avenue, NW    1201 Third Avenue, Suite 4800
       Suite 605                              Seattle, WA 98101
       Washington, DC 20036

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE: GOOGLE BUZZ USER PRIVACY LITIGATION | § § § § § § § | Case No. 10-CV-00672-JW<br><br>OBJECTION TO PROPOSED SETTLEMENT<br><br>Honorable James Ware, Judge |

## OBJECTION TO PROPOSED SETTLEMENT

### INTRODUCTION

Class members Brent Clifton and Warren Sibley ("Objectors") object to the approval of the proposed settlement. Objectors believe that class action settlements that benefit no one but the attorneys hurt consumers, and that courts should use their oversight powers to prevent such extortionate settlements from occurring in the first place. These objections also serve as notice that Objectors' counsel, Thomas L. Cox, Jr., intends to appear at the January 31, 2011 approval hearing.

### BACKGROUND

On February 9, 2010, Google launched Buzz, a social networking program. The Plaintiffs allege that Google automatically enrolled Gmail users in Buzz, and that Buzz publically exposed data, including users' most frequent Gmail contacts, without enough user consent. This action alleges that Google violated (i) the Electronic Communications Privacy Act, 18 U.S.C. §2510, *et seq.*; (ii) the Stored Communications Act, 18 U.S.C. §2701, *et seq.*; (iii) the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*; (iv) the common law tort of Public Disclosure of Private Facts, as recognized by California common law; and (v) the California

Unfair Competition Law, California Business & Professions Code §17200.  Google denies the accuracy of Plaintiffs' allegations and denies that it violated any law or caused any harm by the launch of Google Buzz.

## CLASS MEMBERSHIP

Warren Sibley is a member of the class having received the attached e-mail advising him of the settlement.  A copy is attached hereto as Exhibit "1."  Brent Clifton is a member of the class having received the attached e-mail advising him of the settlement.  A copy is attached as Exhibit "2."  The class is defined as all Gmail users in the USA who were presented with the opportunity to use Google Buzz before November 2, 2010.  Both Objectors are members of the class.

## OBJECTIONS

**Lack of Benefit**

Law firms representing Plaintiffs in a class action regarding privacy issues have negotiated a settlement that will pay zero to the millions of class members for extinguishing their claims, yet over 25% of the settlement fund of $8.5 million plus expenses will be paid to the attorneys.  The non-economic benefit to the class -- a *cy pres* payment to charities[1] that are neither class members nor have suffered any injury.  This is a classic case of class action abuse.

In *Murray v. GMAC*, 434 F.3d 948, 952 (8th Cir. 2006), the Seventh Circuit held that a similar settlement was "untenabl[y]" beyond the pale of approval:

> This looks like the sort of settlement that we condemned in *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999), and *Crawford v. Equifax Payment Services*, 201 F.3d 877 (7th Cir. 2000), two appeals arising from the same litigation.  That suit had been settled for $2,000 to the named plaintiff, $5,500 to a legal-aid society that had not been injured by the defendant's conduct, and $78,000 in legal fees.  We treated the disproportion -- $2,000 for one class member, nothing for the rest -- as proof that the class device had been

---

[1] Unnamed existing agencies/organizations that advance the privacy interests of internet users.

> used to obtain leverage for one person's benefit. [citations omitted] Here the proposed award is $3,000 to the representative while other class members are frozen out. the payment of $3,000 to Murray is three times the statutory maximum, while others don't get even the $100 that the Act specifies as the maximum . . .
>
> Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty. [citation omitted] But if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment to Murray implies, than the failure to afford effectual relief to any other class member makes the deal look like a sellout.

This settlement is indistinguishable from the settlement criticized in *Murray* as "untenable." There was one class representative in *Murray* who received $3,000, three times maximum possible statutory damages; here, there are seven class representatives who will received a $2,500 incentive payment without any indication of personal or economic injury. In *Murray*, the 1.2 million unnamed class members were entitled to split a fund of $947,000; here, millions of class members will end up with zero. And, the Class Attorneys are seeking $2,125,000[2] in attorneys' fee, plus expenses, similar to the amount in *Murray*.

There are two possibilities. The Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Class Attorneys' actions should be deterred rather than rewarded; the court should not award attorneys' fees or substantially reduce the fees. If Rule 23(e)(2) is to

---

[2] Twenty-five percent (25%) of the common fund.

have any teeth whatsoever, this settlement must be rejected. It is hard to imagine another settlement result that is more self-serving of the Class Attorneys.

**Objections to Class Representatives**

The guiding principles in selecting class representatives are: "The class must have a "conscientious representative Plaintiff" (*Rand v. Monsanto,* 926 F.2d 596, 599 (7th Cir. 1991)) and . . . class representative must ". . .fairly and adequately protect the interest of the class." (Rule 23(a)(4).

