Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Janine R. Menhennet (SBN 163501)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Objector Steven Cope

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION<br><br>This Pleading Relates To:<br><br>ALL CASES | Case No. 5:10-CV-00672-JW<br><br>**OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date:  January 31, 2011<br>Time:  9:00 a.m.<br>Place:  Courtroom 8<br>Judge:  Hon. James Ware |

## TABLE OF CONTENTS

I.      THIS CASE INVOLVES AN IMPORTANT, NOVEL TORT WHICH SHOULD
        BE TRIED THROUGH TRIAL TO DEVELOP CASE LAW ............................. 1

II.     THIS SETTLEMENT HAS BEEN REACHED BEFORE ANYONE HAS
        DETERMINED WHAT DAMAGES HAVE OCCURRED ................................. 3

III.    THERE IS AN ABSENCE OF ADEQUATE REPRESENTATION, PREVENTING
        CERTIFICATION AND SETTLEMENT UNDER RULE 23 ............................. 3

IV.     THE COURT LACKS INFORMATION REGARDING THE $8.5 MILLION
        SETTLEMENT FIGURE, WHICH PREVENTS THE COURT FROM
        APPROVING THE SETTLEMENT .............................................................. 5

V.      THE CY PRES RECIPIENT(S) MUST BE IDENTIFIED BEFORE THE
        COURT CAN ISSUE ITS APPROVAL ........................................................ 5

VI.     CLASS COUNSEL HAS NOT PROVIDED ANY BENEFIT TO THE CLASS.......... 7

VII.    THE OPT-OUT PERIOD SHOULD BE EXTENDED ...................................... 7

VIII.   THE ATTORNEYS' FEES APPEAR UNREASONABLE BASED UPON
        THE RESULTS OBTAINED ...................................................................... 8

IX.     CONCLUSION ..................................................................................... 9

i

# TABLE OF AUTHORITIES

## CASES

Castano v. American Tobacco Co.

84 F.3d 734, 740-41 (5th Cir. 1996) ……………………………........................... 2

Gelbard v. United States

408 U.S. 41, 46 (1972) ……………………………………………………… 4, 5

Masters v. Wilhelmina Model Agency

473 F.3d 423, 436 (2d Cir. 2007) ……………………………........................... 6

In re Compact Disc Minimum Advertised Price Antitrust Litig.

370 F.Supp.2d 320 (D.Me. 2005) ……………………………........................ 6, 7

Blum v. Stenson

465 U.S. 886 (1984) ……………………………………………………… 9

Johnson v. Georgia Highway Express

488 F.2d 714, 718 (5th Cir. 1974) …………………………………………… 9

Kerr v. Screen Extras Guild, Inc.

526 F.2d 67, 69-70 (9th Cir. 1975) …………………………………………… 9

Vizcaino v. Microsoft Corp.

142 F.Supp.2d 1299, 1306 (W.D.Wash. 2001) …………………………………… 9

## STATUTES

Federal Rules of Civil Procedure
    Rule 23 …………………………………………………………… 3, 6
    Rule 23 (e)(2) …………………………………………………………5

Illinois Comprehensive Statutes Annotated
    735 Ill. Comp.Stat.Ann. 5/2-807(a) (2009) …………………………………… 7

/ / /

ii

## OTHER AUTHORITY

Stored Communications Act, 18 U.S.C. §2701 …………………………………………………………………… 3

Wiretap Act, 18 U.S.C. §2510 …………………………………………………………………………………  3

Computer Fraud and Abuse Act, 18 U.S.C. §1030.23 ……………………………………………………………  3

18 U.S.C. §2511 ……………………………………………………………………………………………… 4

## TREATISES

Restatement of Torts §6527 …………………………………………………………………………………  4

Principles of the Law of Aggregate Litigation, §3.07 ……………………………………………………………  6

iii

COMES NOW, STEVEN COPE ("Objector") Class Member to this action, by and through his undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the January 31, 2011, final approval hearing, and requests award of an incentive fee for serving as a named class member.

Objector, STEVEN COPE, represents to the court that he is a Class Member, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; his address is 2250 Esplendido Avenue, Vista, CA 92084, but all mail should be sent to his attorney's address above.  Proof of class membership is attached as Exhibit A.

Objector Cope objects on the following grounds:

1.      This case encompasses novel, immature issues and is suitable for trial, rather than premature settlement.

2.      This settlement is premature, as the damages cannot be determined at this early date.

3.      There is a complete lack of adequate representation, as Class Counsel marginalizes the damages suffered by the class.  The settlement appears to have been engineered only to generate attorneys' fees.

