ORIGINAL

FILED

2011 JAN 10  P 2: 23

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

1  John W. Davis (SBN 200113)
2  john@johnwdavis.com
   LAW OFFICE OF JOHN W. DAVIS
3  501 W. Broadway, Suite 800
4  San Diego, CA 92101
   Telephone: 619.400.4870
5  Facsimile: 619.342.7170
6
   Attorneys for Objector
7  Megan Marek
8
9              UNITED STATES DISTRICT COURT
10        FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                   SAN JOSE DIVISION                    BY FAX
12

| | |
|---|---|
| IN RE GOOGLE USER PRIVACY LITIGATION | Case No. 5:10-CV-00672-JW <br><br> **CLASS ACTION** <br><br> **PRELIMINARY OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** <br><br> Location: Courtroom 8, 4th Floor <br> 280 South First Street <br> San Jose, CA 95113 <br> Date: January 31, 2011 <br> Time: 9:00 a.m. <br> Judge: Honorable James Ware |
| This Document Relates To: <br><br> ALL CASES | |

PLEASE TAKE NOTICE that Objecting Class Member, Megan Marek, through her counsel, intends to appear at the final approval hearing in this case to offer argument on the matters presented by the Motion for Approval of the Settlement.

Objector Merek is a Google G-Mail user in the United States prior to the Notice date, who was presented with the opportunity to use Google Buzz, and who is not subject to any exclusion set forth in Paragraph 1.3 of the Settlement Agreement.

Marek hereby appears through her counsel pursuant to the Orders of this Court dated September 29, 2010 and October 7, 2010, and objects to the proposed settlement of this case, as well as the request for attorneys' fees and incentive awards.

## I. INTRODUCTION AND ARGUMENT

This case cannot be settled upon the terms proposed. On the record thus far developed, it appears that Plaintiffs' propose to settle at a very early stage of the case, with a vastly overbroad release of claims, in exchange for financial relief that is a fraction of the damages pleaded, and which is to go straight to as-yet-unidentified charities. Courts should not grant settlement approval in such circumstances. *See Molski v. Gleich*, 318 F.3d 937, 953-55 (9th Cir. 2003) (abuse of discretion to grant final approval under similar circumstances).

### A. The Relief Obtained by the Litigation and by the Proposed Settlement is Limited to the Cy Pres Fund

From the outset, it is important to discern clearly what this proposed Settlement does and does not provide in relief. Google introduced the Google Buzz service on February 9, 2010. The public backlash was swift – within 24 hours there were numerous articles written in the online technology press criticizing its design and implementation. Google reacted equally swiftly, making successive changes within the following week.

The first lawsuit was filed on February 17, 2010. By then, Google had already changed the

PRELIMINARY OBJECTION AND NOTICE OF INTENT TO APPEAR (MAREK)

service essentially to its present state. The Settlement Agreement, far from giving credit to Plaintiffs' case, confirms as much: it does not require or order changes to Google's practices, but rather confirms that Google made changes:

> Google **has made changes** to the Google Buzz user interface that clarify Google Buzz's operation and users' options regarding Google Buzz, including, in particular, changes regarding user information and control over Buzz's privacy settings.

Settlement Agreement, ¶3.2. The Settlement does not attribute any changes to the lawsuit. Another paragraph of the "Relief" section in the Settlement Agreement merely restates Google's already-fulfilled agreement to produce informal discovery regarding the incident and the changes it made: "Google agreed to and has produced to Lead Class Counsel documents and information regarding the operation of Google Buzz, changes made to Google Buzz after it launched, and consumer feedback regarding Google Buzz." Settlement Agreement, ¶3.2.

Thus, the primary changes to the Google Buzz service were made before the complaint was filed, on Google's own initiative. The Settlement Agreement does not require Google to maintain those changes, or to make any additional changes. Instead, Google merely agrees to "disseminate wider public education about the privacy aspects of Google Buzz." But Google's agreement on this point is essentially illusory, because it retains complete discretion on the content and manner of any such public education efforts. Settlement Agreement, ¶3.3.

Thus, the actual cognizable and enforceable relief under the proposed settlement is essentially limited to the cy pres fund of $8.5 million. Even if that amount were adequate, the Settling Parties have yet to identify the specific organizations and programs that will consume the fund. This Court should not approve any cy pres settlement or distribution until they do so. Nevertheless, as set forth below, there are substantial objections to the adequacy and propriety of the proposed fund, particularly given the breadth of the release of claims in this case.

