ORIGINAL

FILED

20 JAN 10 P 2:22

C...

1  Joshua R. Furman, Bar No. 225461
2  jrf@furmanlawyers.com
   JOSHUA R. FURMAN LAW CORP.
3  9663 Santa Monica Boulevard, No. 721
4  Beverly Hills, California  90210
   Telephone:  (310) 809-3016
5  Facsimile:   (310) 861-0449

6
   *Attorney for Plaintiff-Objector,*
7  Jon M. Zimmerman

8                                                      **BY FAX**

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  IN RE GOOGLE BUZZ USER              Case No.: CV 10-00672 JW
13  PRIVACY LITIGATION
                                        [Hon. James Ware, Courtroom 8]
14
15                                      **NOTICE OF INTENT TO APPEAR
                                        AT FINAL SETTLEMENT
16                                      HEARING; OBJECTIONS TO
                                        SETTLEMENT OF PLAINTIFF-
17                                      OBJECTOR; MEMORANDUM OF
18                                      POINTS AND AUTHORITIES**

19                                      [FILED CONCURRENTLY WITH
20                                      DECLARATION OF JON M.
21                                      ZIMMERMAN]

22                                      Date: January 31, 2011
23                                      Time: 9:00 a.m.
                                        Courtroom: 8
24

25

26  ///
27

28
                                       i

## <u>TABLE OF CONTENTS</u>

Page

NOTICE OF INTENT TO APPEAR ..................................................................... ix

OBJECTIONS TO SETTLEMENT AGREEMENT ............................................. x


### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.    INTRODUCTION ........................................................................................... 1

II.   DISCUSSION ................................................................................................. 5

    A.    The Standard for Approving Class Action Settlements ....................... 5

          1.    General Principles of Federal Rule of Civil
                  Procedure 23 ............................................................................ 5

          2.    Pre-Certification Settlements are Subject to
                  Heightened Scrutiny ................................................................ 6

    B.    The Relief Provided in the Settlement Agreement
        is Insufficient ........................................................................................ 8

          1.    The Monetary Relief is Patently Inadequate ............................. 8

          2.    There is No Monetary Benefit to the Class .............................. 12

          3.    *Cy Pres* Distribution Must Be the "Next Best"
                  Distribution Compared to Directly Benefiting
                  Class Members ........................................................................ 14

                  *a.*    Cy Pres-*Only Distribution is Inconsistent*
                          *with the Policies Reflected in the Federal*
                          *Privacy Statutes* ........................................... 14

                  *b.*    *"Mystery"* Cy Pres *Recipients Cannot be*
                          *Authorized as a Matter of Law* ....................... 16

          4.    Proposed Injunctive Relief is Illusory, Includes
                  Conduct that Defendant Has Allegedly Already
                  Performed, and Usurps the Authority of the Court

to Determine the Sufficiency of the Settlement ........................ 18

C.   Class Counsel Failed to Prosecute the Action with Due

Diligence and Reasonable Prudence ................................................ 21

III.   CONCLUSION ........................................................................... 22

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Ace Heating & Plumbing Co. v. Crane Co.*
        453 F.2d 30 (3d Cir. 1971) ................................................................... 7

*Acosta v. Trans Union, LLC*
        243 F.R.D. 377 (C.D. Cal. 2007) .............................. 8, 9, 10, 11, 12, 18, 19

*Amchem Products, Inc. v. Windsor*
        521 U.S. 591 [117 S.Ct. 2231, 138 L.Ed.2d 689] (1997)...................... 5, 6, 7

*City of Philadelphia v. American Oil Co.*
        53 F.R.D. 45 (D.N.J. 1971) .......................................................... 17

*Class Plaintiffs v. City of Seattle*
        955 F.2d 1268 (9th Cir. 1992), cert. denied
        506 U.S. 953 [113 S.Ct. 408, 121 L.Ed.2d 333] (1992)......................... 5, 21

*County of Suffolk v. Long Island Lighting Co.*
        907 F.2d 1295 (2d Cir. 1990) ........................................................ 7

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
        C 06-3903 TEH (N.D. Cal. Oct. 22, 2008) ........................................ 6

*DeLise v Farenheit 20 Entertainment*
        CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) ........................... 13, 14

*Franks v. Kroger Co.*
        649 F.2d 1216 (6th Cir. 1981) ..................................................... 19

*Grimes v. Rave Motion Pictures Birmingham, LLC*
        264 F.R.D. 659 (N.D. Ala. 2010) ................................................. 15

*Hanlon v. Chrysler Corp.*
        150 F.3d 1011 (9th Cir. 1998).............................................. 5, 6, 7, 12

*Hoffer v. Landmark Chevrolet Ltd.*
        245 F.R.D. 588 (S.D. Tex. 2007) ............................................. 14, 16

iv

*In re Agent Orange Product Liability Litigation*
  818 F.2d 179 (2d Cir. 1987) ............................................................ 15, 17

*In re Airline Ticket Commission Antitrust Litigation*
  307 F.3d 679 (8th Cir. 2002) ............................................................ 14

*In re Doubleclick, Inc. Privacy Litigation*
  No. 00-CIV-0641 (NRB) (S.D.N.Y. May 24, 2002) ............................ 13

*In re Folding Carton Antitrust Litigation*
  744 F.2d 1252 (7th Cir. 1984) .......................................................... 14

*In re Ford Motor Co. Bronco II Prods. Liability Litigation*
  1995 U.S. Dist. LEXIS 3507 (E.D. La. 1995) ................................... 19

*In re General Motors Corp. Engine Interchange Litigation*
  594 F.2d 1106 (7th Cir. 1979) ........................................................... 7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products*
  *Liability Litigation*
  55 F.3d 768 (3d Cir.), cert. denied, 516 U.S. 824 (1995) ............... 6, 7, 8, 10

*In re Pacific Enterprises Securities Litigation*
  47 F.3d 373 (9th Cir. 1995) .............................................................. 5

*Lane v. Facebook, Inc.*
  CV 08-03845 RS (N.D. Cal. Mar. 17, 2010)
  [9th Cir. Case Nos. 10-16380, 10-16398 (pending)] ...................... 11, 12, 13

*Levell v. Monsanto Research Corp.*
  191 F.R.D. 543 (S.D. Ohio 2000) ..................................................... 19

*Linney v. Cellular Alaska Partnership*
  151 F.3d 1234 (9th Cir. 1998) .......................................................... 5, 12

*Livingston v. Toyota Motor Sales USA*
  1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995) ............................... 9

