MARINA TRUBITSKY *Pro Hac Vice*
*Counsel for Objector Oleg Aronov*
(marina.trubitsky@lawcontact.com)
11 Broadway, Suite 861
New York, New York 10004
Telephone: (212) 732-7707
Facsimile: (212)732-7707

DAVID HICKS, A.P.L.C. (CA 053750, NY 2051266)
*Local Counsel*
(dhcases@aol.com)
P.O. Box 562
Dunsmuir CA 96025
Telephone: (510) 595-2000
Facsimile: (530) 239-4301

FILED

'11 JAN 10 P 2:56

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

| | |
|---|---|
| **UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION** | Case No. 5:10-CV-00672-JW<br><br>Before: Hon. James Ware<br><br>**OLEG ARONOV'S OBJECTION TO PROPOSED SETTLEMENT, OBJECTION TO ATTORNEY'S FEES REQUEST, NOTICE OF INTENTION TO APPEAR, AND REQUEST TO SPEAK AT THE HEARING**<br><br>Date: January 31, 2011<br>Time: 9:00 am |
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION | |

**FILE BY FAX**

To The Honorable Judge James Ware:

Comes Oleg Aronov ("OBJECTOR"), residing at 62-54 97th Place Apt.9I, Rego Park, New York 11374, telephone no. 1-516-810-9290 and files this Objection to the Proposed Settlement Agreement, Objection to Attorneys' Fees, Notice of Intent to Appear and Request to Speak at the Hearing through his attorneys MARINA TRUBITSKY & ASSOCIATES, PLLC, and would show as follows:

**I. BACKGROUND**

Google Inc. ("Google") is a Delaware Corporation. Its headquarters are located at 1600 Amphitheatre Parkway, Mountain View, CA 94043. Google provides a variety of Internet related services such as its Google Search Engine (http://www.google.com), its Google Chrome Web Browser (http://www.google.com/chrome), its AdSense and AdWords Advertising Program (http://www.google.com/intl/mn/ads), its Gmail Email Service (http://www.gmail.com), and many other services. In the first quarter of 2010, Google reported revenues of $6.77 billion[1].

Since its public launch in April 2004[2], Gmail, Google's email platform, has become one of the leading email services for both business and personal needs of Internet users. Google's Gmail is among the four largest providers of email services on the Internet (other are Microsoft's Hotmail, Yahoo Mail, and AOL Webmail)[3]. The most current data suggests that Gmail has at least 170 million users.[4]

Google launched its Google Buzz program on or about February 9, 2010. This program made private data belonging to Gmail users (personal contact information, place of residence, occupation, contact lists, etc.) publicly available without the users' knowledge or authorization. Further, the Google Buzz program searched and acquired pictures and videos that each Gmail user posted on websites owned by Google or affiliated with Google such as YouTube (http://www.youtube.com) and Picasa (http://picasa.google.com). The Buzz program than automatically sent those posts to the email accounts of the users' frequently emailed contacts without the users' knowledge or authorization.

---

[1] http://investor.google.com/earnings/2010/Q1_google_earnings.html
[2] http://en.wikipedia.org/wiki/History_of_Gmail
[3] http://www.email-marketing-reports.com/metrics/email-statistics.htm
[4] http://news.bbc.co.uk/2/hi/8506148.stm; "Google takes on Facebook and Twitter with network site"; February 9, 2010

OBJECTION
Case No. 10-CV-00672-JW

Arising out of the aforementioned privacy violations, a class action IN RE GOOGLE USER PRIVACY LITIGATION was filed on July 29, 2010 (Case No. 5:10-cv-00672-JW). The plaintiffs in the said class action asserted claims against Google alleging violations of (a) the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*; (b) the Stored Communications Act, 18 U.S.C. §2701 *et seq*, (c) the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq*, and (d) the common law tort of Public Disclosure of Private Facts as recognized by California Business & Professional Code §17200.

On September 3, 2010, the Class Counsel and Google filed a proposed Settlement Agreement which would settle the action on a class wide basis. Said Settlement Agreement was purportedly reached "in order to put to rest all controversy and to avoid the uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved in prosecuting and defending the Action."[5] However, as shall be illustrated below, the Settlement Agreement's true intent and effect is to unfairly benefit Class Counsel, Class Representatives, and Google, at the expense of the harmed Class members who receive no benefits whatsoever under it.

## II. THE OBJECTOR IS A MEMBER OF THE RELEVANT CLASS

Within the above captioned matter, the Class Counsel's Complaint (filed on July 29, 2010) defines the relevant Class as following: "the class of all Gmail users who reside in the United States and to whose accounts Google added the Buzz social networking application"[6].

