1  Gary E. Mason (*pro hac vice*)
   gmason@masonlawdc.com
2  Donna F. Solen (*pro hac vice*)
   dscolen@masonlawdc.com
3  MASON LLP
   1625 Massachusetts Ave., NW
4  Washington, DC 20036
   Telephone:  (202) 429-2290
5  Facsimile:  (202) 429-2294

6  Michael F. Ram (SBN 104805)
   mram@ramoson.com
7  RAM & OLSON LLP
   555 Montgomery Street, Suite 820
8  San Francisco, California 94111
   Telephone:  (415) 433-4949
9  Facsimile:  (415) 433-7311

10 William B. Rubenstein (SBN 235312)
   rubenstein@law.harvard.edu
11 1545 Massachusetts Avenue
   Cambridge, Massachusetts 02138
12 Telephone:  (617) 496-7320
   Facsimile:  (617) 496-4865

13
   *Attorneys for Plaintiffs and the Proposed Class*
14

15
                    UNITED STATES DISTRICT COURT
16                  NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
17

18 | IN RE GOOGLE BUZZ USER | Case No. 5:10-CV-00672-JW |

19 | PRIVACY LITIGATION | **REPLY MEMORANDUM IN SUPPORT** |

20 | | **OF [1] MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING** |

21 | This Pleading Relates To: | **SETTLEMENT CLASS, AND APPOINTING CLASS** |

22 | | **REPRESENTATIVES AND CLASS COUNSEL AND OF [2] CLASS** |

23 | ALL CASES | **COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND** |

24 | | **REIMBURSEMENT OF EXPENSES** |

25
   Date:    February 7, 2011
26 Time:    9:00 a.m.
   Place:   Courtroom 8, 4th Floor
27          **[Hon. James Ware]**

28

Case No. 10-00672-JW – REPLY MEMORANDUM IN SUPPORT OF [1] MOTION FOR ORDER GRANTING
FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND APPOINTING
CLASS REPRESENTATIVES AND CLASS COUNSEL AND OF [2] CLASS COUNSEL'S APPLICATION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1

**TABLE OF CONTENTS**

2  INTRODUCTION ..................................................................................................................1

3  ARGUMENT .......................................................................................................................2

4  OBJECTIONS TO THE SETTLEMENT AND FEE REQUEST LACK MERIT ........................2

5  I.      RELIEF FOR THE CLASS IS SIGNIFICANT ..................................................................3

6          A.      There Is No Support For The Objection That the Settlement Relief Is
                   Incommensurate With The Strengths Of The Claims ...............................................3

7
           B.      There Is No Support For The Objection That Some Class Members May Have
8                  Out-Of-Pocket Damage Claims.................................................................................6

9          C.      There Is No Merit To The Objection That the Non-Monetary Relief Is
                   Meaningless...............................................................................................................7
10
           D.      There Is No Merit To The Objection That The Settlement Provides No Benefit ....8
11
   II.     THE *CY PRES* APPROACH IS SUBSTANTIVELY AND PROCEDURALLY
12         APPROPRIATE ..........................................................................................................9

13         A.      *Cy Pres* Is An Appropriate Substantive Remedy .....................................................9

14         B.      The Process for *Cy Pres* Distribution Is Appropriate.............................................11

15  III.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE ............................................13

16  CONCLUSION ...................................................................................................................13

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Acosta v. Trans Union, LLC*
243 F.R.D. 377 (C.D. Cal. 2007) ...............................................................................4

*Bellows v. NCO Fin. Sys., Inc.*
2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ..........................................................12

*Boyle v. Giral*
820 A.2d 561 (D.C. 2003) .......................................................................................10

*Cervantez v. Celestica Corp.*
2010 WL 2712267 (C.D. Cal. July 6, 2010) ...........................................................12

*City of Detroit v. Grinnell Corp.*
495 F.2d 448 (2d Cir. 1974) ....................................................................................14

*Deposit Guar. Nat'l Bank v. Roper*
445 U.S. 326 (1980) ..................................................................................................9

*Dukes v. Wal-Mart Stores, Inc.*
603 F.3d 571 (9th Cir. 2010) ...................................................................................12

*Geier v. Alexander*
801 F.2d 799 (6th Cir. 1986) ...................................................................................14

*Goldberger v. Integrated Res*., Inc.
209 F3d. 43 (2d Cir. 2000) .......................................................................................14

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ...................................................................................2

*Hoffer v. Landmark Chevrolet Ltd.*
245 F.R.D. 588 (S.D. Tex. 2007) .............................................................................11

*In re Compact Disc Minimum Adverterised Price Antitrust Litig.*
370 F.Supp.2d 320 (D. Me. 2005)............................................................................12

*In re Intuit Privacy Litig.*
138 F.Supp.2d 1272 (C.D.Cal. 2001).........................................................................5

*Molski v. Gleich*
318 F.3d 937 (9th Cir. 2003).....................................................................................10

*Murray v. GMAC Mortg. Corp.*
434 F.3d 948 (7th Cir. 2006).......................................................................................4

*New York ex rel. Koppell v. Keds Corp.*
1994 WL 97201 (S.D.N.Y. March 21, 1994)............................................................10

*Perry v. FleetBoston Fin. Corp.*
229 F.R.D. 105 (E. D. Pa. 2005) ..............................................................................10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pietrylo v. Hillstone Rest. Grp.*
  2009 WL 3128420 (D.N.J. Sept. 25, 2009)..................................................................................4

*Simer v. Rios*
  661 F.2d 655 (7th Cir.1981)......................................................................................................11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990).................................................................................10, 11, 12, 13

