MARC ROTENBERG[1] (to be admitted pro hac vice)
rotenberg@epic.org
JOHN VERDI[2]
GINGER MCCALL[3]
**Electronic Privacy Information Center**
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

PHILIP S. FRIEDMAN (California Bar No. 131521)
psf@consumerlawhelp.com
**Friedman Law Offices, PLLC**
2401 Pennsylvania Ave., NW
Suite 410
Washington, DC 20037
Telephone: (202) 293-4175

*Attorneys for the Cy Pres Applicant
the Electronic Privacy Information Center*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION | ) ) ) | Case No. 5:10-CV-00672-JW |
| This Pleading Relates To: | ) ) ) | ***CY PRES* APPLICANTS' OBJECTION TO CLASS COUNSEL'S PROPOSED *CY PRES* DISTRIBUTION** |
| ALL CASES | ) ) | |

Pursuant to the Court's February 16, 2011 Order (Dkt. No. 117), the Electronic Privacy Information Center ("EPIC") respectfully files this objection to Class Counsel's March 25, 2011 submission (Dkt. No. 119) on behalf of itself, the Center for Digital

---

[1] Mr. Rotenberg is barred in the District of Columbia, the Commonwealth of Massachusetts, the U.S. Supreme Court, and several federal Circuits Courts.
[2] Mr. Verdi is barred in the District of Columbia and the State of New Jersey.
[3] Ms. McCall is barred in the State of Pennsylvania.

Democracy, Consumer Action, Patient Privacy Rights, Privacy Activism, the Privacy Rights Clearinghouse, U.S. PIRG, and the World Privacy Forum.

All of the objecting organizations have well-established programs focused on Internet privacy. All of the objecting organizations submitted timely applications to the Rose Foundation for the "Google Buzz Privacy Settlement: Cy Pres Fund Application Process" as per the Rose request received on February 28, 2011. All of the objecting organizations have previously received *cy pres* awards in similar matters concerning Internet privacy. However, none of the objecting organizations were designated to receive funds in the submission of Class Counsel presented to the Court. Class Counsel proposed instead to distribute the majority of *cy pres* funds to organizations that are currently paid by Google to lobby for or to consult for the company, which is the defendant in this matter. This is contrary to the interests of the Class. It is the objecting organizations and not the organizations proposed by Class Counsel that would most directly represent the interests of the Class.

For the reasons set forth below, EPIC and the objecting organizations respectfully request that the Court review the applications of the undersigned organizations as submitted, consider additional relevant factors set forth below, and revise the *cy pres* distribution as referenced in Appendix 1 so as to protect the interests of the Class. *See* Appendices 1-2.

**Standard Governing *Cy Pres* Distributions**

A court must carefully consider settling parties' choice of a *cy pres* recipient. Although the overarching standard by which a judge should review a settlement is whether the settlement is fair, reasonable, and adequate, "where *cy pres* is considered, it

will be rejected when the proposed distribution fails to provide the 'next best' distribution." *see Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990); *see also* American Law Institute, Principles of the Law of Aggregate Litigation, § 3.07 (2010) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class."). Moreover, *cy pres* funds "should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated. *In re Airline Ticket Comm'n Antitrust Litigation*, 307 F.3d 679, 682 (8th Cir. 2002).

**The Objecting Organizations and their Applications**

The Electronic Privacy Information Center ("EPIC") was established in 1994 to focus public attention on emerging civil liberties issues and to protect privacy, the First Amendment, and constitutional values. For more than sixteen years, EPIC has remained the leading advocate in the United States for Internet users' privacy rights. EPIC promotes Internet users' privacy rights before Congress, federal agencies, and the courts. EPIC educates consumers through EPIC's websites, print publications, and public education events. EPIC pursues a well-established, broad-based, widely regarded, and effective program that protects privacy, educates Internet users, and directly advances the interests of Class members. EPIC requested $1,750,000 from the Settlement Fund for nine projects that would directly benefit the Class through established Internet privacy education and policy programs, including ongoing support for EPIC.ORG and PRIVACY.ORG, two of the most popular Internet privacy web sites in the world. *See*

Appendix 3. EPIC received $200 in employee matching contributions from Google in 2010 but otherwise receives no support from the corporation. Class Counsel excluded EPIC from the proposed *cy pres* distribution.

The Center for Digital Democracy ("CDD") was established in 2001. CDD is one of the leading consumer privacy organizations in the United States. CDD has been at the forefront of research, public education, and advocacy on protecting privacy in the digital age. CDD requested $450,000 from the Settlement Fund for three projects: "Protecting Consumer Privacy in Sensitive Financial Transactions Online," "Protecting Consumer Privacy in the Online Pharmaceutical Marketplace," and "Protecting the Privacy of the Internet's Most Vulnerable Users." *See* Appendix 4. The CDD does not take money from Google. Class Counsel excluded CDD from the proposed *cy pres* distribution.