A conflict of interest must not exist between the named Plaintiffs and the class. *Meridith v. Mid-Atlantic*, 129 F.R.D. 130, 133.

If in advancing their own interests, the named Plaintiffs had also advanced the interests of the class, their burden would have been met. Unfortunately, they did not -- they have advanced their own interests and class counsel's interest but little else.

It has long been the law that an absent class member will not be bound to a judgment wherein he was not adequately represented. *Hornsberry v. Lee*, 311 U.S. 32 (40).

**Self-Dealing**

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) ("district court ha[s] a fiduciary responsibility to the silent class members"). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). *See also Diaz v. Trust*

*Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members.")

Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

"These concerns warrant special attention when the record suggests that settlement is driving by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

The settlement proposed by Plaintiffs is indistinguishable from other settlements rejected by the Seventh and Ninth Circuits under Rule 23(e). Compare this case with *Murray*, 434 F.3d at 952 ("untenable"); *Mirfasihi*, 356 F.3d 781; *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) ("substantially troubling"); *Molski*, 318 F.3d at 956 ("unfair, inadequate, and unreasonable").

The Google Buzz settlement is inferior to other settlements rejected by the Seventh and Ninth Circuits: either the unnamed class members recover less money, or the attorneys and named class representatives receive more money. There is ample precedent that not only should the court reject the settlement, but that approving the settlement would be an abuse of discretion. Any "presumption of fairness" is rebutted by the self-dealing nature of the settlement.

Though Plaintiffs claim to represent and seek to bind a large class, they have recovered cash for only their attorneys. Even if one were to improperly credit the charitable pseudo-*cy pres*

award to unrelated third parties as a benefit to the class, Plaintiffs have recovered for the class substantially less than they had alleged was work millions of dollars. *See* Consolidated Amended Complaint (Docket No. 31).

Plaintiffs defend the settlement on the grounds that there is *cy pres* relief to charitable organizations. But this is insufficient to proclaim the settlement fair. The settlement in *Molski* offered all of those remedies and was still proclaimed "unfair, inadequate, and unreasonable" as a matter of law.

**The Lawsuit Itself Harms Class Members' Interests.**

When Plaintiffs bring law-value litigation with little chance of success on relatively meritless claims, as they appear to have done here, they raise costs to Defendants who have to pay for legal fees and for the extensive and expensive class action notice requirements. Self-dealing settlements like those of Class Attorneys raise the costs to the Defendants of providing these services and raise prices to Class Members like Objectors without concomitant benefits thus reducing their consumer surplus. Consumer welfare would be improved if courts rejected such settlements and deterred socially inefficient, rent-seeking litigation.

**Class Attorneys Are Not Entitled To Costs.**

A prevailing party is entitled to its costs. Fed. R. Civ. Proc. 54(d)(1). It is within a court's discretion to deny costs to a prevailing party when that party's success is but a small fraction of the relief they originally sought and litigated. *Farrar v. Hobby*, 506 U.S. 103 (1992). Here, Class Attorneys have obtained $0 in economic benefit for the class they purport to represent. They originally claimed that their damages were effectively hundreds of millions of dollars plus punitive damages. They "asked for a bundle and got a pittance." *Id.* at 120

(O'Connor, J., concurring). This is the sort of *de minimis* nuisance settlement that should not be awarded more than nominal costs or fees. *Id.* at 121-22.

**Objection to Requested Award of Attorneys Fees**

Class counsel filed their Motion for Attorneys' Fees on December 20, 2010. Objectors reserve the right to amend this objection after reviewing the fee motion. However, the Court should reduce the requested award of attorneys' fees substantially.

(a) The Court should base the award of attorneys' fees on no more than 15% of the actual class recovery.

(b) Objectors object to the attorneys' fees award in this case because it amount to unjust enrichment. Although 25% is a 'benchmark," the actual recovery should depend on the work expended, the time consumed and the results obtained. "Any single rate, however, is arbitrary and cannot capture variations in class actions' valuations." *Manual for Complex Litigation,* Fourth §14.11, p. 184).

It is incumbent on the court to make this decision in a common fund case. The case has been settled early in the process and the Court, serving as a fiduciary for the absent class, must critically examine class counsel's application and award no more than what is absolutely required to provide reasonable compensation to class counsel. While 25% of the common fund for attorneys' fees is the accepted starting point in this Circuit, the District court can depart from that standard. The District Court may exercise its discretion to choose between the Lodestar method and percentage method in calculating fees. See *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

**Is *Cy Pres* Appropriate?**

*Cy pres* awards in class action settlement have increased since the earliest reported use of a *cy pres* award in *Miller v. Steinbach*, 1974 WL 350 at *2 (S.D. N.Y. Jan. 3, 1974).