4.      There is no evidence regarding why $8.5 million is an appropriate settlement amount, as there is indication that Google has profited from its Buzz program.

5.      The *cy pres* recipient(s) MUST be identified in the settlement, and approved by the Court, because the ENTIRE settlement consists of *cy pres* monies.

6.      Class Counsel has obtained no discernable relief for the class, as Google had already made the substantive changes requested prior to any settlement.  The proposed relief is illusory.

7.      The opt-out period is far too short, much like the rush to settlement.  This mad rush is simply sweeping the problem under the rug, to the detriment of the class.

8.      The attorneys' fees appear unreasonable, based upon the results obtained.

## I.   THIS CASE INVOLVES AN IMPORTANT, NOVEL TORT WHICH SHOULD BE TRIED THROUGH TRIAL TO DEVELOP CASE LAW

This case involves a corporate giant culling through personal files of its users and publishing personal information, including pictures, videos, and contacts, which may or may not be suitable for

1

public perusal.  The most disturbing part of this case is that Google did not, and has never, obtained anyone's permission to do this.  Further, it appears from the settlement that it is ongoing, and will not stop.

One objector (Tina McGill) writes that she is powerless to turn this program off, due to her slow internet connection.  One can only imagine the parade of horribles which has been unleashed by a computer program creating follower lists which may include John Doe's employer and family members.  Not to mention Jane Doe's current employer, and prospective employer.  The program harms those with interests to protect, whether prurient or not.  This last possibility is particularly disturbing, given the fact that Google has called these people "followers."  One should not be "followed" unless one has asked to be followed.

A case cited by Class Counsel is remarkably similar, and had a similar outcome with a *cy pres* settlement:  the Facebook settlement, now on appeal.  The most fundamental difference between this case and the Facebook case is this:  people CHOOSE to join Facebook, and thus take the risk of random people finding their information they choose to post.  No one in this case has given any approval for what Google unilaterally reached in and published.  This practice is morally wrong.

Class Counsel admits that this case is a new venture for plaintiffs' lawyers:  "The factual issues in this case involved a brand new Internet program with innovative features completely unique to this action, and the legal claims rested on **novel, untested, and highly uncertain legal theories**."  Application for Fees, at 1, lines 16-18.  Accordingly this case is of wide public interest (affecting 31 million users), and should be tested in trial.  As the class members get nothing from this settlement anyway, they would not be harmed by taking the risk of a trial.

Other courts have determined that this sort of novel public interest issue would be better tested in trial, rather than in a hurried settlement:  "At this time, while the tort is immature, the class complaint must be dismissed, as class certification cannot be found to be a superior method of adjudication."  *Castano v. American Tobacco Co.,* 84 F.3d 734, 740-41 (5th Cir. 1996).  While the *Castano* case is factually distinguishable because the class members in that case had large individual damages, the principal is the same:  this new type of injury needs to be jury-tested before one can determine what is truly fair.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. THIS SETTLEMENT HAS BEEN REACHED BEFORE ANYONE HAS DETERMINED WHAT DAMAGES HAVE OCCURRED

Objector Kassebaum notes that the potential damages from the harm alleged may not have come to fruition as yet. He is correct. In addition to the damages from Jane Doe's stalker finding out her new addresses and beginning a new reign of terror which Google and Class Counsel have not discovered yet, there is also the case of John Doe's identity being stolen by creating types cruising Buzz for useful information. John Doe does not currently know the extent of the damages he has suffered from the new credit cards being opened in his name.

As with the tort being immature, the settlement is premature. While Class Counsel repeats *ad nauseum* in its prayer for final approval that the class has not suffered any "out of pocket" damages, perhaps Counsel did not look very far. To sell out the class after one mediation session and one face-to-face settlement meeting gives short shrift to what the class is truly suffering.

## III. THERE IS AN ABSENCE OF ADEQUATE REPRESENTATION, PREVENTING CERTIFICATION AND SETTLEMENT UNDER RULE 23

Rule 23 requires that the Court determine whether there has been adequate representation of the class' interest before approving a settlement:

> (d)(1): In conducting an action under this Rule, the court may issue orders that (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of: (iii) the members' opportunity to signify whether they consider the representation fair and adequate.