**B. The Release Is Overbroad, and Purports to Eliminate Claims that Could Not Have Been Litigated in this Case**

The release of class members' claims in this case is unusually broad:

> "Settled Claims" means any claim, liability, right, demand, suit, matter, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Releasing Parties, had, or may have, against Google that arise out of or relate to facts giving rise to the subject matter of the Action, whether known or unknown, suspected or unsuspected, asserted or unasserted, accrued or which may thereafter accrue, regardless of legal theory and the type of equitable relief or damages claimed.

Settlement Agreement, ¶1.24

Significantly, there is no limitation to claims that "were or could have been brought in the action", a commonly employed limitation in the class context. Yet the incident at the heart of this case could still give rise to a wide variety of harms unsuitable for class action treatment, and which would not have been a part of this case. The public disclosure of the types of information in a Google Profile, including most-frequent e-mail contacts, could give rise to a wide variety of personal and financial harms that may not immediately be detected and which are also so individualized that they could not have been addressed in the context of this case.

The breadth of the release of claims in this case is a red flag this Court should not ignore. *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307-308 (3rd Cir. 2005) (inclusion of unasserted TILA and HOEPA claims in class settlement release raised question "whether the absent class members' interests were sufficiently pursued by class counsel" and suggested that "class counsel subrogated their duty to the class in favor of the enormous class-action fee offered by defendants.") *See also Trotsky v. Los Angeles Federal Savings and Loan Association*, 48 Cal.App.3d 134, 146-48 (1975) (discussing and concluding that "[a]ny attempt to include in a class settlement terms which are outside the scope of the operative complaint should be closely scrutinized by the trial court to determine if the plaintiff genuinely contests those issues and adequately represents the class.") citing *Heddendorf v. Goldfine* 167 F.Supp. 915, 921, 928 (D.Mass. 1958) (observing that

courts should not approve class action settlements in which the release of claims reaches a transaction not covered by the pleadings unless it is certain that "the transaction was cognate to those covered and had been fully inquired into by the court.")

Further, this Court should not ignore that this case is proposed to be settled at a very early stage of the proceedings, with nothing but informal confirmatory discovery to support Class Counsel's decision to offer the release. See, e.g., *In re Community Bank of Northern Virginia*, 418 F.3d at 307-308 (class counsel's reliance on "informal discovery" cast doubt on the adequacy of their "exploration of the absent class members' potential claims" and whether they could have negotiated a settlement in the class' best interest); *Heddendorf*, 167 F. Supp. at 925-26 (refusing to endorse settlement where broad release exceeded scope of pleadings, there was no compensation for the released claims, and there was insufficient adversarial exploration of the released claims).

### C. The Damages Claims of Absent Class Members are Substantial and Should be Considered

A necessary cornerstone of the Settling Parties' attempt to settle for cy pres relief only is the assertion that few, if any, class members suffered out-of-pocket damages, or that any such damages were negligible. This assertion is made on the basis of Plaintiffs' review of customer complaints directed to Google in the aftermath of the Buzz rollout, which Plaintiffs say did not reveal out-of-pocket damage claims.

First, of course, it is doubtful that a review of class member communications to Google directly after the incident could reliably be expected to reveal specific claims for out-of-pocket damages, much less support an extrapolation of their absence over the entire class and into the future. But the point is made moot by the availability of considerable statutory damages pleaded in the complaint. See Consolidated Amended Complaint at ¶¶76 and 92.

However, Plaintiffs essentially claim that this Court need not consider the availability of statutory damages in considering the adequacy of the settlement. Their discussion on this point – a

PRELIMINARY OBJECTION AND NOTICE OF INTENT TO APPEAR (MAREK)

prolix rumination on the idea that such damages are somehow not compensatory – is both incorrect and beside the point. See Brief in Support of Motion for Final Approval (Doc. No. 61) at 11-15.

Statutory damages under the statutes at issue in this case range from $1,000 per incident in the case of the Stored Communications Act, to between $100 - $10,000 under the Wiretap Act. In the case of the SCA, the $1000 remedy is expressly set forth "as damages" See 18 U.S.C. 2707(c) ("The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." They are available without a showing of actual damages, and indeed function as a floor for actual damages. See In re Hawaiian Airlines, Inc., 355 B.R. 225, 230-31 (D. Haw. 2006).

Under the Wiretap Act, courts may award "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). The statutory award functions as "liquidated damages" for violations. In re Hawaiian Airlines, Inc., 355 B.R. at 231.