*Local No. 93, International Assoc. of Firefighters v. City of Cleveland*
  478 U.S. 501 [106 S.Ct. 3063, 92 L.Ed.2d 405] (1986) .................. 18

*Malchman v. Davis*
     706 F.2d 426 (2d Cir. 1983) ............................................................. 7

*Mars Steel v. Continental Illinois National Bank & Trust*
     834 F.2d 677 (7th Cir. 1987) ............................................................ 7

*Mirfasihi v. Fleet Mortgage Corp.*
     356 F.3d 781 (7th Cir. 2004) .......................................................... 15

*Molski v. Gleich*
     318 F.3d 937 (9th Cir. 2003) ............................................. 15, 21, 22

*National Rural Telecoms. Coop. v. DIRECTV, Inc.*
     221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 5

*Newman v. Stein*
     464 F.2d 689 (2d Cir. 1972) ........................................................... 10

*Powell v. Georgia-Pacific Corp.*
     119 F.3d 703 (8th Cir. 1997) .......................................................... 14

*Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*
     98 F.3d 147 (4th Cir. 1996) ........................................................... 19

*Schering Corp. v. Illinois Antibiotics Co.*
     62 F.3d 903 (7th Cir. 1995) ........................................................... 18

*Simer v. Rios*
     661 F.2d 655 (2d Cir. 1981) ..................................................... 15, 16

*Six Mexican Workers v. Arizona Citrus Growers*
     904 F.2d 1301 (9th Cir. 1990) ............................................. 14, 15, 17

*Thompson v. Cooke*
     CV 96-01791 REB (D. Colo. Jan. 11, 2008) ................................... 18

*Torrisi v. Tucson Elec. Power Co.*
     8 F.3d 1370 (9th Cir. 1993) ............................................................. 5

*Weinberger v. Kendrick*
     698 F.2d 61 (2d Cir. 1982) .............................................................. 7

vi

*Zucker v. Occidental Petroleum Corp.*
     192 F.3d 1323 (9th Cir. 1999) ................................................................. 13

**Federal Statutes**

18 U.S.C. § 1030, *et seq.* .......................................................................... 3
18 U.S.C. § 2510, *et seq.* .......................................................................... 2
18 U.S.C. § 2520(b)(3) .............................................................................. 3
18 U.S.C. § 2520(c)(2) ...................................................................... 1, 3, 16
18 U.S.C. § 2707(b)(3) .............................................................................. 3
18 U.S.C. § 2707(c) .................................................................................. 3

**California Statutes**

Business & Professions Code, section 17200 ............................................ 3

**Federal Rules**

Federal Rule of Civil Procedure 23 .............................................. 5, 8, 21

**Treatises**

5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) ..................... 5
Manual for Complex Litigation 2d § 30.42 ............................................. 7
2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17
     (4th ed. 2002) ..................................................................................... 15
Restatement (Second) of Judgments § 42(1)(2) (1982)........................... 22

**Other Sources**

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of
     Economic Theory for Private Enforcement of Law through Class and
     Derivative Actions*, 86 COLUM. L. REV. 669 (1986)......................... 9

Notice of Intent to Appear; Objections to Settlement

Electronic Frontier Foundation, *Internet Law Treatise – Privacy: Key Cases*
  Intrusion into Seclusion, *at* http://ilt.eff.org/index.php/Privacy:
  _Key_Cases (last modified Feb. 10, 2010). .................................................. 14

Cecilia Kang, *Privacy advocates file FTC complaint on Google Buzz*
  The Washington Post, *at* http://voices.washingtonpost.com/
  posttech/2010/02/ privacy_advocates_file_complai.html
  (Feb. 17, 2010) ..................................................................... 2

Ryan Paul, *EPIC fail: Google faces FTC complaint over Buzz privacy*
  Ars Technica, *at* http://arstechnica.com/security/news/2010/02/
  epic-fail-google-faces-complaint-over-buzz-privacy-issues.ars
  (last modified Feb. 17, 2010). ..................................................... 2

Bob Styran, *Google Buzz Goes on with Data Privacy Violation*
  InAudit, *at* http://inaudit.com/audit/it-audit/google-buzz-
  goes-on-with-data-privacy-violation-3889/ (Jan. 5, 2011)............................. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF INTENT TO APPEAR

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff-Objector JON M. ZIMMERMAN, by and through his counsel herein intend to appear at the Final Settlement Hearing for this action January 31, 2011, at 9:00 a.m. at the above-entitled Court pursuant to the Court's Order of October 7, 2010.

The purpose of Plaintiff-Objectors' appearance is to object to the proposed Settlement Agreement in this case and to respectfully request that the Court disapprove the same.

Dated: January 10, 2011                JOSHUA R. FURMAN LAW CORP.


By: _____
        Joshua R. Furman
    *Attorney for Plaintiff-Objector,*
    Jon M. Zimmerman

## OBJECTIONS TO SETTLEMENT AGREEMENT

Plaintiff-Objector JON M. ZIMMERMAN is a member of the Class as defined the Settlement Agreement in this matter, paragraphs 1.3 & 1.6. *See* Declaration of Jon M. Zimmerman, filed concurrently. Plaintiff-Objector Zimmerman objects to the Settlement Agreement generally and explicitly on the following grounds:

1. The monetary portion of the settlement is inadequate and does not present concrete benefit to the Class.

2. *Cy pres*-only distribution is inconsistent with the policies and congressional intent reflected in the federal privacy statutes.

3. The *cy pres* recipients are insufficiently identified.

4. The injunctive portion of the settlement is impermissibly vague and illusory.

5. There is evidence of collusion between Class Counsel and Defendants.

6. Class Counsel and Class Representatives have not adequately represented the interests of the Class and/or various Class Members.

7. Negotiating Class Counsel's fee contemporaneously with the class settlement fund is improper.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The proposed settlement on behalf of the Class in this case has all the hallmarks of a self-dealing, collusive arrangement between class counsel and Defendant.   Every known factor weighs against approval of the proposed settlement, specifically: (1) the case is only a few months old; (2) there has been, by class counsel's admission,[1] no discovery whatsoever; (3) the Class Members, while each of the tens of millions of them is entitled to up to $10,000 in statutory damages,[2] will enjoy no monetary benefits of the settlement; (4) the entire settlement fund will be gifted to as-yet unnamed mystery *cy pres* recipients having something to do with the Internet industry;[3] (5) there has been virtually no motion practice whatsoever, let alone dispositive motions; (6) the injunctive relief proposed is impossibly vague and illusory and includes things Defendant has already done;[4] and (7) class counsel will receive a fee possibly exceeding $2,000,000 for a modicum of work and doing nothing that will benefit the Class.