In addition, the Settlement Agreement in the above captioned matter expands on this definition by stating that the relevant Class comprises of all Gmail users in the United States presented with the opportunity to use Google Buzz through the Notice Date. Excluded from

---
[5] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 1, ¶5
[6] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Complaint, p. 9, ¶40

the Class are: (1) Google, or any entity in which Google has a controlling interest, and its respective legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's staff and immediate family; and (3) any person who, in accordance with the terms of the Settlement Agreement, promptly executes and submits a timely request for exclusion from the Class.[7] As the above captioned matter is a class action brought under FRCP 23(b)(3), Class members are given an option to "opt-out" of the Class and thus retain the right to sue Google on their own.

Here, the OBJECTOR is a Gmail user who at all relevant times resided and continues to reside in the United States. The OBJECTOR's personal information contained in his Gmail account was added to Google Buzz without his authorization and the OBJECTOR has been harmed by these illegal privacy violations. The OBJECTOR has no associations with Google, its legal defense team, or its staff. The OBJECTOR has no associations with the judge or the judge's staff in the above captioned matter. The OBJECTOR has not submitted a request to be excluded from the Class. Therefore, the <u>OBJECTOR is a member of the relevant Class in the above captioned matter and as such has valid standing to bring this Objection to the attention of the Court</u>.

## III. NOTICE OF INTENTION TO APPEAR AND REQUEST TO SPEAK AT THE HEARING

The OBJECTOR and his attorneys intend to appear at the hearing. OBJECTOR and his attorneys request that they be allowed to appear at the final approval hearing to discuss the objections outlined in this document and to otherwise participate in the final approval hearing.

## IV. LEGAL STANDARD FOR DETERMINATION OF SETTLEMENT FAIRNESS

---

[7] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 2, §1.3

Claims of a class may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). "Although [Fed. R. Civ. P.] 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir.1982). Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court "must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton, 327 F.3d at 952* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The factors the Court should consider in deciding whether a settlement is fair, adequate and reasonable include the following: (1) the "strength of plaintiffs' case", (2) the "risk, expense, complexity, and likely duration of further litigation", (3) the "risk of maintaining class action status through the trial", (4) the "amount offered in settlement", (5) the "extent of discovery completed, and the stage of the proceedings", (6) the "experience and views of counsel", and (7) the "reaction of the class members to the proposed settlement". *Molski v. Gleich*, 318 F. 3d 937, 953 (9th Cir. 2003).

The Court must also "reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985). "[T]he

settlement must stand or fall as a whole," as the Court is not "empowered to rewrite the settlement agreed upon by the parties." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

## V. OBJECTION TO THE RELIEF PROVIDED BY THE SETTLEMENT AGREEMENT WITHIN THE ABOVE CAPTIONED MATTER

Section 3 of the Google Buzz Settlement Agreement outlines two primary actions to which Google shall have to commit to in order to settle the above captioned matter on a class wide basis.

First, Section 3.3 of the Google Buzz Settlement Agreement states that "Google agrees to disseminate wider public education about the privacy aspects of Google Buzz. Google agrees that it will consider the suggestions that it has received from Class Counsel and any other suggestions it may receive from Class Counsel on this issue within thirty (30) days after this Settlement Agreement is executed by all Parties. The parties agree that Google will select and design the final content of the public education efforts in its discretion. Google agrees that it will provide a report to Lead Class Counsel within three months after the Final Order and Judgment describing the public education efforts concerning the privacy aspect of Google Buzz that it undertook pursuant to this Settlement Agreement."[8]

Second, Section 3.4 of the Google Buzz Settlement Agreement states that "Google agrees to and shall deposit in an interest-bearing bank account established by Google the total sum of Eight Million Five Hundred Thousand Dollars ($8,500,000.00) as a Common Fund for

---

[8] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 5, §3.3

Class Administrator fees and expenses, cy pres relief, class representative incentive payments, attorneys fees, and costs. The First installment, of Five Hundred Thousand Dollars ($500,000.00) shall be deposited within ten (10) business days of entry of the Preliminary Approval Order. The remainder shall be deposited within thirty (30) Days after entry of the Final Order and Judgment. The interest earned on such deposits shall accrue to the benefit of the Common Fund, and the interest shall be transferred to the cy pres recipients per subsection 3.4(d), below. The Class Action Administrator will maintain control over the Common Fund and shall be responsible for all disbursements. Google shall have no other financial obligation under this Settlement Agreement. In addition, under no circumstances will Google have any liability for taxes or tax expenses under this Settlement Agreement. The cy pres recipients will be existing organizations focused on Internet privacy policy or privacy education."[9]

It is clear that the structure of the aforementioned commitment in Section 3.3 is essentially a sales promotion on Google's part which shall benefit them at the expense of the Class members. Essentially Google is being directed to host a multitude of events and discussions on the topic of privacy which shall further promote the Google brand while the Class members are left entirely uncompensated for the harm Google Buzz's privacy violations have caused. In addition, since the inception of the instant matter, the privacy issues regarding social networks in general and Google Buzz in particular have been greatly covered and discussed by traditional medial outlets, Internet news websites, and a multitude of blogs and podcasts. Thus, Google is essentially committing to restating information (which is already freely available in various formats) to the Class members and to the public at large while marketing its own brand in the process. The Class members will receive absolutely nothing that they do not already have in return for a total and complete surrender of their legal rights.