*U.S. v. State of Or.*
  913 F.2d 576 (9th Cir. 1990)......................................................................................................2

*Vacco v. Reebok International Ltd.*
  96 F.3d 44 (2d Cir. 1996)..........................................................................................................11

*Wyatt Tech. Corp. v. Smithson*
  2006 WL 5668246 (C.D.Cal. Aug. 14, 2006) ...........................................................................4

**Rules**

Fed. R. Civ. P. 23(e)(2) ...............................................................................................................2

Case No. 10-00672-JW – REPLY MEMORANDUM IN SUPPORT OF [1] MOTION FOR ORDER
GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND
APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL AND OF [2] CLASS COUNSEL'S
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

iii

1

**INTRODUCTION**

2      As a result of this Settlement, millions of dollars ($8.5 million less expenses and fees)

3   will be devoted to advancing Internet privacy, one of the largest funds ever created for this

4   purpose.  The sheer size of this class – at least 37 million people – makes distribution of the fund

5   administratively infeasible.  Yet, the *cy pres* award has the same deterrent effect as distribution to

6   the class and the privacy work it funds will further the interests underlying the Class's claims.

7   The Class is also benefitted by privacy changes to Buzz that followed the initiation of this

8   litigation and by Google's commitment to further educate the public about Buzz's privacy

9   features.

10      The quantity and quality of the objections received confirm the fairness, adequacy, and

11   reasonableness of the proposed settlement.  As to the quantity of objectors:

12   • No public officials object to this Settlement.  The defendant served the Attorneys
     General of each of the 50 states and the Attorney General of the United States
13   with details of the Settlement.  Although state officials object to bad settlements,
     none has registered a single concern here.  Furthermore, shortly after
14   commencement of this lawsuit, a leading Internet privacy organization filed a
     complaint with the Federal Trade Commission raising the same issues presented
15   here.[1]  While the federal government has jurisdiction over that complaint, it has
     not objected to this Settlement.
16

17   • No independent public interest organizations object to this Settlement, although
     these organizations do object to problematic settlements.[2]
18

19   • About one in a million members of the Class object to the Settlement.[3]

20

21      [1] *See EPIC Urges Federal Trade Commission to Investigate Google Buzz*, available at
     http://epic.org/2010/02/epic-urges-federal-trade-commi.html.

22
     [2] For example, the consumer advocacy group Public Citizen, representing an employee of
23   the Electronic Privacy Information Center (EPIC), filed an objection to the settlement of a
     privacy case against Facebook, *Lane v. Facebook, Inc.*, No. 08-3845 (N.D. Cal. filed Aug. 12,
24   2008), and is currently pursuing that objection on appeal in the Ninth Circuit.

25      [3] Notice was sent to over 37 million Gmail users, *see* Notice of Motion and Memorandum
     in Support of Motion for Order Granting Final Approval of Class Settlement, Certifying
26   Settlement Class, and Appointing Class Representatives and Class Counsel at 4 n.1 (Dec. 20,
     2010) (Dkt. No. 61) ("FAB"); 47 filed objections.  *See* Declaration of Gary E. Mason in Support
27   of Reply Memorandum in Support of Motion for Order Granting Final Approval of Class
     Settlement, Certifying Settlement Class and Appointing Class Representatives and Class Counsel
28   and of Class Counsel's Application for Attorneys' Fees and Reimbursement of Expenses
     ("Mason Reply Dec.") (filed concurrently with this brief on February 2, 2011).  For the
     convenience of the Court, an index of all the objections is attached hereto as Exhibit A."

1      As to the quality of the objections:

2      - No objector states that he or she had suffered any harm – much less any out-of-
pocket damage – from the launch of Buzz.

3

4      - No objector disagrees that the fund created by this $8.5 million Settlement will be
one of the largest ever dedicated to pursuing Internet privacy concerns.

5

6      - No objector argues that $8.5 million could be administratively distributed to over
37 million class members.

7

8      - No objector identifies an application of the *cy pres* funds that is more closely
related to the interests of the Class than the distribution set forth in the Settlement.

9      In short, this Settlement has not engendered any public or private institutional objection,

10     and the few routine objections it has received do not detract from the conclusion that the

11     proposed Settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).

12                                            **ARGUMENT**

13     **OBJECTIONS TO THE SETTLEMENT AND FEE REQUEST LACK MERIT**

14     A settlement must be fair, adequate and reasonable when compared to the "risk, expense,

15     complexity, and likely duration of further litigation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

16     1026 (9th Cir. 1998).  The question to be addressed, the Ninth Circuit stated:

17

18     is not whether the final product could be prettier, smarter or snazzier, but whether
it is fair, adequate and free from collusion.  In this regard, the fact that the
overwhelming majority of the class willingly approved the offer and stayed in the

19     class presents at least some objective positive commentary as to its fairness.

20     *Id*. at 1027.

21     Objectors bear the burden of proving any assertions they make challenging the

22     reasonableness of settlement.  *See, e.g., U.S. v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990)

23     ("[W]e have usually imposed the burden on the party objecting to a class action settlement").

24     The *Manual for Complex Litigation* cautions that:

25     An objection, even of little merit, can be costly and significantly delay
implementation of a class settlement.  Even a weak objection may have more

26     influence than its merits justify in light of the inherent difficulties that surround
review and approval of a class settlement.  Objections may be motivated by self-

27     interest rather than a desire to win significant improvements in the class
settlement.

28

1    FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.643 (2004).

2        The objections that have been received fall into three categories – those challenging the

3    value of the relief obtained; those challenging the *cy pres* approach to distributing that relief; and

4    those objecting to Counsel's fee request.  None has merit.