Consumer Action ("CA") has been a champion of underrepresented consumers nationwide since 1971. CA has included Internet privacy as one of its five core issues since 2002. CA requested $1,250,000 from the Settlement Fund to support a three-year Internet privacy project including: consumer education publications, training of CBO staff, website enhancements, a mini-grants program, and increased policy work. *See* Appendix 5. The CDD does not take money from Google. Class Counsel excluded CDD from the proposed *cy pres* distribution.

Patient Privacy Rights Foundation ("PPR") was established in 2004. PPR works to empower individuals and prevent widespread discrimination based on health information using a grassroots, community organizing approach. Health information is the most sensitive information on the Internet and PPR is the only organization dedicated to educating the public about Internet health privacy issues. PPR educates consumers,

4

champions smart policies, and exposes and holds industry and the government accountable. PPR requested $643,000 from the Settlement Fund for the first ever public forum on Internet health privacy issues, "Summit on the Future of Health Privacy," to expand its Public Outreach Program, enhance other ongoing programs, and to create and oversee a Privacy Speakers' Bureau. *See* Appendix 6. PPR does not take money from Google. Class Counsel excluded PPR from the proposed *cy pres* distribution.

Privacy Activism ("PA"), incorporated in 2001, has focused primarily on online consumer privacy issues, raising public understanding of complex questions about privacy, and helping people make informed choices. PA requested $153,000 from the Settlement Fund for development of mobile applications, including "Privacy Tips" and the "Privacy App." *See* Appendix 7. PA does not take money from Google. Class Counsel excluded PA from the proposed *cy pres* distribution.

The Privacy Rights Clearinghouse ("PRC") is a nonprofit consumer education and advocacy organization, established in 1992, and based in San Diego, California. It has a national presence. The PRC requested $265,000 from the Settlement Fund for continued support for online privacy programs, covering such topics as social networking, security breaches, employee monitoring, anti-spam resources, children's online safety, children's online privacy, online shopping, online job scams, smartphones, and online privacy for nonprofits. *See* Appendix 8. The PRC does not take money from Google. Class Counsel excluded PRC from the proposed *cy pres* distribution.

U.S. PIRG ("PIRG"), the federation of state Public Interest Research Groups, stands up to powerful special interests on behalf of the American public, working to win concrete results for Americans' health and well-being. With a strong network of

researchers, advocates, organizers and students in state capitols across the country, PIRG takes on the special interests on issues, including consumer privacy rights, where these interests stand in the way of reform and progress. PIRG requested $1,000,000 from the Settlement Fund for a two-year grant to educate consumers about safeguarding their personal information on the Internet and to conduct research into rapidly evolving Internet privacy issues. *See* Appendix 9. PIRG does not take money from Google. Class Counsel excluded PIRG from the proposed *cy pres* distribution.

The World Privacy Forum ("WPF"), established in 2003, is a non-profit, non-partisan 501 (c)(3) public interest research and consumer education group focused on conducting in-depth research and consumer education in the area of privacy, technology, and the Internet. WPF's mission is to provide substantive research and consumer information that documents and analyzes critically important privacy issues and to provide consumer information and educational support in the area of privacy. The WPF requested $450,000 to support core operational program of Consumer Internet Privacy education and assistance by offering phone, email, and web assistance to the Class, conducting policy work that will help improve privacy choices for the Class, and supporting research and consumer guides specifically to educate and assist the Class with resolving Internet privacy issues and challenges. *See* Appendix 10. The WPF does not take money from Google. Class Counsel excluded WPF from the proposed *cy pres* distribution.

**EPIC Previously Filed the Complaint before the Federal Trade Commission on which Class Counsel has relied**

On February 16, 2010, EPIC filed a complaint with the FTC highlighting several aspects of the Google Buzz service that threatened Gmail users' privacy. Appendix 11;

*see also* Appendix 12. The complaint focused on the unfair and deceptive trade practices of Google with respect to Google's transformation of an email service to a social networking service without offering Gmail users meaningful control over their information or opt-in consent. The complaint argued that Google's change in business practices and service terms violated user privacy expectations, diminished user privacy, contradicted Google's own privacy policy, and may have also violated federal wiretap laws.

On March 30, 2011, the FTC announced settlement of its charges concerning Google Buzz. Federal Trade Commission, *FTC Charges Deceptive Privacy Practices in Google's Rollout of Its Buzz Social Network*, http://ftc.gov/opa/2011/03/google.shtm attached at Appendix 13. The Commission found that Google "used deceptive tactics and violated its own privacy promises to consumers when it launched [Buzz]" and stated EPIC's Complaint provided the basis for the Commission's investigation. *Id*. ("Google's data practices in connection with its launch of Google Buzz were the subject of a complaint filed with the FTC by the Electronic Privacy Information Center shortly after the service was launched.").

There has never been, nor is there likely to be, a *cy pres* applicant whose interests are more aligned with those of the Class member or who is more deserving of an allocation from a settlement fund.