The term originates from the French phrase -- *cy pres comme possible* -- which translates "as near as possible." The term/concept has been a part of American jurisprudence for years but was generally limited to estates and trusts. The concept has experienced a rapid expansion in class action litigation as a means of disposing of unclaimed class awards and settlements. There are other methods or general theories as to distribution of unclaimed awards:

(1)     distribution of unclaimed awards to class members who submitted claims; and

(2)     escheat the remainder to the state.[3]

The problem of distributing class funds to third party charities that have little or no connection to the class members was first considered in the frequently cited case of *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). The problem, as that court noted, was that the benefit was given to a group too far removed from the class and suggested that if *cy pres* was used, it should be to the next best distribution. Here, the proposed settlement attempts to distribute the funds to unnamed groups that advocate for internet privacy. Notwithstanding the funds going to internet privacy groups, the fact remains that *cy pres* awards, where class members receive nothing, has no place in American jurisprudence because the problem still remains that *cy pres* awards do not provide compensation to the injured class members. The best that can be said for a *cy pres* award in this situation is that it might make a class member feel good to give the Defendants' money to someone else. This is different than compensating the class for the Defendants' wrongdoing.

---

[3] *Cy Pres, a Not So Charitable Contributor to Class Action Practice*, John Beisner, 2d Edition, 2010, p. 8.

Objection to Proposed Settlement, Page 8

The Court in its role as a fiduciary should carefully review the intended *cy pres* recipients for any relationship with any class representatives, class counsel, the Defendants and their attorneys. Any relationship between the parties or their attorneys with the recipient should be grounds for disqualification of the intended recipient. This could be readily accomplished by the Court requiring a Disclosure Statement. In addition, to avoid any ethical issues, no recipient of a *cy pres* award should have a relationship with the Judge.

## CONCLUSION AND RELIEF

The Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Class Attorneys' actions should be deterred rather than rewarded and the court should reject the settlement as failing to comply with the requirements of Rule 23(a)(4) and Rule 23(e). The Class Attorneys' requests for fees and costs should be rejected.

Dated: December 22, 2010.

_____
Thomas L. Cox, Jr.
S. B. 04964400
4934 Tremont
Dallas, Texas 75214
(469) 531-3313  FAX: (214) 855-7878
tcox009@yahoo.com

ATTORNEY FOR BRENT CLIFTON AND
WARREN SIBLEY

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2010, I served the foregoing Objection to Proposed Settlement to the following by regular mail, postage prepaid:

Clerk, U. S. District Court
Northern District of California
San Jose Division
280 S. First Street
San Jose, CA 95113

Gary Mason
Mason LLP
1625 Massachusetts Avenue NW
Suite 605
Washington, DC 20036

David J. Burman
Perkins Cole LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101

_____
Thomas L. Cox, Jr.

EXHIBIT 1

```
-----Original Message-----
From: Warren Sibley [mailto:warrensibley@gmail.com]
Sent: Wednesday, November 03, 2010 9:02 AM
To: g@starhill.cc
Subject: Re: Important Information about Google Buzz Class Action Settlement
```

I am a user

Sent from my iPhone

EXHIBIT 2

```
From: Google Buzz [mailto:noreply-buzz-classaction@google.com]
Sent: Tuesday, November 02, 2010 2:30 PM
To: rbc03a@acu.edu
Subject: Important Information about Google Buzz Class Action Settlement
```

Google rarely contacts Gmail users via email, but we are making an exception to let you know that we've reached a settlement in a lawsuit regarding Google Buzz (http://buzz.google.com), a service we launched within Gmail in February of this year.

Shortly after its launch, we heard from a number of people who were concerned about privacy. In addition, we were sued by a group of Buzz users and recently reached a settlement in this case.

The settlement acknowledges that we quickly changed the service to address users' concerns. In addition, Google has committed $8.5 million to an independent fund, most of which will support organizations promoting privacy education and policy on the web. We will also do more to educate people about privacy controls specific to Buzz. The more people know about privacy online, the better their online experience will be.

Just to be clear, this is not a settlement in which people who use Gmail can file to receive compensation. Everyone in the U.S. who uses Gmail is included in the settlement, unless you personally decide to opt out before December 6, 2010. The Court will consider final approval of the agreement on January 31, 2011. This email is a summary of the settlement, and more detailed information and instructions approved by the court, including instructions about how to opt out, object, or comment, are available at http://www.BuzzClassAction.com.

----------------------------------------------------------------

This mandatory announcement was sent to all Gmail users in the United States as part of a legal settlement and was authorized by the United States District Court for the Northern District of California.

Google Inc. | 1600 Amphitheatre Parkway | Mountain View, CA 94043

1