Here the representation has been wholly inadequate. Congress was concerned enough about privacy intrusion that it passed the Stored Communications Act, 18 U.S.C. §2701, the Wiretap Act, 18 U.S.C. §2510, and the Computer Fraud and Abuse Act, 18 U.S.C. §1030. Violations of these acts carry **financial**, as well as injunctive, penalties. While Plaintiff pleaded violations of these acts in the First Amended Complaint, Class Counsel then marginalizes the harm suffered by the class by asserting, *passim,* that the class has suffered no "out of pocket" damages:

> "Few, if any, Gmail users suffered out-of-pocket damages." Motion for Preliminary
> Approval (MPA) at 13;

3

"Few, if any, Class Members appear to have suffered individualized out-of-pocket damages."  MPA at 17;

"Class members have little interest in controlling this action on their own as the alleged damages affecting each individual are slight."  MPA at 18;

"Few if any Class Members suffered out-of-pocket damages."  MPA at 18.

The nature of the harm, while difficult to calculate, has been assigned a value by Congress:  at least $1,000 per violation per member.  At 31 million members, that makes the value of the case $31,000,000,000.00.  Google is paying $8,500,000.00 and none of it goes to the class.

General damages for invasion of privacy is not a new or difficult concept.  The Restatement of Torts, section 652, provides for damages for the following types of harm:

(B)  One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.  Comment (a):  The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion. Comment (b):  It may be by some other form of examination into his private concerns, **as by opening his private and personal mail.**

(D)  One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that would be highly offensive to a reasonable person, and is not of legitimate concern to the public.  Comment (a):  Publicity means that the matter is made public, by communicating it to the public at large.

These Restatement passages illustrate the very harm done in this case:  publicizing people's personal information, as with "opening his private and personal mail."  That, in itself, is the harm.  It does not require more, such as taking money or requiring a pecuniary loss to be compensable.  That damages are recoverable for this harm is included in the federal acts:  18 U.S.C. section 2511 provides that "unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions **are crimes,** and the victim of such interception **is entitled to recover civil damages.** *Gelbard v. United States,* 408 U.S. 41, 46 (1972).  Congress, and the courts, have worked hard to recognize, and protect people's private lives; "the protection of privacy was an overriding congressional concern."  *Gelbard,* 408 U.S. at 48.  The Senate report to section 2515 (Count Two of the Amended

Complaint), states that "provision must be made for civil recourse for damages.  The perpetrator must be denied the fruits of his unlawful actions."  *Gelbard,* 408 U.S. at 50.  The right to privacy opens the California Constitution:

> All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, **and privacy.**

Class Counsel, by trivializing the harm to the class by stating that there were no "out of pocket" losses, reveals its attitude that the class was not harmed and that therefore they are not entitled to any individual recovery.  This attitude toward the class flies in the face of Congressional intent that privacy is to be protected and in the face of Constitutional protections as well.  It appears that Class Counsel has not represented the class at all, but only itself.

## IV. THE COURT LACKS SUFFICIENT INFORMATION REGARDING THE $8.5 MILLION SETTLEMENT FIGURE, WHICH PREVENTS THE COURT FROM APPROVING THE SETTLEMENT

The Court can only approve class action settlements which are reasonable.  F.R.C.P. 23 (e)(2).  The Court has been presented with an $8.5 million figure, without any information regarding where this figure came from.  The Court, then, cannot make a finding of reasonableness without knowing why $8.5 million will make this case go away.

The pleadings on file indicate that the Buzz feature allows advertisers to specifically target people based upon their internet usage.  Google must be profiting from this feature.  How much has Google profited from Buzz advertising since February?  Perhaps disgorging this money would be an appropriate measure of damages.  *See, Gelbard, supra,* "the perpetrator must be denied the fruits of his unlawful actions."  Given the huge disparity between the potential value of $31 billion ($1000 per user account), and $8.5 million, the Court should request further economic support for the settlement figure before issuing its imprimatur.

## V. THE *CY PRES* RECIPIENT(S) MUST BE IDENTIFIED BEFORE THE COURT CAN ISSUE ITS APPROVAL

The entire settlement consists of *cy pres* funds.  The class members see no recovery whatsoever.  Yet, the parties have failed to identify who will receive the entirety of the settlement.  It has been left up

5

to their mutual agreement.  This does not satisfy the requirements of Rule 23 that the <u>Court</u> approve the settlement to ensure its fairness.  The Court has a duty to make sure that the *cy pres* beneficiaries are truly the next best substitute for payment to the class members themselves:  "the purpose of *cy pres* distribution is to put the unclaimed funds to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class."  *Masters v. Wilhelmina Model Agency,* 473 F.3d 423, 436 (2d Cir. 2007).   The Court cannot determine whether the funds are going to the "next best use," when the recipient(s) have not been identified.  The court in *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F.Supp.2d 320 (D.Me. 2005), discussed how the parties were to provide appropriate information regarding *cy pres* recipients:

> The parties shall propose, separately or collectively, music charities that should be the beneficiaries of this money, including an explanation of why each charity should benefit, a description of the organization, and a certification that it is a tax-exempt nonprofit organization with no ties to the parties or the lawyers.  The parties may, but are not required to, suggest appropriate amounts.