The statutes relied upon in Plaintiffs' own operative complaint, therefore, support an estimate of statutory damages alone somewhere between $3.7 billion (in the case of the lowest penalty under the Wiretap Act of $100) and $37 billion in the case of the minimum $1,000 award under the Stored Communications Act) when multiplied by the estimated 37 million class members. See Doc. 61 at 7:21-22. Yet this case is proposed to be settled for $8.5 million, which is to go straight to charity, in exchange for a plenary release of all possible claims, class or individual, that could be related to the incident.

Such a disparity between the available single damages and the proposed relief in this case cannot simply be waved away without some serious explanation. Was there some actual infirmity that would seriously affect plaintiffs' likelihood of prevailing or maintaining a class and, if so, did that infirmity essentially render the case dead in the water, with no cause for a settlement that releases individual claims? There is presently no such explanation.

### D. The Court Should Not Award Attorneys' Fees or Incentive Awards

Objector Marek argues that the settlement should not be approved, so that the issue of the fee is premature. But even if the Court approves the settlement as is, careful attention should be paid to the fee awarded and its distribution among the claiming counsel.

Class Counsel seek 25% of the cy pres fund to be created by the settlement. Though that request is tied to the benchmark in this Circuit, the court is nevertheless charged with assuring that the fee award and the manner of its distribution among counsel is reasonable. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 2000) ("In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper"); *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) ("WPPSS").

In this case, there are a large number of attorneys working among the duplicative cases. All of the cases were filed after Google made changes to the Buzz service, and none is responsible for causing those changes. The cases settled at a very early stage of litigation – Google had yet to even answer or otherwise respond. It would appear that the principal lead counsel in the case were themselves more than equal to the task of resolving it under the circumstances without the assistance of a panoply of additional counsel. Much of the time billed by ancillary firms – at relatively high hourly rates – seems to amount to unnecessary duplication of effort, at least without some additional explanation.[1] *E.g., In re Vitamins Cases*, 110 Cal.App.4th 1041, 1054-55 (2003) (noting federal case

---

[1] *See e.g.* Declaration of Peter Thomas (Doc. No 66-14 at ¶4: "As co counsel for the putative class, my Firm was directly involved in performing the following tasks: factual investigation, interviewing and consulting with named plaintiffs and other prospective clients; legal research and analysis, reviewing and conducting summary analysis of documents produced by Defendant, and drafting and filing of a class action complaint." Other declarations are identical or substantially similar. *E.g.*, Freed Decl. (Doc. No. 66-13) at ¶4; Shub Decl., (Doc. No. 66-11) at ¶4; Braun Decl., (Doc. No. 66-10) at ¶3; Terrell Decl, (Doc. No. 66-9) at ¶4; Kierstead Decl., (Doc. No. 66-8) at ¶4; Feldman Decl. (Doc. No. 66-12) at ¶5 (adding conference calls with lead counsel and other counsel); Wasylyk Decl. (Doc. No.

7

PRELIMINARY OBJECTION AND NOTICE OF INTENT TO APPEAR (MAREK)

law questioning awards of fees to counsel in follow-on cases). This Court should therefore carefully consider the allocation of fees in the case, and require the production of any fee-splitting agreement among the counsel. *See FPI/Agretech Sec's Litig.*, 105 F.3d 469, 473-74 (9th Cir. 1997) (proper for district court to enquire into agreements on allocation of fees among claiming class counsel and within its discretion to depart from them if the circumstances warrant it); see also *Mark v. Spencer*, 166 Cal.App.4th 219, 227-28 (2008) (lawyers must disclose fee sharing agreements to court when seeking settlement approval in class actions) citing and discussing *Rebney v. Wells Fargo Bank*, 220 Cal.App.3d 1117, 1143 n.8 (1990).

Finally, Plaintiffs' support for the requested incentive awards is inadequate. As is clear from the record, Plaintiffs in this case did not actually encounter any unusual burdens or risk that set them apart from representatives in any typical case. On the contrary, this case settled early, without any formal discovery conducted upon the named plaintiffs or long-term involvement on their part. The request for incentive awards only calls into question the named Plaintiffs' objectivity in agreeing to a settlement that returns no money at all to any absent class member.

---

66-7) at ¶4 (adds participation in mediation and settlement issues).

8

PRELIMINARY OBJECTION AND NOTICE OF INTENT TO APPEAR (MAREK)

## II. CONCLUSION

If this case is the least bit viable, then the available damages are massive and it should not be sold so cheaply. If it is not viable to prosecute it on a class basis, then there is no cause for a broad release of class and individual claims. In either circumstance, this settlement should not be approved on the terms proposed.

Dated: January 10, 2011

LAW OFFICES OF JOHN DAVIS

By /s/ John Davis

Attorneys for Objector
Megan Marek