This class action involves very serious and valuable claims for the Class Members.  Google Buzz is a content aggregation and dissemination platform that Google unilaterally integrated into its Gmail email services without the consent of

---

[1] Per class counsel's motion for attorneys' fees (Docket No. 65), discovery in this case consisted solely of a one-day meeting between counsel and some of Defendant's executives at Defendant's offices on April 23, 2010—approximately one month before the mediation—and the exchange of some screenshots a few days later.   (Dock. No. 65, p. 3:8–23.)   Class counsel has undertaken no adversarial discovery, has not requested production of any documents, has not served a single interrogatory to be answered under oath, and has failed to conduct a single deposition.

[2] Pursuant to the Wiretap Act, 18 U.S.C. § 2520(c)(2).  *See* Complaint, Dock. No. 31, ¶ 92.

[3] Settlement Agreement, ¶ 3.4.

[4] Settlement Agreement, ¶¶ 3.1–3.3.

1

1  users.  Email is a private form of electronic communication protected by the
2  United States Constitution and state and federal statutes.  *See, e.g.*, Electronic
3  Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*  Yet, Defendant created
4  Google Buzz specifically to obtain and disseminate information about its users'
5  Gmail email messages—including all of those users' contacts—to third parties, in
6  contravention of the law.

7      Gmail users and privacy organizations are universal in decrying Google
8  Buzz and the harm it has caused consumers.  "Since its inception in February
9  2010, Google Buzz has been facing left and right allegations of infringing
10 personal data of its users."[5]  "[The Electronic Privacy Information Center]
11 complained to the Federal Trade Commission ... that the Google Buzz social
12 networking application attached to the company's popular e-mail program caused
13 'clear harms to service subscribers.'"[6]  "The [Electronic Frontier Foundation]
14 points out that Google recklessly abused information entrusted to it by users—
15 their address books—to gain a competitive advantage in a market where it is
16 entering late and facing off against popular competitors [i.e. Facebook and
17 Twitter]."[7]

18      Charged with protecting the rights of approximately 40 million users of
19 Gmail subjected to Google Buzz, class counsel has failed miserably.  A few
20 weeks after enjoying a junket to the Google campus where they were entertained
21 and glad-handed by one of the largest companies in the world, class counsel

22 
23 [5] Bob Styran, *Google Buzz Goes on with Data Privacy Violation*, InAudit, *at*
24 http://inaudit.com/audit/it-audit/google-buzz-goes-on-with-data-privacy-violation-3889/ (Jan. 5, 2011).
25 [6] Cecilia Kang, *Privacy advocates file FTC complaint on Google Buzz*, The
26 Washington Post, *at* http://voices.washingtonpost.com/posttech/2010/02/privacy_advocates_file_complai.html (Feb. 17, 2010).
27 [7] Ryan Paul, *EPIC fail: Google faces FTC complaint over Buzz privacy*, Ars
28 Technica, *at* http://arstechnica.com/security/news/2010/02/epic-fail-google-faces-complaint-over-buzz-privacy-issues.ars (last modified Feb. 17, 2010).

2

1    allowed themselves to be bought off for a huge sum—particularly considering the
2    *de minimis* work put in—while forfeiting the rights of Class Members for nothing.
3    All of this came about within

4         Defendant's liability in this case, if the evidence is developed, is
5    substantial. Feeling the competitive pressure of the social media market slipping
6    away, Google Buzz was rushed to go live with no regard for consumer privacy or
7    safety. Defendant applied the platform to the private email accounts of
8    approximately 40 million Gmail users without their consent and it immediately
9    began sharing users' private, legally protected data with third parties. The wrongs
10   have been definitively, provably committed.

11        Federal law provides statutory damages for disclosing electronically stored
12   private information without consent. Pursuant to the Stored Communications Act,
13   statutory damages are $1,000 per user plus punitive damages and attorneys' fees.
14   18 U.S.C. §§ 2707(b)(3), (c). Pursuant to the Wiretap Act, statutory damages are
15   $100 per user per day of disclosure, up to $10,000, plus attorneys' fees. 18 U.S.C.
16   §§ 2520(b)(3), (c)(2). The statutes, including the Computer Fraud and Abuse Act
17   (18 U.S.C. § 1030, *et seq.*) also provide for injunctive relief. There are also
18   California common law and proper statutory claims under California Business &
19   Professions Code, section 17200.

20        At a minimum, given the huge scale of the user base, statutory damages
21   have the potential to easily top $1 billion and could theoretically extend into
22   realms that Plaintiff-Objector herein acknowledges as absurdly high—up to $400
23   billion. (40 million Gmail users multiplied by maximum Wiretap Act damages of
24   $10,000 per user.) While no one is suggesting that this settlement needs to reach
25   those heights to be sufficient, class counsel's assertion that an $8.5 million
26   settlement could fairly compensate these claims is a dereliction of professional
27   duties to the Class by an order of magnitude.

28        Even more preposterous is the attempt to avoid payment to the class

3

1    entirely by setting up the settlement fund solely for the benefit of the mystery *cy*
2    *pres* recipients.   When one considers that the settlement provides less than 22
3    cents per Class Member—less than the cost of a postage stamp, let alone the
4    printing costs for a settlement check—it does make sense that the amounts here do
5    not justify distribution.  However, that fact is itself evidence of the overwhelming
6    point: the settlement amount is grossly inadequate.

7         Finally, the class counsel's motion for approval is profoundly inadequate in
8    its support and argument and is indicative of a settlement-only posture with no
9    intent to try this case.  So deficient is class counsel's knowledge about the case
10   that it cannot offer the haziest estimate of the Class membership.  Class counsel
11   simply states the Class "of millions of Gmail users," estimated to be "several
12   million individuals."   Motion for Preliminary Approval, etc. (Dock. No. 41)
13   (hereinafter "Motion"), p. 14:7–18.  How class counsel was able to evaluate the
14   settlement value of the case without even knowing the most basic facts about the
15   size of the class is yet another mystery.

16        The settlement proposed in this case does not pass the most cursory review.
17   The amount of money is minimal.   The amount of attorneys' fees is high
18   considering there has been virtually no work done.  Class counsel knows nothing
19   of the evidence in this case, or how likely success may be, because there has been
20   no discovery.  The Court is left with no way to determine many of the things it
21   must determine in order to find that this settlement is reasonable.  At the very
22   least, the Settlement Agreement and motion do not provide any information about
23   the proposed injunctive relief, likelihood of success, or propriety of the *cy pres*
24   recipients.   Class counsel and Defendant are asking the Court to approve this
25   settlement in a black box with a blindfold on.