---

[9] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 5, §3.4

It is also clear that Google's commitment of $8,500,000 to a Common Fund, as dictated by Section 3.4 is wholly inadequate and is completely unresponsive to the interests of the Class in the above captioned matter. The millions of damaged Class members shall get none of the $8,500,000 (a figure which is wholly and completely inadequate due to the amount of Class members) while Class Counsel may obtain more than 30% of this amount for a very negligible effort (as detailed within the following section in full), with the residue going to unnamed third party organizations which have no obvious ties to any of the Class members. Therefore, the Class members will receive absolutely nothing for the damages which they have suffered while Class Counsel and Class Representatives shall enjoy a windfall.

In summary, the Google Buzz Settlement proposes to commit Google (a) to an ambiguous future policy of educating the public regarding Buzz privacy while marketing its own brand, (b) to consider, but not necessarily to implement, some unstated suggestions which it has received from Class Counsel [it is unclear as to why Class Counsel shall be the final word on proposed suggestions as no official poll or a body of privacy experts has been utilized to assess the needed improvements or changes], and (c) to deposit $8,500,000 into a Common Fund which shall be utilized to pay attorney's fees, expenses, and costs, with the residue being distributed to some unstated third party organizations who are purportedly focused on Internet privacy policy or privacy education, all the while the damaged Class Members receive nothing.

Additionally, 18 U.S.C. §2707(c) states the following: "The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violators as a result of the violations, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce

liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court."[10] Therefore, according to 18 U.S.C. §2707(c), each damaged Class member in the above referenced matter is entitled to at least $1,000. Google's liability is so clear in the above captioned matter (Gmail users' privacy has been grossly violated by Google for its own benefit and without Class members' explicit or implicit authorization) that it is unimaginable that Class members would not be entitled to this statutory minimum. Further, as Google's actions were willful and intentional, the Class members here should be entitled to punitive damages. However, under the proposed Google Buzz Settlement Agreement, the seven Class Representatives receive significantly more than $1,000, while the rest of the 170 million Class members receive nothing.

Finally, the Court should consider the proposed Google Buzz Settlement Agreement in light of the seven *Molski* factors stated above. First, the plaintiffs' case is extremely strong because it is a fact that Google violated the privacy of millions of Gmail users through its Buzz program. The data of Gmail users was made public and many of them were damaged through this unauthorized exposure. Second, the risk, expense, complexity, and likely duration of further litigation here are no greater than in any other similar action. Just the opposite, due to Google's clear cut violations, the above captioned matter is more straightforward than most like cases. Third, the risk of maintaining a class action status through trial is very low. Due to the multitude of Class members and the similarity of the harm that they all incurred it is clear that a class action is the most efficient method of resolving this matter. Fourth, the amount offered in settlement in the above captioned matter is wholly and totally inadequate. Not only is the amount offered very meager compared to the amount of Class members, but none of the Class members shall ever see a penny of this money. Fifth, the proceedings are currently still at a

---

[10] 18 U.S.C. §2707(c); http://law.onecle.com/uscode/18/2702.html

relatively early stage and thus the full extent of Google's violations are hereto unknown. Sixth, the experience and views of Class Counsel are clearly reflected within the Settlement Agreement at issue. However, the OBJECTOR proposes that those views are contrary to the benefit of the Class members, as stated in this document. Seventh, while at this early stage it is difficult to fully gage the reaction of all of the Class members to the Settlement at issue, the fact that Google, Class Counsel and Class Representatives all benefit under the Settlement while the actual damaged parties, the Class members, get nothing cannot sit well with the Class.

Thus, the OBJECTOR, as a Class member in the above captioned matter, hereby objects to the proposed Google Buzz Settlement Agreement as fundamentally unfair, unreasonable, and inadequate.

## VI. OBJECTION TO CLASS COUNSEL FEES AND COSTS AND INCENTIVE AWARDS

Section 10.1 of the Google Buzz Settlement Agreement states the following: "Class Counsel may apply to the Court for a determination of their reasonable attorneys' fees and costs. Class Counsel agrees that it will seek up to, but no more than, thirty (30) percent of the Common Fund as an <u>award of attorney's fees</u> and Google will not object to an award limited to such amount."[11]

Additionally, Section 10.2 of the Google Buzz Settlement Agreement states the following: "In recognition of their efforts on behalf of the Class, and subject to Court approval, Lead Class Counsel shall apply to the Court for an award to each Class Representative of up to Two Thousand Five Hundred Dollars ($2,500.00) as appropriate compensation for his or her time and effort serving as Class Representative. Such incentive awards shall be paid out of the

---

[11] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 9, §10.1

Common Fund by the Class Action Administrator within 30 Days after the latest of (1) the Court issuing an order approving such incentive awards and (2) the Settlement Date.