5    **I.      RELIEF FOR THE CLASS IS SIGNIFICANT**

6        **A.     There Is No Support For The Objection That the Settlement Relief Is
               Incommensurate With The Strengths Of The Claims**

7

8        Several objectors assert that the value of the Class's claims is greater than the relief

9    secured by the Settlement.  This is an easy allegation to make but a far harder one to prove.  The

10   objectors do not even attempt the latter task:  no objector presents any analysis of the strengths

11   and weaknesses of the Class's claims.  These objectors simply make conclusory statements about

12   the value of the claims without analyzing the applicable law and applying it to the facts of this

13   case (or even to their own circumstances).[4]

14       By contrast, in the Final Approval Brief, while noting that plaintiffs' claims were based

15   primarily on a novel theory of liability under the Stored Communications Act ("SCA"), Class

16   Counsel identified a series of factual and legal hurdles that they would have faced, including:

17       1.    demonstrating that the information divulged by Buzz was "content" rather than
               "record" information;

18

19       2.    proving users did not consent to the release of their information when they
               accepted Google's invitation to "check out" Google Buzz and then subsequently
               clicked through various screens presented by Buzz;

20

21       3.    proving that plaintiffs' claims were typical despite variations in users' experiences
               and changes in the way Buzz functioned over time;

22       4.    overcoming case law suggesting that statutory damages are unavailable in the
               absence of at least some out-of-pocket harm; and

23

24       5.    achieving certification despite statutory damage claims that, when multiplied by

25   _____

26       [4] *See, e.g.,* Aronov Obj. at 7-9 (asserting that "Google's liability is so clear" that it is
     "unimaginable that Class members would not be entitled to this statutory minimum"); Cope Obj.
27   at 3-5 (asserting that plaintiffs' claims are worth the maximum allowable statutory damages for
     every Gmail user in the United States); Zimmerman Obj. at 3 ("The wrongs have been
28   definitively, provably committed."); Flores Obj. at 4; Gachot Obj. at 3; Clifton & Sibley Obj. at
     2-3.

1      the number of class members, could have resulted in massive liability.[5]

2   The objectors neither acknowledge nor respond to these arguments.[6]  Their bare allegations that

3   the relief is insufficient cannot carry their burden of demonstrating why that is.

4          Not only are objectors' contentions conclusory, the conclusion they draw is unsupported.

5   Objectors' core contention is that since the SCA contains a $1,000 statutory damage provision,

6   each class member's claim is "worth" $1,000 and the Class's claim, is therefore $40 billion.[7]  It is

7   true that the SCA contains a $1,000 statutory damage provision to enable individuals to sue for

8   intangible privacy violations, *see* FAB at 14; and the provision has enabled individual suits for

9   money damages in "one-off" situations.[8]  Here, however, Rule 23 makes litigation possible and it

10  is far less clear that Congress intended to legislate that all 37 million claims are "worth" $1,000

11

12  _____

13         [5] *See* FAB at 15-16.

14         [6] Objector Zimmerman not only ignores this presentation, he misrepresents the record in
    stating that Counsel "cites no specific challenges or ambiguities in the law that would pose
    difficulty," Zimmerman Obj. at 11.  Objectors Clifton and Sibley also do not discuss the facts
15  and rely entirely on one passage from one Seventh Circuit case.  *See* Clifton & Sibley Obj. at 2-3
    (*quoting Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).  *Murray* is
16  inapposite: the case is an appeal from the denial of class certification.  The Seventh Circuit
    vacated the denial of certification and remanded.  The passage of Judge Easterbrook's decision
17  utilized by the objectors is dicta within the certification appeal decision and inapplicable here.

18         [7] *See, e.g.*, Zimmerman Obj. at 3; Cope Obj. at 4; Gachot Obj. at 4; Marek Obj. at 6.
    Objector Zimmerman's argument about the value of this Class's claims relies primarily on
19  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007).   In that case, the district court
    refused to certify a settlement class because conflicts among the class members rendered
20  representation inadequate, *id.* at 386; notwithstanding the failure of the class to secure
    certification, the court proceeded to discuss details of a proposed settlement and to reject it on
21  numerous grounds, including the discrepancy between the settlement's cash value and the
    potential value of the class's claim under the Federal Credit Reporting Act.  That discussion –
22  effectively dicta – sheds little light on the value of this Class's claims arising in a completely
    different context and under a completely different statute.

23         [8] *See Pietrylo v. Hillstone Rest. Grp.*, No. Civ-06-5754 (FSH), 2009 WL 3128420 (D.N.J.
24  Sept. 25, 2009) (awarding, by jury, $17,015 total compensatory and punitive SCA damages
    where manager coerced employees into sharing log-in information for employee chat group,
25  accessed the computer to view confidential information, then fired two persons who had posted
    on the chat group); *Wyatt Tech. Corp. v. Smithson*, No. CV-05-1309 DT (RZx), 2006 WL
26  5668246 (C.D.Cal. Aug. 14, 2006) (awarding $100,000 in punitive damages and attorney's fees
    under SCA where company that had purchased a computer in a sale of assets of a bankrupt
27  corporation used password on computer to access email account of an employee of a competing
    company and spy on emails sent to and from this account), *aff'd in part, rev'd in part*, 345
28  Fed.Appx. 236 (9th Cir. 2009) (remanding on grounds punitive damages unwarranted absent
    finding of compensatory damages).