**The organizations excluded from the Submission of Class Counsel have previously worked together to effectively protect the interests of Internet users**

The organizations excluded from the Submission of Class Counsel have frequently cooperated to protect privacy rights of Internet users. For example, in June 2008, EPIC, WPF, PRC, and others sent a letter to Google demanding that the company

comply with California law and place a prominent link to its privacy policy on its homepage. EPIC, WPF, and PRC were successful in this effort, and, within weeks, a "privacy" link appeared on Google's homepage.

In November 2008, EPIC and PPR sent a letter to Google CEO Eric Schmidt pointing out the privacy implications of Google's Flu Trends web tool. EPIC and PPR pointed out the sensitivity of medical term internet searches and the inadequacies of data anonymization.

**The organizations excluded from the Submission of Class Counsel have been routinely selected in other Cy Pres Settlements**

As a result of *Mirfasihi v. Fleet Mortgage Corp.*, 551 F.3d 682 (7th Cir. 2008), *In re ATI Tech. HDCP Litigation,* and *In re iPod nano Cases*, No. 06-1754 (N.D. Cal. filed Apr. 18, 2006), EPIC has received a substantial *cy pres* awards in support of its work on consumer privacy. CDD and PIRG also received substantial *cy pres* awards in the iPod nano litigation.

**The organizations excluded from the Submission of Class Counsel have been acknowledged by other federal courts for their defense of Internet user privacy**

In *Mirfasihi v. Fleet Mortgage Corp.*, a consumer privacy class action case, Judge Lefkow acknowledged EPIC as "a public interest research center devoted to privacy education and protection" and explicitly approved an award to the organization. *Mirfasihi v. Fleet Mortgage Corp.*, No. 01 C 722, 2007 WL 2066503 at *2 (N.D. Ill. July 17, 2007) *aff'd,* 551 F.3d 682 (7th Cir. 2008).

In the recent decision regarding Google Books Settlement, Judge Denny Chin noted EPIC's work on behalf in Internet users. *The Authors Guild, Inc., et al. v. Google Inc.*, Case No. 05 CV 8136, slip op. at 13 (S.D.N.Y. 2009). In his opinion, Judge Chin

stated that "the Electronic Privacy Information Center… contend[s] that the ASA raises significant privacy issues, as the digitization of books would enable Google to amass a huge collection of information, including private information about identifiable users, without providing adequate protections regarding the use of such information." Judge Chin concluded that Google should incorporate "certain additional privacy protections." Slip op. at 39-40.

**The Class Counsel Submission**

The majority of funds in the *cy pres* allocation set forth in the submission of Class Counsel would be allocated to organizations that currently receive support from Google for lobbying, consulting, or similar services. Six of the twelve groups designated by Class counsel were funded by Google last year. Plaintiffs' reply re Motion to Approve Consent Judgment, Ex. B (Dkt. No. 119) at 4-6, 10. Class counsel proposes that these Google-funded groups receive $3,315,000 of the *cy pres* funds in this matter, accounting for 54% of the total distribution. *Id*; Dkt. No. 119 at 1.

Virtually none of the organizations receiving funds in the proposed *cy pres* settlement showed any interest in the circumstances of Class members prior to the announcement of the *cy pres* settlement in this matter.

**Conclusion**

The interests of Class members would best be served by supporting those organizations that are willing to stand up for the interests of Class members. EPIC has a particularly strong claim that its successful complaint to the Federal Trade Commission regarding the Google Buzz matter has done far more to advance the interests of the Class than has any other party. Class Counsel should not be rewarded for structuring a *cy pres*

9

settlement that encourages organizations to stand by quietly while others do the actual work of safeguarding Internet privacy.

                          Respectfully submitted,

                          _____/s/ *Philip S. Friedman*_____
                          PHILIP S. FRIEDMAN
                          (California Bar No. 131521)
                          psf@consumerlawhelp.com
                          **Friedman Law Offices, PLLC**
                          2401 Pennsylvania Avenue, NW
                          Suite 410
                          Washington, DC 20037
                          Telephone: (202) 293-4175

                          _____/s/ *Marc Rotenberg*_____
                          MARC ROTENBERG[4] (to be admitted *pro hac vice*)
                          JOHN VERDI[5]
                          GINGER MCCALL[6]
                          **Electronic Privacy Information Center**
                          1718 Connecticut Avenue, N.W.
                          Suite 200
                          Washington, D.C. 20009
                          (202) 483-1140 (telephone)
                          (202) 483-1248 (facsimile)
                          efiling@epic.org (email)
                          *Attorneys for the Cy Pres Applicant*
                          *the Electronic Privacy Information Center*

Dated: March 30, 2011

---

[4] Mr. Rotenberg is barred in the District of Columbia, the Commonwealth of Massachusetts, the U.S. Supreme Court, and several federal Circuits Courts.
[5] Mr. Verdi is barred in the District of Columbia and the State of New Jersey.
[6] Ms. McCall is barred in the State of Pennsylvania.