*In re Compact Disc,* 370 F.Supp.2d at 323.  After the parties submitted their suggestions, the Court required further information prior to giving its approval, including:

> A brief proposal how the organization will use the funds in a way that is related to the interests of the members, . . . how that proposal will result in additional benefit to those interests, . . . a description of how and when the organization will report on use of the funds, and a commitment to report to the Court.

*In re Compact Disc,* 2005 U.S.Dist. LEXIS 11332, at 9.  This type of analysis is appropriate, even required, if the Court is to truly determine what is fair and adequate.  The American Law Institute agrees:

> If the court finds that individual distributions are not viable, . . . the settlement may use a *cy pres* approach only if the parties can **identify** a recipient involving the same subject matter as the lawsuit that reasonably approximates the interests being pursued by the class.

Principles of the Law of Aggregate Litigation, §3.07.  This is especially true here, where the ENTIRE fund is going to *cy pres*, rather than to the pecuniary benefit of the members themselves.

The Settlement does state that the charity(ies) will be those dedicated to educating users about internet privacy issues.  This is not sufficient.  There are identifiable entities which are not hard to find;

6

opponents of the Facebook settlement identified several charities in their objections to Facebook creating its own charity and receiving its own funds.  Illinois has codified what charities should be eligible for *cy pres* funds; this Court may wish to incorporate the same factors in its analysis:  a charity must have been in existence for at least three years, tax exempt for at least three years, in compliance with registration and filing requirements, and have a principal purpose of providing services.  735 Ill.Comp.Stat.Ann. 5/2-807(a) (2009).

The settling parties should be required to provide their proposed charities, which meet these criteria, prior to the Court issuing its approval.

## VI. CLASS COUNSEL HAS NOT PROVIDED ANY BENEFIT TO THE CLASS

Google Buzz rolled out on February 9.  Due to complaints, Google modified the program just two days later.  Google created further modifications itself, on April 5.  AFTER that, on April 21, the parties got together to discuss settlement.   The settlement only requires that Google educate the public about the privacy aspects of Buzz.  Plaintiffs ***may*** make suggestions about the content of the education campaign.  It appears that the only thing Google has to do as a result of the settlement is educate the public about Buzz and pay $8.5 million to internet privacy organizations.  How, then, did Class Counsel benefit the class?  Google already made the changes it wanted to make.  It is not modifying its program any further.  It is merely providing education about how it works.  For all this, Class Counsel is seeking over $2 million.

Objector McGill notes that she still cannot turn off the Buzz feature on her Gmail account.  A more appropriate settlement would be to have Google turn off Buzz for every single user who did not affirmatively opt-in.  People who did not request to be "followed" simply should not be followed.  The solution is that simple.  And it is absent.

The only result Class Counsel extracted from Google is a promise to educate the public about how Buzz works; it would have done this anyway.  There is no promise to stop doing the offending practice, but only inform people that it is going on.  This is far short of what should be required.  This Objector sees no benefit to the class whatsoever.

## VII.    THE OPT-OUT PERIOD SHOULD BE EXTENDED

The notice period began on approximately November 2, 2010, and ended December 6, 2010.  This gave approximately 31 million people approximately 30 days to make a decision regarding whether they should give up their rights to collect money damages for an intentional invasion of privacy, taken without the knowledge of many of its constituents.  This is an insufficient amount of time in which 31

7

million people must make a decision.  This 30-day window is atypically short for this type of action, and raises the specter of unfairness to the class.  It also raises the eyebrow:  why is it so short?  There appears to be a mad rush for attorneys' fees.

As discussed above, this settlement occurred almost immediately after the harm was discovered (and Google had already instituted the changes it was willing to make).  The actual harm which may have, or could, occur from this type of publication of personal information may have not developed as yet, and it is too soon to determine what the damages are.  Further, class members may need the time to consult with an attorney prior to deciding whether or not to opt out.  The 30-day window does not provide the class members with the time required in order to make an informed decision.  The opt-out window should be reinstituted and extended until perhaps the end of February.