26        Plaintiff-Objector herein respectfully urges the Court to reject the proposed
27   settlement as insufficient in substance and inadequately stated.

28   ///

4

## II.

## DISCUSSION

**A.   The Standard for Approving Class Action Settlements**

    **1.   General Principles of Federal Rule of Civil Procedure 23**

Class action settlements proposed under Federal Rule of Civil Procedure 23 are subject to a "universally applied standard." *National Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Under this standard, final approval for a class action settlement should only be granted where the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* quoting 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) *citing In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied 506 U.S. 953 [113 S.Ct. 408, 121 L.Ed.2d 333] (1992). *See also*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("District courts must be skeptical of some settlement agreements put before them"), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 [117 S.Ct. 2231, 138 L.Ed.2d 689] (1997).

Generally, the Ninth Circuit applies an eight-factor analysis to determine if the proposed settlement meets this standard. The factors are: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; [8] and the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

"Where, as here, the parties agree to settle the dispute prior to certification of the class, the court must be particularly vigilant in its scrutiny of the

5

1    settlement." *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, C 06-3903 TEH (N.D.

2    Cal. Oct. 22, 2008) p. 7, citing *Hanlon*, 150 F.3d at 1026.

3         As the court in *Hanlon* observed, of Supreme Court precedent:

4              The *Amchem* Court also noted the problem of counsel "not

5              prepared to try a case."  Such counsel is, almost by definition,

6              inadequate because an inability or unwillingness to try a case

7              means the class loses all of the benefits of adversarial litigation.

8              "Class counsel confined to settlement negotiations could not

9              use the threat of litigation to press for a better offer."  *Amchem*,

10             117 S.Ct. at 2248-2249.  District courts must be skeptical of

11             some settlement agreements put before them because they are

12             presented with a "bargain proffered for … approval ***without***

13             ***benefit of an adversarial investigation***."  *Id.* at 2249.

14             These concerns warrant special attention when the record

15             suggests that settlement is driven by fees; that is, when counsel

16             receive a disproportionate distribution of the settlement, or

17             ***when the class receives no monetary distribution but class***

18             ***counsel are amply rewarded***.  *See, e.g., In re General Motors*

19             *Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

20             768 (3d Cir.), cert. denied, 516 U.S. 824 (1995).

21   *Hanlon*, 150 F.3d at 1021 (emphasis added).

22        In this case, the *Linney* factors are conflated by the *Hanlon* analysis and

23   only lead to the conclusion that this settlement is unapprovable.

24        **2.    Pre-Certification Settlements are Subject to Heightened**

25             **Scrutiny**

26        Because of the "special difficulties" a court encounters evaluating a class

27   action settlement prior to (and in conjunction with) certification of the class, there

28   must be an even greater showing of fairness and "much stronger indications of

6

sustained advocacy by the *de facto* class counsel" before the settlement can be approved. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 805-806 (3rd Cir. 1995) (hereinafter "*General Motors*"), *citing Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) ("[W]hen the settlement is not negotiated by a court designated class representative the court must be doubly careful in evaluating the fairness of the settlement to the plaintiff's class."); *In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (attributing a need for heightened scrutiny of the settlement to the potential for collusive settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (higher showing of fairness required in pre-certification settlements, and special focus on assuring adequate representation and the absence of collusion); *Malchman v. Davis*, 706 F.2d 426, 434 (2d Cir. 1983); *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990); Manual for Complex Litigation 2d § 30.42 (citing the informational deficiencies faced by the court and counsel in pre-certification settlements).

Class counsel who proceed directly to settlement negotiations without so much as litigating past the threshold question of certification may be seen as "confining" themselves to settlement and losing all benefit of the threat of litigation. *See, Hanlon*, 150 F.3d at 1021-22, *quoting Amchem*, 117 S.Ct. at 2248-2249 ("Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer.")

Accordingly, when face with a pre-certification settlement, the court is well-served to consider these questions posed by the Third Circuit in *General Motors*:

> Is the relief afforded by the settlement significantly less than what appears appropriate in light of the preliminary discovery? Have major causes of action or types of relief sought in the

7

complaint been omitted by the settlement?   Did the parties achieve the settlement after little or no discovery?   Does it appear that the parties negotiated simultaneously on attorneys' fees and class relief?   Even acknowledging the possibility of some overpleading, these questions raise a red flag in this case.

*General Motors*, 55 F.3d at 806.

In the present case, as explained below, the same red flags are waving high.

### B.   The Relief Provided in the Settlement Agreement is Insufficient

#### 1.   The Monetary Relief is Patently Inadequate

Federal Rule of Civil Procedure 23(e) states in pertinent part: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.   [… ¶ …]   If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."   Where the potential outcome of class action litigation is a very high dollar amount, the settlement is fair, reasonable, and adequate only if it reflects an honest compromise of that liability informed by a thorough investigation.   As explained herein, the settlement proposed in this case is neither fair nor the result of vigorous prosecution.

This Court's sister jurisdiction in the Central District of California has provided a thorough and instructive application of the Ninth Circuit test under Rule 23 for approval of class action settlements in cases like this.   In *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), class counsel and defendants in a class action claiming statutory damages for violations of the Fair Credit Reporting Act by credit reporting agencies proposed a settlement wherein some of the class members would be entitled to free credit reports and, with substantial limitations, some would be entitled to cash payments depending on their individual circumstances.   *Acosta*, 243 F.R.D. at 389–91, etc.   The court calculated that the gross value of the services to be offered to the class was

8

1  approximately $1 million, while the potential value of the plaintiff's claims in the
2  litigation was 1,000 times greater—approximately $1 billion per defendant. *Id.*

3      The *Acosta* court made two critical observations about the sufficiency of
4  the proposed relief.  First, it held that "[t]he economic value of the Settlement
5  pales in comparison to Plaintiffs' potential recovery through litigation.  Moreover,
6  Plaintiffs' prospects for prevailing in this litigation are not so bleak as to render
7  this a 'good value for a relatively weak case.'"  *Id.* at 393, *quoting Livingston v.*
8  *Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995).  The
9  court came to this conclusion after evaluating the fact that the damages claimed
10 were statutory, not subject to proof, and reviewing the "raw data" presented
11 regarding the pervasiveness of the violations and the evidence supporting the
12 defendants' stated defenses. *Id.* at 391–93.