According to the Google Buzz Settlement Agreement, the Common Fund would consist of $8,500,000.00[12]. As stated above, Class Counsel may petition the Court for up to 30% of the Common Fund in attorney's fees[13], which amounts to $2,550,000. Based on the plain reading of the above section[14], it appears that Class Counsel may petition the Court for more than 30% of the Common Fund for their costs and expenses, as the 30% limit seems only to apply to attorney's fees.

Therefore, if the Court approves the Google Buzz Settlement Agreement, the distribution of settlement proceeds shall be as follows: (a) Class Counsel shall obtain $2,550,000 or more in attorney's fees and expenses, (b) each of the seven Class Representatives shall receive $2,700, totaling in $18,900 (b) the Common Fund shall retain the remaining $5,931,100 which is to be distributed amongst the various organizations which are "focused on Internet privacy policy or privacy education."[15], and (c) the Class Members which are comprised of at least 170 million Gmail users[16], who were all damaged by Google Buzz's gross and unauthorized breach of their privacy, shall receive absolutely nothing under the Settlement.

It is clear from the above distribution that the amount of proposed fees in relation to the alleged benefits to the Class renders the Google Buzz Settlement unfair and unreasonable. The

---

[12] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 5, §3.4
[13] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 9, §10.1
[14] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 9, §10.1
[15] IN RE GOOGLE BUZZ USER PRIVACY LITIGATION, Settlement Agreement, p. 5, §3.4
[16] http://news.bbc.co.uk/2/hi/8506148.stm; "Google takes on Facebook and Twitter with network site"; February 9, 2010

amount of proposed attorney's fees, costs and expenses are an integral element of determining whether the settlement is fair, reasonable, and adequate:

> The court's settlement review should include provisions for the payment of Class Counsel. In class actions whose primary objective is to recover money damages, settlements may be negotiated on the basis of a lump sum that covers both class claims and attorney fees. Although there is no bar to such arrangements, the simultaneous negation of class relief and attorney fees creates a potential conflict... The judge can condition approval of the settlement on a separate review of the proposed attorney's compensation.[17]

The fee amounts which are reserved for attorney fees and expenses are excessive here and show that this is exactly the type of settlement that should not be approved as Class Counsel receives a huge windfall for relatively little work while the millions of damaged Class Members receive nothing.

In addition, the proposed incentive awards to the Class Representatives are unreasonably high and create a conflict for their adequate representation of the Class. Incentive awards must not give special treatment to named Plaintiffs; they are intended solely to compensate them for the time and risk they incur in bringing the lawsuit on behalf of the Class. Here, there is no showing that the proposed incentive awards are even close to a reasonable compensation for the time and risk the Class Representatives incurred, especially in light of the fact that the other millions of Class Members shall remain entirely uncompensated for the harm which they incurred.

The Class Counsel, Class Representatives, and the Google share mutually beneficial interests. It is very questionable whether the Google Buzz Settlement Agreement is a product

---

[17] MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.

OBJECTION
Case No. 10-CV-00672-JW

of good faith, arm's length negotiations. Google realizes that it has a huge potential liability as a consequence of its privacy violations to the millions of Gmail users. The Class Representatives and Class Counsel seek what will no doubt to them be a windfall. Yet to Google, Class Counsel's windfall is but a trifle well worth paying in return for assurances that it will become impossible for a more seriously minded litigant to pursue a substantial judgment on behalf of the Class members. The only victims in this potential Settlement are the Class members, including the OBJECTOR, who will be deprived of their potentially substantial legal claims in return for absolutely nothing.

Thus, the OBJECTOR, as a Class member in the above captioned matter, hereby objects to the proposed Google Buzz Settlement Agreement as fundamentally unfair, unreasonable, and inadequate. Further the OBJECTOR reserves the right to file objections to Class Counsel's fee petition at a later date.

**WHEREFORE**, the OBJECTOR prays that the Court deny the proposed settlement as fundamentally unfair, unreasonable, and inadequate. The OBJECTOR further prays that the Court, deny the requested fees to Class Counsel and grant OBJECTOR such other and further relief as to which OBJECTOR may be entitled.

Dated: January 7, 2011

/Marina Trubitsky/
_____
Marina Trubitsky, Esq.
Marina Trubitsky & Associates, PLLC.
*Attorneys for OBJECTOR Oleg Aronov*
11 Broadway, Suite 861
New York, New York 10004