1    each in a class action lawsuit.  There is not a single reported case certifying a litigation class

2    under the SCA and not a single reported class action judgment.  Class Counsel are aware of only

3    one other class action settlement under the SCA with a monetary component (other than the

4    Facebook settlement, *see infra* note 9), and that settlement resulted in a much smaller award.  In

5    that case, the class survived a motion to dismiss their SCA claims, *In re Intuit Privacy Litig.*, 138

6    F.Supp.2d 1272 (C.D.Cal. 2001), and settled for changes in the challenged program and a

7    $50,000 *cy pres* payment.    *See* Order Preliminarily Approving Settlement and Providing for

8    Notice, Ex. A-1 at 12-14, *In re Intuit Privacy Litig.*, 5:00-c-v-00123 (C. D. Cal.) (filed Jan. 6,

9    2003) (Dkt. No. 43) (attached hereto as Exhibit B).  The *Intuit* notice states: "Due to the inability

10   to identify individual class members or verify individual claims for damage, Intuit agrees to

11   contribute $50,000 to a privacy advocacy group or university-based policy entity that is mutually

12   agreeable to the Settling Parties."  *Id.* at 13.  The *Intuit* settlement underscores the value of this

13   case's *cy pres* fund.  Objectors identify no SCA cases awarding or settling for significantly

14   greater damages, much less anything even approaching $1,000/class member.[9]

15        Without any real, substantive proof that the claims are worth more than Class Counsel

16   secured for them, some objectors fall back on a procedural argument: they allege that Class

17   Counsel conducted no discovery and hence could not know the value of the Class's claims.[10]

18

19        [9] Objector Zimmerman applauds the Facebook settlement because it secured a $9.5
20   million gross settlement for a class of 3.5 million persons, Zimmerman Obj. at 13, but
     Zimmerman fails to acknowledge the factual and legal distinctions that make the Facebook case
21   inapposite.  That case involved Facebook's Beacon program, a function that took information
     about users' purchases at third-party websites (such as Blockbuster or Zappos) and published that
22   information on the user's Facebook page.  The case is distinguishable for at least four reasons.
     *First*, the information transmitted was clearly "content" and not, as Google argues here, possibly
23   "record" information that falls outside the SCA's protections.  *Second*, Facebook did not strongly
     argue user consent, as it appeared there was little; its primary defense to the SCA claims was that
24   the consent of the third-party vendors (Blockbuster and Zappos) was sufficient to justify
     publication of purchase information under the SCA.  *Third*, even if the third-party consent
25   defense weakened the Facebook class's SCA claims, the class had the benefit of claims under the
     Video Privacy Protection Act, 18 U.S.C. §2710 (2002) ("VPPA"), for which there is no third-
26   party consent defense.  And *fourth*, the VPPA provides for statutory damages of $2,500 (not
     $1,000) per violation.  In sum, the Facebook case concerned the release of substantive content,
27   not approved by the user, in violation of a distinct statute that affords fewer defenses and greater
     statutory damages.

28        [10] *See, e.g.,* Nicholson, Murphy, Connolly Obj. at 3; Zimmerman Obj., *passim.*   The
     Zimmerman objection is strewn with unsupported conclusory statements.  *See, e.g.,* Zimmerman

1   These objections are conclusory and ignore Class Counsel's evidence in the Final Approval Brief

2   of the investigations they undertook with regard to the facts and legal claims.  *See, e.g.*, FAB at

3   3-5; 18-19.  Class Counsel were well versed in the operations of Buzz and the legal claims at

4   issue in conducting settlement negotiations.  Moreover, Class Counsel explained that:

5          this is not a case in which there were complex factual disputes requiring
           significant formal inquiry and employment of expert witnesses – as would, for
6          example, a complex antitrust matter – nor one where extensive formal discovery
           would have uncovered many additional relevant facts.  The facts of the case
7          turned on the way the Buzz program worked, and most of the important
           information on this topic was available through basic Internet research and direct
8          experimentation with the Buzz program.

9   *Id.*  No objector responded to this statement in any way.  Nor did any objector acknowledge Class

10  Counsel's statement that the ultimate, 14-hour, mediation was an arms-length negotiation before

11  retired Federal Judge Fern Smith, a mediator unlikely to tolerate negotiation by unprepared

12  counsel.  *See* FAB at 4, 18.  In light of Class Counsel's presentations, objectors' conclusory

13  allegations that Class Counsel knew and did nothing ring hollow:  they point to no document or

14  record that remains outstanding, no person who should have been deposed, no interrogatory

15  question that should have been posed.  They demonstrate no knowledge of the facts of the case or

16  of the applicable legal precedents.

17         **B.       There Is No Support For The Objection That Some Class Members May
                      Have Out-Of-Pocket Damage Claims**
18

19         Several objectors argue that some class members may have out-of-pocket damages.

20  (Flores Obj. at 4-6; Gachot Obj. at 3-4; Marek Obj. at 4.)  This is an easy assertion to make, and

21  it ought to be an easy one to prove.  But none of the objectors identifies a single class member

22  _____

23  at 1 ("there has been, by class counsel's admission, no discovery whatsoever;"); *id.* at 4 ("Class
    counsel knows nothing of the evidence in this case, or how likely success may be, because there
24  has been no discovery"); *id.* at 11 ("the record here readily demonstrates that no discovery has
    been performed"); *id.* at 12 ("Without any information about the basis of Defendant's defenses . .
25  ."). It also misrepresents the record in the case with statements such as, "So deficient is class
    counsel's knowledge about the case that it cannot offer the haziest estimate of the Class
26  membership." *Id.* at 4.  The estimated class size is clearly described and supported in the Final
    Approval Brief. FAB at 4 & n.1.  Finally, Zimmerman's counsel also fabricates facts, stating, for
27  example, that Class Counsel "enjoy[ed]" a "junket to the Google campus where they were
    entertained and glad-handed by one of the largest companies in the world," Zimmerman Obj. at
28  2-3. Class counsel's meetings with Google occurred only at the offices of defense counsel and at
    JAMS.