It would be interesting for this Objector to know how many opt-outs have already been received.  Nowhere in the settlement does it indicate that this is proprietary or confidential information.  Yet, when this Objector called the Administrator to find out how many opt-outs had been received, this information was not provided.  This number should be released to the class, as often Class Counsel relies upon the "small number of opt-outs" as an indicator of fairness.  If there is a large number of opt-outs, the class is entitled to know this.

At the very least, the class has not been given a fair or reasonable amount of time in which to make their decision to opt-out or remain in the class.  The period should be reinstated and extended, and notice must be provided to the class informing them of the reinstated period.

## VIII.   THE ATTORNEYS' FEES APPEAR UNREASONABLE BASED UPON THE RESULTS OBTAINED

The class involved here is 31 million people.  At potential damages of $1000 per person, the potential value of this case is 31 billion dollars.  Google settled for $8.5 million.  Further, Google had already taken all of the injunctive action they would agree too before settlement occurred; the only additional obligation they ceded through settlement was an education campaign.  Additionally, the settlement fund is going to education campaigns.  What, then, was obtained for the class, who is actually entitled to a cash settlement?  A lot of education regarding the program Google self-installed and runs on their private information.  The value of THIS settlement compared to the value of the case, is infinitesimal.  This weighs in favor of a reduction of the requested fee.  A 25% award from the common fund might be appropriate, if the results achieved compared to the value of the case, is appropriate.  In this case, it is not.

In *Blum v. Stenson,* 465 U.S. 886 (1984), the Supreme Court stated that "'results obtained' is one of the twelve factors identified in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 718 (5th Cir. 1974), as relevant to the calculation of a reasonable attorneys' fee." The Ninth Circuit adopted the *Johnson* factors in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975). *See also, Vizcaino v. Microsoft Corp.,* 142 F.Supp.2d 1299, 1306 (W.D.Wash. 2001)(applying *Johnson* factors to analyze reasonable attorneys' fee).

Applying the "results obtained" prong to the fee request here, the Court should compare the $8.5 million all *cy pres* fund, 75% of which goes to education and none of which goes to the class members, who are statutorily entitled to cash payouts. As the Court should avoid awarding what appears to be a windfall in attorneys' fees for a quick four months of work (February through June settlement), the Court may wish to adjust the requested fee downwards to accommodate the meager results obtained in this matter.

## IX. CONCLUSION

The situation encompassed by this litigation is anathema to the values cherished and protected by Congress and the American people: the constitutional right to privacy. Google systematically reached into every one of its 31 million Gmail users' accounts, determined whom each user contacted most, and published these email lists, together with any pictures and videos, in a public forum searchable by anyone. As recounted herein, the potential for real, physical harm exists, as does the potential for economic and emotional harm. One thousand dollars per violation does not seem that unreasonable for this public invasion. Each class member, instead, gets "education" on a product that person may never use, or ever want to use.

Class Counsel's marginalization of the real harm done to the class in this case is astonishing, and indicates that the adequacy of representation prong of the fairness analysis fails. As for the fee application, the value of the case, thirty billion dollars, compared to the results, no cash payment, and $8.5 million in unnecessary education, indicates that the fee should be adjusted downward, in the Court's discretion.

The appropriate settlement in this case should have been Google discontinuing, and disconnecting, any Buzz account for which the user has not affirmatively opted in. There are class

9

members who are on record as unable to disconnect their Buzz account (Objector McGill). This continuing, intrusive activity is simply unacceptable.

This settlement was rushed, and appears to benefit only the attorneys. The Court should analyze whether this case should really go to trial and test this issue in front of a jury, as this new tort may have far-reaching implication in other contexts. If this case is to settle, further information should be provided regarding how much Google has profited in advertising on Buzz, and perhaps those funds should be disgorged.

Finally, it seems impossible to approve a 100% *cy pres* settlement, when the recipients have not been identified. Where is all this money going, and does it go to the next-best use of funds which will go toward remedying the aggrieved class members? These questions are fundamental to determining the fairness of the settlement.

WHEREFORE, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C. Reopen and extend the opt-out period;

D. Award an incentive fee to this Objector for his service as a named representative of Class Members in this litigation.


Dated:  January 10, 2011                    By: _____/s/ Darrell Palmer_____
                                                    Darrell Palmer
                                            Attorney for Objector, Steven Cope

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2011, I electronically filed the foregoing OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF APPEARANCE AT HEARING with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system, to wit:

Gary Mason
Mason LLP
gmason@masonlawdc.com

David J. Burman
Perkins Coie LLP
dburman@perkinscoie.com

_____/s/ Darrell Palmer_____
Darrell Palmer
Attorney for Objector

11