13     Second, the *Acosta* court held that the proposed attorneys' fees award by
14 itself was "so grossly out of proportion to the class members' probable aggregate
15 recovery as to suggest *a strong possibility of impropriety*."   *Id.* at 393–94
16 (emphasis added), *citing General Motors*, 55 F.3d at 802 ("At its worst, the
17 settlement process may amount to a covert exchange of a cheap settlement for a
18 high award of attorneys fees."), *quoting* John C. Coffee, Jr., *Understanding the*
19 *Plaintiff's  Attorney:  The  Implications  of  Economic  Theory  for  Private*
20 *Enforcement of Law through Class and Derivative Actions*, 86 COLUM. L. REV.
21 669, 714 n. 121 (1986).[8]  In *Acosta*, the court calculated that the class members
22 would receive approximately $1 million in aggregate, while class counsel would
23 receive nearly $5.5 million. *Id.* at 393.

24

25  _____
26  [8] The court also noted with disapproval the substantial windfall to defendants in
    obtaining general releases for the entire settlement class of their serious exposure
27  to statutory damages. *Acosta*, 243 F.R.D. at 394 ("Trans Union and Equifax also
    would receive handsome compensation under the Settlement by way of its release
28  provisions.").

Notice of Intent to Appear; Objections to Settlement

In light of the strong nature of plaintiffs' statutory damages case, the low aggregate benefit to class members, and the high rewards collected by both class counsel and the defendants, among other things, the *Acosta* court rejected the proposed class settlement and denied the motion for approval. *Id.* at 399–400 ("In conjunction with the deficient nature of the presettlement discovery Plaintiffs conducted and the willingness of Plaintiffs' counsel to simultaneously negotiate attorneys fees with class relief … the Court has grave doubts that this settlement is the result of a process that was sufficiently adversarial or conducted at arm's-length.   In conjunction with the serious structural defects inhering in the Settlement and the fact that the Settlement delivers grossly insufficient relief to the class, *the Court is unequivocal in concluding that it cannot be approved*."] (emphasis added).

The present case is indistinguishable from *Acosta* except that the gulf between the benefit to Class Members and class counsel is even greater.  Here, the basis for the bulk of the claimed damages is exactly the same as in *Acosta*— statutory damages for violations of federal statutes.   These damages require neither proof of harm nor proof of causation.  If Defendant disclosed Gmail users' information without authorization, then it is liable and must pay statutory damages.  This type of damage claim eases Plaintiffs' burden significantly at trial and indicates a high likelihood of success.

Furthermore, the potential aggregate damages in this case, including as it does a 40-million-strong class membership, are tremendous, in excess of $1 billion.  There is no doubt that a fair and reasonable settlement need not reach into the ten figures, but the potential recovery "should generate a range of reasonableness" that it seems Class Counsel has disregarded in negotiating the total settlement fund of $8.5 million. *See General Motors*, 55 F.3d at 806, *citing Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Even worse than *Acosta*, the Class Members here will realize no benefit whatsoever from the settlement.  While *Acosta* class counsel sought higher fees than Class Counsel herein, at least the class members there got approximately $1 million.  The existence of a *cy pres* fund in this case is meaningless to the analysis.  The only question is how much is Class Counsel getting compared to the Class Members themselves.  Since Class Members get zero, the difference between the benefits to the Class and to class counsel may as well be infinite.

As with *Acosta*, the record here readily demonstrates that no discovery has been performed.  The only processes undertaken in the brief history of this case have not been the result of adversarial action, but of stipulations and closed-door meetings at Defendant's offices—far from arm's-length negotiation.  There is no evidence or substantive argument offered about the nature or merit of Defendant's claimed defenses.  Indeed, the application for preliminary approval states only two unsupported paragraphs asserting that Defendant "would continue to contest vigorously the merits of Class Members' claims."  Motion, p. 12:23–13:11.  As held in *Acosta*, "the parties' willingness to thoroughly litigate a case is simply not a compelling justification to discount the value of Plaintiffs' claims."  *Acosta*, 243 F.R.D. at 393.

Class counsel also claims that there are novel questions of law involving "federal privacy statutes that have not been specifically applied by courts to internet-based social networks."  Motion, p. 13:2–3.  But counsel cites no specific challenges or ambiguities in the law that would pose difficulty.  Naked as it is, the argument that this case presents novel legal questions lacks credibility because even the decisions cited by class counsel include claims under almost the exact same federal privacy statutes against the archetypal Internet-based social media company, Facebook.  *See Lane v. Facebook, Inc.*, CV 08-03845 RS (N.D. Cal. Mar. 17, 2010) (alleging violations of, *inter alia*, the Electronic Communications

1    Privacy Act, the Computer Fraud and Abuse Act, and ultimately the Wiretap
2    Act).[9]
3            Without any information about the basis for Defendant's defenses or
4    perceived problems with the legal theories behind the complaint, neither Class
5    Members like the Plaintiff-Objector herein nor the Court have enough information
6    to make any ultimate determination about the sufficiency of the settlement.  To
7    the contrary, given the cozy negotiations and closed-door "discovery" process,
8    Plaintiff-Objector is left to conclude that class counsel is being intentionally
9    vague in an attempt to circumvent a thorough reasonableness analysis.  The same
10   problem is evidenced in the lack of any benefit to class members and the mystery
11   identity of the *cy pres* recipients.  The Court should not accept class counsel's
12   half-hearted attempts to cover the bases of a preliminary approval motion, but
13   deny approval.

14   ## 2.    There is No Monetary Benefit to the Class

15           Monetary relief for Class Members is not strictly required in order to
16   approve a settlement.  However, the *Linney* factors and the guidance of *Hanlon*
17   weigh strongly towards disapproval where there is a monetary recovery, but not to
18   the Class, and where class counsel takes in an unearned bounty.
19           As discussed above, any proportional discrepancy between the benefit to
20   class members and the fees to class counsel suggests "a strong possibility of
21   impropriety." *Acosta*, 243 F.R.D. at 394.  Where the class members receive no
22   benefit whatsoever, a significant fee request for class counsel means that
23   something other than maximizing the Class Members' recovery is motivating
24   class counsel.  *See Hanlon*, 150 F.3d at 1021.  All of these factors compel the
25   court evaluating a class settlement proposal to be vigilant against abuses by class
26
27   [9] Class counsel's citation to *Lane* is particularly disingenuous because that case is
     currently on appeal (9th Cir. Case Nos. 10-16380, 10-16398) (see further
28   discussion *infra*).