1   who suffered out-of-pocket damages from the release of Buzz.  Indeed, not one of the objectors

2   has shown any specific individual harm due to the operation of Buzz.  Eight objectors are

3   represented by attorneys, but not one of those lawyers presented a client's declaration articulating

4   any out-of-pocket harm, or that any of their private information was revealed by the operation of

5   Buzz.  Objectors do not even posit a plausible scenario under which such damages could exist.

6   Class Counsel have reviewed thousands of user comments regarding Buzz, including every

7   privacy-related user complaint Google received; distributed notice to more than 37 million class

8   members; and received comments, requests for exclusion, and objections in response, and still

9   not a single class member has come forward to allege out-of-pocket harm.

10   **C.    There Is No Merit To The Objection That the Non-Monetary Relief Is
        Meaningless**

11

12   The Settlement contains two key remedies beyond the *cy pres* fund: changes to Buzz and

13   the public education campaign.  Some objectors argue that the changes provide no relief and

14   occurred prior to the filing of this suit (Jackson Obj. at 14; Rudgazer Obj. at 7-11), while other

15   objectors argue that the public education program is illusory. (Aronov Obj. at 7; Gachot Obj. at 4;

16   Jackson Obj. at 15-16; Marek Obj. at 3; Rudgayzer Obj. at 13-15; Zimmerman Obj. at 18-20).

17   Both sets of objections miss the mark.

18   *The Changes Enhance Buzz Privacy.*  Because of changes Google has made, many of the

19   features of Buzz that gave rise to plaintiffs' complaint are no longer present in the program or

20   have been modified to alleviate privacy concerns.  Many of the relevant changes occurred *after*

21   this lawsuit commenced on February 17, 2010.  Throughout the week of February 13, Google

22   implemented changes that: (1) moved from an "auto-follow" model to an "auto-suggest" model;

23   (2) changed to an opt-in system when connecting to publicly shared data on other Google

24   affiliated websites; and (3) added a "Buzz tab" to Gmail settings through which the user could

25   more easily control his privacy settings.  Most importantly, on April 5, 2010, Google presented a

26   "confirmation page" to Buzz users, asking the user to confirm the privacy settings on her Buzz

27   account.  *See* FAB at 3 (detailing Google's modifications to Buzz).  Buzz is a more privacy-

     sensitive program than it was before this lawsuit was filed.

28

1    *The Public Education Program Is Valuable.*  Google has contracted to "disseminate wider

2    public education about the privacy aspects of Buzz."  Settlement Agreement, §3.3 ("SA").  Public

3    education is an important component of the Settlement's relief because it will:  (1) enhance user

4    understanding of the program; (2) alleviate many user concerns that their data was divulged or

5    used in ways that it was not; and (3) enhance user knowledge regarding the methods available to

6    safeguard the privacy of their information.  Google cannot, as a few objectors maintain, simply

7    issue hype for the Buzz program and call it public education.  *E.g.,* Rudgayzer Obj. at 14.  Within

8    three months after the entry of final judgment, Google must report to Class Counsel describing its

9    public education efforts.  SA §3.3.  This is an *accountability* mechanism.[11]  If Class Counsel

10   conclude that Google has not lived up to is contractual obligations, they will have the information

11   necessary to pursue that conclusion with Google, to escalate it according to the Settlement's

12   dispute resolution mechanism, *id,* §13.10 (directing disputes to JAMS Mediator Hon. Fern

13   Smith), and ultimately, of course, to bring the question back before this Court if necessary.  *See*

14   *id.*

15          **D.**    **There Is No Merit To The Objection That The Settlement Provides No**
              **Benefit**
16
              A number of objectors decry the Settlement on the grounds that it provides nothing of
17
     benefit to the Class. (*See, e.g.,* Clifton & Sibley Obj. at 8; Cope Obj. at 5; Goldfoot Obj. at 1;
18
     Jackson Obj. at 8, 19-20; Mackie-Mason Obj. at 1; Nicholson, Murphy, Connolly Obj. at 3-4;
19
     Zimmerman at 11, 12.)  In fact, the Class benefits both from the privacy-improved version of
20
     Buzz now in existence and from the further public education about Buzz privacy.   Most
21
     significantly, the Class will also benefit from the work paid for by the $8.5 million fund.  The "no
22
     benefit" objection errs in measuring a class action settlement solely in terms of individual
23
     compensation.  Even in those terms, each of the items just noted will compensate the class.
24

25

26          [11] Objector Jackson is therefore simply wrong in stating that Class Counsel has "no
27   recourse if the Public Education Relief or Suggestion Relief described in the Report is
     unsatisfactory,"  Jackson Obj. at 16, as Objector Walsh is wrong in asserting that this is "not an
28   enforceable undertaking,"  Walsh Obj. at 1, and Objector Zimmerman errs in stating that the
     provision is "impossible to enforce."  Zimmerman Obj. at 20.

1    Settlements of this type also provide a broad deterrent effect.  The primary function of the

2  small claims class action is deterrence, not compensation. *See generally*, RICHARD POSNER,

3  ECONOMIC ANALYSIS OF THE LAW 349-50 (1972) (stating: "the most important point, from an

4  economic perspective, is that the violator be confronted with the costs of his violation – this

5  achieves the allocative purpose of the suit – not that he pays them to his victims.").  The statutes

6  underlying the plaintiffs' claims encourage litigation for its deterrent effect.  *See* FAB at 14.