1   counsel. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1327 (9th
2   Cir. 1999) ("In a class action, substantial justice may require the court do more
3   than encourage settlement.   The absence of individual clients controlling the
4   litigation for their own benefit creates opportunities for collusive arrangements in
5   which defendants can pay the attorneys for the plaintiff class enough money to
6   induce them to settle the class action for too little benefit to the class … .").

7       Class counsel cites to *Lane v. Facebook, supra*, for the principle that a
8   proper settlement under these circumstances can include a donation to *cy pres*
9   recipients only and no payments to Class Members. Motion, p. 12:14–17.  As
10  discussed above, this case is currently on appeal has no precedential value.
11  However, even looking at the facts of that case, the settlement here is
12  unreasonable in terms of quantum alone.   There, a $9.5 million gross settlement
13  fund was fair for a class with virtually the same statutory damages under the same
14  privacy statutes, but with a membership of 3.5 million.  *See* Request for Judicial
15  Notice, Exhibit A.  Here, the membership likely exceeds 40 million.  With over 10
16  times the class size, it is fair and reasonable to expect a comparable settlement
17  size at a minimum.   Instead, class counsel has negotiated an inferior amount $1
18  million less than *Lane*.  Class counsel provides no excuse for this discrepancy.

19      The other two examples cited by class counsel are inapposite.  In *In re*
20  *Doubleclick, Inc. Privacy Litigation*, No. 00-CIV-0641 (NRB) (S.D.N.Y. May 24,
21  2002), the approved settlement agreement did not include any allowance for a *cy*
22  *pres* fund or any other recipients other than a flat fee for class counsel.  However,
23  the settlement agreement included nearly six pages of highly detailed injunctive
24  relief specifying the policies that defendant was changing and how defendant's
25  operations would protect consumer privacy.  *See* Request for Judicial Notice,
26  Exhibit B.  There are no such assurances here, and the existence of the *cy pres*
27  recipients distinguishes the instant case on its face.  In *DeLise v Farenheit 20*
28  *Entertainment*, CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) the plaintiff

13

sued under state common law and did not allege statutory damages for violations of federal privacy laws. As with *In re Doubleclick*, the settlement did not include *cy pres* and did include significant, specific injunctive relief.[10]

As noted above, the low settlement amount and the lack of any benefit for the Class Members are classic indicators of an inadequate settlement arrived at through collusion between class counsel and Defendant. In addition, class counsel has failed to cite any authority whatsoever for the proposition that it is fair or reasonable to provide no benefit to the Class in a statutory damages case while giving millions to mystery *cy pres* recipients and providing no specific injunctive relief. In the absence of any evidence or argument to the contrary, the Court should exercise its heightened vigilance and reject the settlement.

### 3. *Cy Pres* Distribution Must Be the "Next Best" Distribution Compared to Directly Benefiting Class Members

#### a. Cy Pres-*Only Distribution is Inconsistent with the Policies Reflected in the Federal Privacy Statutes*

The general rule is that a *cy pres* distribution is only to be used in a class action when there are funds left over after all of the class members who could be identified have received their compensation. *Hoffer v. Landmark Chevrolet Ltd.*, 245 F.R.D. 588, 603 (S.D. Tex. 2007) ("In the class action context, courts have applied cy pres primarily (although not exclusively) as a practical solution to the problem of settlement funds remaining after those class members who could be identified with reasonable effort received their distribution."), *citing In re Airline Ticket Commission Antitrust Litigation*, 307 F.3d 679 (8th Cir. 2002); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703 (8th Cir. 1997); *In re Folding Carton Antitrust Litigation*, 744 F.2d 1252 (7th Cir. 1984); *Six Mexican Workers v.*

---

[10] *See* Electronic Frontier Foundation, *Internet Law Treatise – Privacy: Key Cases*, Intrusion into Seclusion, *at* http://ilt.eff.org/index.php/Privacy:_Key_Cases (last modified Feb. 10, 2010).

*Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("Federal courts have frequently approved [the cy pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly."); *In re Agent Orange Product Liability Litigation,* 818 F.2d 179, 185 (2d Cir. 1987) ("[S]ome 'fluidity' is permissible in the distribution of settlement proceeds.") (hereinafter "*Agent Orange*"); 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17 (4th ed. 2002).[11]

There is an "open question" as to whether a *cy pres* distribution can ever be used as a substitute for actual damages. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) ("We have left open the question of whether a *cy pres* award can ever be used as a substitute for actual damages."), *citing Six Mexican Workers, supra.* While other Circuits have countenanced *cy pres*-only distribution in theory where actual awards to class members are infeasible,[12] it is clearly not permissible where the class membership has a claim for statutory damages and *cy pres* distribution would violate the policy behind the statute. *Simer v. Rios*, 661 F.2d 655, 676 (2d

---

[11] *See also, Grimes v. Rave Motion Pictures Birmingham, LLC*, 264 F.R.D. 659, 666 (N.D. Ala. 2010) ("Rave correctly points out that *cy pres* has only been employed when dealing with '*settlement funds* after those class members who could be identified with reasonable effort received their distribution.' [citing *Hoffer, supra*]. **There is no precedent for using** cy pres **to distribute somehow aggregated** statutory **damages** the owners of which are unknown, especially if each class member is guaranteed a minimum recovery of $100.") (italics in original, italics with boldface added).

[12] *E.g., Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("In the class action context the reason for appealing to *cy pres* is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement (or the judgment, in the rare case in which a class action goes to trial) to the class members." But, rejecting the settlement with the rhetorical question: "Would it be too cynical to speculate that what may be going on here is that class counsel wanted a settlement that would give them a generous fee and Fleet wanted a settlement that would extinguish 1.4 million claims against it at no cost to itself?").

1  Cir. 1981) ("The general inquiry is whether the use of such a mechanism is

2  consistent with the policy or policies reflected by the statute violated.").

3        The three-step framework of *Simer* was applied to a very similar statute in

4  the *Hoffer* case, the Fair Credit Reporting Act (FCRA, the same statute at issue in

5  *Acosta, supra*). After undertaking the *Simer* analysis, the *Hoffer* court rejected *cy*

6  *pres*-only distribution, holding, "[t]o approve the use of *cy pres* as a substitute for

7  distributing statutory damages to individual class members, as Hoffer proposes, is

8  at odds with the damages scheme Congress provided in the FCRA." *Hoffer*, 245

9  F.R.D. at 604.

10       As the *Hoffer* court concluded about *cy pres*-only under the FCRA:

11              Congress provided that a defendant who accesses a consumer's

12              credit report for a purpose not permitted by the FCRA must pay

13              that consumer either actual damages or a range of statutory

14              damages.   Replacing the payment of statutory damages to

15              individual class members with a *cy pres* payment intended to

16              provide indirect benefits to the class—perhaps by a charitable

17              contribution to a public interest organization focused on

18              consumer rights—changes this compensation statute to

19              something quite different.