7  Finally, class counsel are referred to as "private attorneys general" because they perform the

8  public function of enforcing legal norms and deterring bad behavior where the government is

9  unable to do so.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("The

10  aggregation of individual claims in the context of a classwide suit is an evolutionary response to

11  the existence of injuries unremedied by the regulatory action of government.").

12    The Class will receive through this Settlement just the sort of relief appropriate in a small

13  claims situation – programmatic changes, public education, and a significant fund for further

14  work on privacy – precisely the sorts of mechanisms that will deter future privacy violations.

15  Objectors have not met their burden of demonstrating that this relief is anything less than fair,

16  adequate, and reasonable.  Not one even attempts to apply the specific legal claims in the case to

17  the specific facts of the case.  Absent such a recitation, there is nothing in the record to support

18  the allegation that the Class's relief is inadequate.

19  **II.    THE *CY PRES* APPROACH IS SUBSTANTIVELY AND PROCEDURALLY APPROPRIATE**

20

21    **A.    *Cy Pres* Is An Appropriate Substantive Remedy**

    In the presence of a class estimated to consist of more than 37 million people, where not

22  one class member appears to have out-of-pocket damages, an $8.5 million settlement fund is

23  distributed *cy pres* not for nefarious reasons but *because that is the only way to do it.*  Objectors

24  who criticize the *cy pres* approach here criticize a phantom and simply ignore the fact that this

25  Settlement involves a class of more than 37 million persons.  None of the objectors acknowledges

26  the many cases Class Counsel cited in the Final Approval Brief that approve *cy pres* awards when

27

28

1   damages are small compared to the class size.[12]   The cases the objectors do rely on are not only

2   distinguishable – see below – but in fact each recognizes that *cy pres* distribution is appropriate

3   and necessary where, as here, the damages per class member are too small to make direct

4   distribution practical.   *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) ("[f]ederal courts

5   have frequently approved [cy pres awards] in the settlement of class actions where . . .distribution

6   of damages [would be] costly") (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904

7   F.2d 1301, 1305 (9th Cir. 1990)).   These cases also recognize that the use of *cy pres* is

8   particularly appropriate when the claims rest on statutory damage provisions that serve deterrent

9   and enforcement purposes.   *See Six (6) Mexican Workers*, 904 F.2d at 1306.

10          The primary authority objectors rely on – the Ninth Circuit's decision in *Molski,* 318 F.3d

11   937 – is not on point.   In *Molski*, counsel negotiated a non-opt-out (b)(2) settlement that afforded

12   injunctive relief and a $195,000 *cy pres* award, but no individual money damages, to a class of

13   disabled persons who plausibly suffered substantial personal damages.   The Ninth Circuit held

14   both that "the District Court abused its discretion by certifying a non-opt-out class because

15   substantial damages were released," *id.* at 952, and that a *cy pres* approach was inappropriate

16   given that "there is no evidence that . . . distribution of damages would be costly."   *Id.* at 955.

17   Neither problem is present here.   *First,* this case is certified as an opt-out class action (just as

18   *Molski* recommends, *id.* at 951 n.16), so Class members did not have to sacrifice individual

19   damages (although few, if any, suffered out-of-pocket damages unlike the class in *Molski*).

20   *Second,* distribution of $8.5 million to more than 37 million class members is clearly "costly,"

21

22

23          [12] *See* FAB at 12-13, 23.  *See also Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118
      (E. D. Pa. 2005) (approving settlement of a Fair Credit Reporting Act class action in which the
24   only monetary relief was a *cy pres* payment to credit service organizations because "the dearth of
      money damages available for individual class members leads to potential distribution problems");
25   *New York ex rel. Koppell v. Keds Corp.*, No. 93-CIV-6708 (CSH), 1994 WL 97201, at *3
      (S.D.N.Y. March 21, 1994) (approving settlement of antitrust claims where only monetary relief
26   was a $7.2 million *cy pres* distribution to charities, stating, "The method of distribution of the
      settlement funds is pragmatic and sensible in the circumstances [where] . . . the amount of
27   damages per consumer is small."); *Boyle v. Giral*, 820 A.2d 561, 567 (D.C. 2003) (rejecting
      objectors' appeal of *cy pres* settlement and stating that *cy pres* is used "increasingly where direct
28   distribution of settlement funds to individual class members is impractical; and where important
      consumer goals, such as disgorgement . . . and deterrence . . . can be achieved").

1  indeed, infeasible.

2      Many cases support *cy pres* in these circumstances, *see supra* note 12, and no cases the

3  objectors cite reject *cy pres* in these circumstances – all concern other issues and other types of

4  settlements.[13]   Objectors' pursuit of this unavailing argument is perhaps best explained by the

5  Second Circuit in *N.Y. by Vacco v. Reebok International Ltd.*, 96 F.3d 44 (2d Cir. 1996).   There,

6  the appellate court affirmed settlement of an antitrust action in which the sole monetary relief

7  consisted of an $8 million *cy pres* payment to state governments and non-profit organizations,

8  noting that individual recovery "would be less than four dollars" and therefore "distribution

9  would be consumed in the costs of its own administration."  *Id.* at 49 (quoting *N.Y. by Vacco v.*

10  *Reebok International Ltd.,* 903 F. Supp. 532 (S.D.N.Y. 1995)).   The Second Circuit characterized

11  the objectors' appeal as "almost frivolous" given "the unlikelihood of there being any individual

12  net recovery," *id.,* and concluded that the appeal must have been motivated solely by their

13  counsel's quest for fees.  *Id.*

14      **B.     The Process for *Cy Pres* Distribution Is Appropriate**

15      A few objectors argue that the specific *cy pres* recipients had to have been identified in

16  the Settlement Agreement (Cope Obj., at 5-7; Gachot Obj. at 4; Goldfoot Obj. at 2; Jackson Obj.