20  *Id.*

21        The same reasoning applies in the present case.  There is no showing that

22  distribution of the settlement—particularly if it were adequately valued—is

23  infeasible.  Further, the statutory damages scheme in the federal privacy laws at

24  issue here provide that a defendant who accesses a consumer's electronic

25  communications without authorization must pay that that consumer actual

26  damages or a range of statutory damages, whichever is greater.  (E.g., pursuant to

27  the Wiretap Act, 18 U.S.C. §§ 2520(c)(2)(A) & (B).)  Accordingly, allowing *cy*

28  *pres*-only distribution is inconsistent with the compensation statute and changes it

1    "to something quite different."  Neither class counsel nor the Court are authorized

2    to diverge from the congressional intent behind these statutes.  Accordingly, a *cy*

3    *pres*-only distribution of the settlement in this case must be rejected.

4              **b.        "Mystery" Cy Pres *Recipients Cannot be Authorized***

5                          ***as a Matter of Law***

6              The law in the Ninth Circuit is clear that *cy pres* distributions must be

7    targeted at the plaintiff class and be adequately supervised to assure that the

8    purposes of the class action are served.  *Six Mexican Workers*, 904 F.2d at 1308

9    ("Even where *cy pres* is considered, *it will be rejected* when the proposed

10   distribution fails to provide the 'next best' distribution.") (emphasis added), *citing*

11   *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 72 (D.N.J. 1971)

12   (rejecting price reduction because benefited consumers were too remote from

13   injured class members).

14             In *Six Mexican Workers*, the court evaluated the specific background,

15   abilities, and mission of the proposed *cy pres* recipient and found that it was not

16   sufficiently experienced or targeted at the class, holding, "there is no reasonable

17   certainty that any [class] member will be benefited."  *Id.*  The court also noted that

18   any such distribution should be supervised by the trial court or a court-appointed

19   master to ensure that it is done "in accordance with the goals of the remedy."  *Id.*

20   at 1308–1309, *citing Agent Orange*, 818 F.2d at 185 ("we believe that the district

21   court must ... designate and supervise, perhaps through a special master, the

22   specific programs that will consume the settlement proceeds.").  The court in *Six*

23   *Mexican Workers* rejected the proposed *cy pres* distribution because, for the

24   reasons stated above, "the district court's application was inadequate to serve the

25   goals of the statute and protect the interests of the silent class members."  *Id.* at

26   1312.

27             Given the findings required to approve a class action settlement with *cy*

28   *pres* distribution, the Court cannot assess the propriety of the settlement without

---

17

identification of the *cy pres* recipients.   The Court must be satisfied to a "reasonable certainty" that the *cy pres* donation will benefit class members. When the Court cannot evaluate the background of the recipient, its abilities, and the work in performs, there can be no reasonable certainty.   The failure to identify the *cy pres* recipients in the Settlement Agreement is, by itself, fatal to approval of the settlement and the Court may properly reject the settlement on that basis alone.[13]

###### 4.   Proposed Injunctive Relief is Illusory, Includes Conduct that Defendant Has Allegedly Already Performed, and Usurps the Authority of the Court to Determine the Sufficiency of the Settlement

When injunctive relief under a proposed class settlement agreement is so weak as to permit the continued conduct originally complained of, such settlement is inherently unreasonable.   *Acosta*, 240 F.R.D. at 581, *citing Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 907 (7th Cir. 1995) ("Judges are not authorized to disobey the law in issuing an injunction, let alone to issue injunctions that authorize or direct people to violate valid federal statutes.") (citations omitted); *see also Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland,* 478 U.S. 501, 526 [106 S.Ct. 3063, 92 L.Ed.2d 405] (1986) (parties to settlement may not "agree to take action that conflicts with or violates the statute upon which the complaint was based").

To the extent the injunctive relief merely implies that the Defendant will endeavor to not violate federal privacy laws, there is no cognizable benefit conferred to the Class that would tend to make the Settlement Agreement

---

[13] *See also, e.g., Thompson v. Cooke*, CV 96-01791 REB (D. Colo. Jan. 11, 2008), p. 4 (rejecting the proposed settlement and requiring "proof that the purposes and goals of the charitable organizations proposed as recipients of the fund are closely linked to the original purposes of the litigation, the interests of class members, and the interests of those similarly situated.").

reasonable. *Id.* at 582, *citing Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544–45 (S.D. Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit."), *citing Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) (finding little benefit to class members from settlement agreement provisions that obligated defendant "to do what the law generally requires"); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir. 1996) (defendant not the "prevailing party" under a settlement that merely obligated plaintiff to do that which the law required); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 U.S. Dist. LEXIS 3507 (E.D. La. 1995) ("The proposed settlement … merely provides plaintiffs with information to which they were already entitled and confers no additional value in consideration for release of plaintiffs' claims.").

In this case, the injunctive relief described in the Settlement Agreement is utterly illusory. In paragraphs 3.1, 3.2, and 3.3 of the agreement, the so-called relief is described as (1) providing some set of documents to class counsel—which was done in the course of informal meetings during the litigation; (2) an acknowledgement that Defendant has made certain unknown "changes to the Google Buzz user interface that clarify Google Buzz's operation and users' options regarding Google Buzz, including, in particular, changes regarding user information and control over Buzz's privacy settings;" and (3) provision for "wider public education" (i.e., a marketing campaign).

The first two items have already been performed and cannot legitimately be included as part of the settlement consideration. Moreover, the first item, turning over documents, is part of the discovery responsibility of every litigant and would presumably need to be performed regardless of settlement status. The second item, regarding "changes" by Defendant is illusory for two reasons: (1) the conduct to be performed is not specific and there is no way to determine the nexus between the purported relief and the harm to the class; and (2) the agreement

merely "recognizes" (Motion, p. 6:11) that Defendant has made certain unstated changes to its policies and user interface, but does not require Defendant to maintain those changes or to make any other changes to alleviate the harm to consumers now or in the future.

The third item regarding "public education" is more galling.  Not only does the "public education" relief suffer from the same infirmities of vagueness and ambiguity as the others—making it impossible to enforce—there is literally nothing that this item obligates Defendant to do other than "consider" class counsel's "suggestions" and tell class counsel what they did within 90 days. There is not so much as a hint about what the content of this education might be, how it will disseminated, who or how many members of the "public" are included, or how it will provide relief to the Class Members for the disclosures that have already occurred—which is really the harm at the center of this litigation.