17  at 9-13; Marek Obj. at 3) and/or that the defendant should have no role in the selection of *cy pres*

18  recipients (Goldfoot Obj. at 2; Jackson Obj. at 12).   Neither argument is supported by the key

19  Ninth Circuit precedent upon which they rely, *Six (6) Mexican Workers v. Arizona Citrus*

20  *Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990),[14] nor by any other authority.

21

22      [13] The Zimmerman Objection (at 14-16), for example, relies primarily on *Hoffer v.*
*Landmark Chevrolet Ltd.*, 245 F.R.D. 588 (S.D. Tex. 2007).   Judge Rosenthal's decision in
23  *Hoffer* granted summary judgment to the defendant and hence she concedes that her discussion of
class certification (and *cy pres*) is therefore "moot."  *Id.* at 600.   Moreover, the problem the class
24  proponents in *Hoffer* aimed to solve via *cy pres* – unidentifiable plaintiffs, *id.* at 603 – is not the
problem present here (too many plaintiffs).   Finally, Judge Rosenthal's analysis in *Hoffer* relied
25  on a a 30-year old analytical framework from a Seventh Circuit case, *Simer v. Rios*,  661 F.2d
655, 676 (7th Cir.1981), though Judge Rosenthal herself conceded that "few cases cite this
26  analysis."  *Hoffer*, 245 F.R.D. at 604.   Thus, to attack the *cy pres* approach here, Zimmerman
relies on a moot certification decision, about a different problem, from a different circuit,
27  utilizing an old framework rarely used by any court.

28      [14] The Ninth Circuit recently overruled other aspects of *Six (6) Mexican Workers* in a
decision now being reviewed by the Supreme Court.  *See Dukes v. Wal-Mart Stores, Inc.*, 603

1    In *Six Mexican Workers*, which involved illegal employment practices suffered by

2  undocumented Mexican workers, the district court, following a trial, ordered that unclaimed

3  funds be distributed via a *cy pres* award to "the Inter-American Fund ['IAF'] for indirect

4  distribution in Mexico."   *Id.* at 1304.   The Ninth Circuit held that the IAF was not "an

5  organization with a substantial record of service nor is it limited in its choice of projects," *id.* at

6  1308, and hence it did not "adequately target the plaintiff class."   *Id.* at 1309.   The Settlement

7  Agreement in this case fully complies with *Six Mexican Workers*:  it explicitly states that the *cy*

8  *pres* monies will go to existing organizations, it specifically identifies the purpose for which the

9  money will be used, and that purpose (Internet privacy) is directly in line with the nature of the

10  Class's claims. SA §3.4.   Moreover, *Six Mexican Workers* says nothing about specificity in notice

11  programs or involvement of the defendant in the choice of *cy pres* recipients, as the *cy pres*

12  proposal in *Six Mexican Workers* followed a trial, not a settlement.

13    *Specificity.*   The Settlement Agreement explicitly states that the money will go to

14  "existing organizations focused on Internet privacy policy or privacy education."   SA §3.4(a).

15  Courts commonly approve settlements that identify *cy pres* recipients in this manner.[15]   No

16  authority requires more specificity in describing the *cy pres* beneficiaries.   Only one objector

17  cites a case for this proposition, *see* Cope at 6 (*citing In re Compact Disc Minimum Adverterised*

18  *Price Antitrust Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)), but the case he cites does not do the

19  work he wishes.   The settlement in that case stated that unused funds could be "contributed to one

20  or more music-related charities," and it stipulated that these could be charities "that the parties

21

22
F.3d 571 (9th Cir. 2010), *cert. granted*, 79 U.S.L.W. 3128 (U.S. Dec. 6, 2010) (No. 10-277).

23    [15] *See, e.g. In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 30 (1st Cir.
24  2009) (affirming approval of settlement in which up to $10 million went to "'mutually acceptable
   charitable organizations funding cancer research or patient care' that the court would approve in
   the future") (quoting settlement agreement); *Cervantez v. Celestica Corp.*, No. EDCV 07-729-
25  VAP (OPx), 2010 WL 2712267 (C.D. Cal. July 6, 2010) (stating that unclaimed funds would be
   "donated to a charity mutually agreed-upon by the parties, subject to Court approval") (final
26  approval granted Nov. 1, 2010, Dkt. No. 202); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-
   01413-W-AJB, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (granting final approval to
27  settlement providing for a "*cy pres* award totaling $197,970 to one or more mutually agreed-upon
   organizations") *and Bellows v. NCO Fin. Sys., Inc.*, 2009 WL 35466 (S. D. Cal. Jan 5, 2009)
28  (approving and adopting the parties' recommendations regarding *cy pres* recipients).

1  shall identify." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361,

2  2:00-MD-1361-P-H, 2005 WL 3671424 at *1 (D. Me. June 10, 2005) (quoting the Amended

3  Stipulation of Settlement).   When the time came to undertake that task, the judge ordered the

4  parties to identify and describe the *cy pres* recipients with some specificity *to him. Id. See also*

5  *Compact Disc,* 370 F.Supp.2d at 323.   There is nothing to suggest that the court ordered the

6  parties to *tell the class* who the *cy pres* recipients would be.