The "public education" item goes further than failing to provide actual relief, however. ***The terms of the agreement usurp the authority of the Court to determine the sufficiency of the settlement by stating that Defendant itself will have sole discretion to determine the "design and final content of the public education efforts."*** Settlement Agreement, ¶ 3.3.

The determination about what is and is not sufficient injunctive relief in this case rests in the sound discretion of the Court, based on the law.  The prospect of permitting Defendant to decide the sufficiency of the education programs without any oversight by the Court should be condemned in the strongest terms.  The self-serving nature of this component of the proposed relief is further evidence that this agreement is unfair, fundamentally flawed, and injurious to the Class Members.    The Court should properly find that the relief provided by the Settlement Agreement is virtually meaningless and grossly insufficient to compensate the Class's injuries.  In conjunction with the manifest deficiencies

1  throughout the agreement and the suspicious circumstances leading up to it, there

2  can be little doubt that this proposed settlement is the result of collusion.

3    **C.**  **Class Counsel Failed to Prosecute the Action with Due Diligence**

4      **and Reasonable Prudence**

5     As stated above, the absence of any meaningful prosecution of the case, the

6  unusual *cy pres* scheme, the diminutive settlement amount, the illusory injunctive

7  relief, and the scant few months spent litigating this matter all point towards a

8  disturbing failure by class counsel to protect the rights of the class.

9     The Ninth Circuit in *Molski* instructs that these are all hallmarks of a

10  settlement resulting from class counsel's failings:

11      [W]e are concerned about the possible collusiveness between

12      the named plaintiff, class counsel, and defendants.  The record

13      shows that the named plaintiff and defendants reached an

14      agreement regarding the primary components of the consent

15      decree within four months.  Although this fact does not amount

16      to collusiveness *per se* as argued by Appellants, it indicates that

17      the named plaintiff and ***class counsel "failed to prosecute or***

18      ***defend the action with due diligence and reasonable***

19      ***prudence."*** [Citations.] In addition, this fact must be

20      considered in light of the ultimate terms of the decree, which

21      waived practically all of the class members' claims without

22      compensation and allowed the defendants to escape with little

23      penalty.  Although recognizing that this is a close question, we

24      conclude that the District Court abused its discretion in finding

25      that the named plaintiff and class representative Molski and his

26      counsel "fairly and adequately protect[ed] the interests of the

27      class." Fed.R.Civ.P. 23(a)(4).

28  *Molski*, 818 F.3d at 955–56, *quoting Class Plaintiffs*, 955 F.2d at 1278 (quoting

1   Restatement (Second) of Judgments § 42(1)(2) (1982)) (emphasis added, omission
2   added, alteration in original).

3       The circumstances surrounding this settlement are frightening similar to
4   those in *Molski*. Even if there is insufficient evidence of collusion for the Court to
5   draw that inference, the facts in this case cannot be ignored whether a "close
6   question" or not. Under *Molski*, it is virtually impossible for a fair and adequate
7   representation of the millions of Class Members' interests with only a few months
8   of litigation, no discovery, virtually instantaneous settlement resulting from the
9   first session, a low settlement value, and injunctive relief drafted to hide the ball.
10   These concerns mean that the Court should be even more vigilant in reviewing
11   this pre-certification settlement and, even without the other substantive
12   deficiencies in the settlement, that it may be an abuse of discretion to approve it
13   based on the extrinsic factors alone.

### III.

### CONCLUSION

16       In light of the foregoing, Plaintiff-Objector Zimmerman respectfully
17   requests the Court reject the Settlement Agreement presented by class counsel and
18   Defendant and deny approval of the settlement.

20   Dated: January 10, 2011          JOSHUA R. FURMAN LAW CORP.

By: _____
        Joshua R. Furman
    *Attorney for Plaintiff-Objector,*
    Jon M. Zimmerman

Notice of Intent to Appear; Objections to Settlement

## **PROOF OF SERVICE**

I am employed in the county of Los Angeles, in the State of California.  I am over the age of eighteen (18) and not a party to this action.  My location of employment is Joshua R. Furman Law Corporation, 9663 Santa Monica Boulevard, No. 721, Beverly Hills, California 90210; Telephone: (310) 809-3016; Facsimile: (310) 861-0449.

I am readily familiar with the practice for disseminating correspondence at Joshua R. Furman Law Corporation, including courier service, email, overnight service, UPS or FedEx, facsimile, and U.S. Mail.

On January 10, 2011, I caused the following documents to be hand delivered:

**"NOTICE OF INTENT TO APPEAR AT FINAL SETTLEMENT HEARING; OBJECTIONS TO SETTLEMENT OF PLAINTIFF-OBJECTOR; MEMORANDUM OF POINTS AND AUTHORITIES"**

Said documents were hand delivered to:

*Class counsel:*
Gary Mason, Esq.
MASON LLP
1625 Massachusetts Ave., NW Suite 605
Washington, DC 20036

*Counsel for Defendant, Google, Inc.:*
David J. Burman, Esq.
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

I declare under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.

Executed this 10th day of January 2011 at Los Angeles, California.

_____
Joshua R. Furman

**PROOF OF SERVICE**

I am employed in the county of Los Angeles, in the State of California. I am over the age of eighteen (18) and not a party to this action. My location of employment is Joshua R. Furman Law Corporation, 9663 Santa Monica Boulevard, No. 721, Beverly Hills, California 90210; Telephone: (310) 809-3016; Facsimile: (310) 861-0449.

I am readily familiar with the practice for disseminating correspondence at Joshua R. Furman Law Corporation, including courier service, email, overnight service, UPS or FedEx, facsimile, and U.S. Mail.

On January 10, 2011, I caused the following documents to be hand delivered:

**"NOTICE OF INTENT TO APPEAR AT FINAL SETTLEMENT HEARING; OBJECTIONS TO SETTLEMENT OF PLAINTIFF-OBJECTOR; MEMORANDUM OF POINTS AND AUTHORITIES"**

Said documents were hand delivered to:

| *Class counsel:* | *Counsel for Defendant, Google, Inc.:* |
|---|---|
| Gary Mason, Esq. | David J. Burman, Esq. |
| MASON LLP | PERKINS COIE LLP |
| 1625 Massachusetts Ave., NW Suite 605 | 1201 Third Avenue, Suite 4800 |
| Washington, DC 20036 | Seattle, WA 98101-3099 |

I declare under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.

Executed this 10th day of January 2011 at Los Angeles, California.

Joshua R. Furman