7       *Defendant Involvement.*   There is no merit to the contention that the defendant cannot be

8  involved in the selection of *cy pres* recipients.    Objector Jackson cites one sentence in *Six*

9  *Mexican Workers* for the proposition that the defendant has no interest in the distribution of the

10  plaintiffs' damages.   *See* Jackson Obj. at 12 (citing Six *Mexican Workers,* 904 F.2d at 1307).  *Six*

11  *Mexican Workers* involved *cy pres* distribution of unclaimed funds following a trial and entry of

12  final judgment.  *Id.* at 1304.  It is therefore inapposite to the selection of *cy pres* recipients in the

13  settlement context.   Courts regularly approve settlements in which the parties mutually determine

14  the *cy pres* recipients, *see supra* note 15, and no authority prohibits this practice.

15  **III.     CLASS COUNSEL'S FEE REQUEST IS REASONABLE**

16       Class Counsel have fully briefed their entitlement to fees.  *See* Notice of Motion; Class

17  Counsel's Application for Attorneys' Fees and Reimbursement of Expenses (Dec. 20, 2010)

18  (Dkt. No. 65).   Some objectors who were dissatisfied with the Settlement argued against the fee

19  request for that reason, though otherwise few class members registered any specific objection to

20  it.  If the Court agrees that the Settlement should be approved, a fee of 25% of the Settlement

21  Fund, embodying a multiplier well under 2, is – as fully briefed in the Fee Petition – fair,

22  reasonable, and well-justified.  *Id.*

23                                 **CONCLUSION**

24       Class Counsel have proposed a Settlement that will create one of the largest Internet

25  privacy funds in history.  There are very few objections to the Settlement.  Those by lawyers are

26  almost exclusively from repeat objectors, and none are substantiated by the facts of this case.  In

27  the words of the Sixth Circuit:

28           In general the position taken by the objectors is that by merely objecting, they are
             entitled to stop the settlement in its tracks, without demonstrating any factual

1    basis for their objections and to force the parties to expend large amounts of time,
     money and effort to answer their rhetorical questions. . .  To allow the objectors to
2    disrupt the settlement on the basis of nothing more than their unsupported
     suppositions would completely thwart the settlement process.

3

4    *Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) (quoting *City of Detroit v. Grinnell Corp.*,

5    495 F.2d 448, 464 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.*,

6    Inc., 209 F3d. 43 (2d Cir. 2000)).   The final approval motion and fee application should be

7    granted.

8                                                    Respectfully submitted,

9

10   DATED:  February 2, 2011                         */s/ Gary E. Mason*
                                                      Gary E. Mason, Esq. (admitted *pro hac vice*)
11                                                    MASON LLP
                                                      1625 Massachusetts Ave., N.W., Suite 605
12                                                    Washington, D.C. 20036
                                                      Tel. (202) 429-2290
13                                                    Fax. (202) 429-2294

14   Michael F. Ram (SBN 104805)                      William B. Rubenstein (SBN 235312)
     RAM & OLSON LLP                                  1545 Massachusetts Avenue
15   555 Montgomery Street, Suite 820                 Cambridge, Massachusetts 02138
     San Francisco, California 94111                  Phone: (617) 496-7320
16   Phone: (415) 433-4949                            Fax: (617) 496-4865
17   Fax: (415) 433-7311

18   Peter N. Wasylk (pro hac vice)                   Andrew S. Kierstead (SBN 132105)
     LAW OFFICES OF PETER N. WASYLK                   LAW OFFICE OF ANDREW KIERSTEAD
19   1307 Chalkstone Avenue                           1001 SW 5th Avenue, Suite 1100
     Providence, Rhode Island 02908                   Portland, Oregon 97204
20   Phone: (401) 831-7730                            Phone: (508) 224-6246
21
     Peter W. Thomas                                  Michael D. Braun (SBN 167416)
22   THOMAS GENSHAFT, P.C.                            BRAUN LAW GROUP, P.C.
     0039 Boomerand Rd, Ste 8130                      12304 Santa Monica Blvd., Suite 109
23   Aspen, Colorado 81611                            Los Angeles, CA 90025
     Phone: (970) 544-5900                            Phone: (310) 836-6000
24
25   Donald Amamgbo                                   Reginald Terrell, Esq.
     AMAMGBO & ASSOCIATES                             THE TERRELL LAW GROUP
26   7901 Oakport St., Ste 4900                       P.O. Box 13315, PMB # 149
     Oakland, California 94261                         Oakland, California 94661
27

28

---

1

Jonathan Shub (SBN 237708)                        Christopher A. Seeger
SEEGER WEISS LLP                                   SEEGER WEISS LLP

2

1818 Market Street, 13th Floor                     One William Street

3

Philadelphia, Pennsylvania 19102                   New York, New York
Phone: (610) 453-6551                              Phone: (212) 584-0700

4

Lawrence Feldman                                   Eric Freed (SBN 162546)

5

LAWRENCE E. FELDMAN & ASSOC.                       FREED & WEISS LLC
423 Tulpehocken Avenue                             111 West Washington Street, Ste 1311

6

Elkins Park, Pennsylvania 19027                    Chicago, IL 60602
Phone: (215) 885-3302                              Phone: (312) 220-0000

7

8

Howard G. Silverman
KANE & SILVERMAN, P.C.

9

2401 Pennsylvania Ave, Ste 1C-44
Philadelphia, PA 19130

10

Phone: (215) 232-1000

11

*Attorneys for Plaintiffs and*

12

the Proposed Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 10-00672-JW – REPLY MEMORANDUM IN SUPPORT OF [1] MOTION FOR ORDER          15
GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND
APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL AND OF [2] CLASS COUNSEL'S
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES