Joshua R. Furman, Bar No. 225461
jrf@furmanlawyers.com
JOSHUA R. FURMAN LAW CORP.
9663 Santa Monica Boulevard, No. 721
Beverly Hills, California 90210
Telephone: (310) 809-3016
Facsimile: (310) 861-0449
*Attorney for Plaintiff-Objector,*
Jon M. Zimmerman

Jeffrey P. Harris
Alan J. Statman
Melinda S. Nenning
STATMAN, HARRIS & EYRICH, LLC
3700 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2666
Facsimile: (513) 621-4896
*Attorneys for Plaintiff-Objector,*
Alison Jackson

Daniel A. Osborn, Bar No. 132472
OSBORN LAW, P.C.
295 Madison Avenue, 39th Floor
New York, New York 10017
Telephone: (212)725-9800
Facsimile: (212) 725-9808
*Attorney for Plaintiff-Objector,*
Tanya Rudgayzer

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION | Case No.: CV 10-00672 JW<br><br>[Hon. James Ware, Courtroom 8]<br><br>**OBJECTIONS TO PROPOSED ORDER AND FINAL JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES** |

Plaintiff-Objectors JON M. ZIMMERMAN, ALISON JACKSON, and TANYA RUDGAYZER, by and through their respective counsel above (hereinafter, collectively, "Objectors"), object to the Proposed Order and Final Judgment Granting Final Approval of Class Action Settlement and Awarding Attorneys' Fees as follows:

### A. Proposed *Cy Pres* Recipients Include Primarily Industry-Supported Organizations That Receive Substantial Funding From Defendant

Objectors appreciate the need for a balanced selection of *cy pres* recipients. However, in the arena of online privacy, it is extremely important to note that there is a striking difference between the advocacy of groups that receive substantial industry funding, and the groups that do not receive substantial industry funding.

There are very few national organizations truly focused on online privacy, and fewer still that play a significant role in public policy and consumer protection actions directed at protecting privacy rights from commercial—not governmental—interests. While both industry-funded and non-industry-funded groups are potentially worthy candidates for funding many reasons, we believe it is imperative for the purposes of the settlement and the benefit of the class that organizations which typically do not receive substantial industry funding be apportioned the bulk of the funding in this case.

To that end, there are several facts regarding the *cy pres* recipients proposed by Class Counsel that raise red flags—both in terms of the information that Class Counsel has provided to the Court and the information that Class Counsel has omitted.

First, there are only 12 organizations selected, while over 77 applications were received. (Class Counsel's Submission Brief, p. 1:7–13.) In addition, some of the most prolific and reputable consumer privacy organizations have been

omitted from the list without explanation. While Objectors applaud the inclusion of the Electronic Frontier Foundation and appreciate the value of organizations like the Center for Democracy and Technology, the most active and long-standing online privacy organization in the nation was omitted, the Electronic Privacy Information Center. In addition, applicants with missions that would directly benefit the class were omitted, including the Center for Digital Democracy. Objectors are informed that both of these organizations applied for funding in this matter. These are but two of the worthwhile, focused organizations that applied for *cy pres* funding and were omitted by Class Counsel.

It also appears from Class Counsel's filing that Defendant was involved in deciding which nominees to submit to the Court. This participation likely played a role in the omission of the groups identified above, because Defendant has applied pressure on the Rose Foundation (utilized by Class Counsel here) in the past to direct *cy pres* funding away from similar groups.[1]

In addition, Objectors are concerned that Defendant funds a large portion of the existing budget of many of these groups, and often provides funding in excess of the total budgets reported for online privacy programs. Many of the groups are otherwise extremely well-funded or broad-based organizations that have a number of programs not related to consumer privacy online.

Finally, many of these groups, or the institutions with which they are affiliated, receive funding from Defendant or have other entanglements that were not reported to the Court. Publicly available information reveals the following:

<u>Berkley Center for Law & Technology</u> reports "0" contributions from Defendant, but Google, Inc. is listed as a current "Corporate Benefactor" of the

---

[1] Wendy Davis, *Google Tries to Kibosh Funding of Critic*, MediaPost News, Online Media Daily (Feb. 25, 2009) available at http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=100929.

Center (http://www.law.berkeley.edu/bcltsponsors.htm). In addition, the Center lists law firm WilmerHale as a "Benefactor;" the firm represents Google. Google is also a sponsor of the 2010 "Privacy Law Scholars Conference" convened by the Center and George Washington University Law School (http://docs.law.gwu.edu/facweb/dsolove/PLSC/).

<u>Carnegie Mellon, CyLab Usability, Privacy & Security Lab</u> reports funding from Defendant, but fails to report the access to Google "tools, technologies, and expertise" included with at least one of the grants it provided (http://research.google.com/university/relations/focused_research_awards.html).

<u>Indiana University, Center for Applied Cybersecurity Research</u> reports "0" Defendant funding, but its director (http://www.fredhcate.com/affiliations.shtml) is also a senior policy advisor for the Center for Information Policy and Leadership, which does receive Google money (http://www.hunton.com/Resources/Sites/general.aspx?id=342).

<u>Stanford Center for Internet & Society</u> receives so much money from Google (over 50 percent of its budget) that it has actually agreed to refrain from all litigation involving Google (http://cyberlaw.stanford.edu/about). How it can reconcile this position with being a further recipient of Google funding in this lawsuit is unexplained. However, it is clear that an organization that bars itself from being critical of Google cannot serve the class interest in a case like this.

The above concerns are by no means an exhaustive list of the hidden conflicts of interest presented by Class Counsel's selections. Objectors raise these issues before the Court not to attack these organizations, many of which do important work, but to heighten the Court's awareness of the political landscape from which the nominees were selected.

**B. Class Counsel Improperly Sought Defendant's Approval Prior to Submitting the List of *Cy Pres* Recipients to the Court**

Objectors also strongly question the basis for Defendant's involvement in

the selection process that resulted in the 12 nominees anointed by Class Counsel. Objectors respectfully urge the Court to review all applications provided to Class Counsel and not substitute Class Counsel's Defendant-influenced judgment in deciding which *cy pres* nominees to fund.

Pursuant to the original, flawed settlement agreement—to which Objectors continue to strenuously object—Class Counsel and Google were to mutually agree on the *cy pres* recipients. (Settlement Agreement, ¶ 3.4(b).) Objectors argued at length that any such mystery *cy pres* award was improper (E.g., Zimmerman Brief [Doc. No. 83], pp. 14–18; Jackson Brief [Doc. No. 74], pp. 9–10; Rudgayzer Brief [Doc. No. 80] pp. 11–12), and that the settlement agreement exhibited the hallmarks of a collusive settlement.

These matters were argued at the hearing on final approval and Court issued its Order of February 16, 2011, thereafter. For Objectors' part, it seems clear that while Defendant was permitted to make nominations of *cy pres* recipients, the Court did not intend for Defendant to be involved in the final selection of the nominees. Objectors maintain that permitting Google to do so violates the spirit of the February 16, 2011 Order and the purposes of the settlement. Particularly given Defendant's pattern of attempting to exert control over *cy pres* recipients in the past (see, e.g., *supra*, footnote 1), the Court should be vigilant against Defendant's influence here and the detriment to the class interests.

As noted above, in order to avoid Defendant's improper influence on the *cy pres* recipients, Objectors respectfully request the Court order Class Counsel to divulge all applicants for the *cy pres* funds, the details surrounding its selection procedure, including communications with Defendant, and select *cy pres* recipients from all applicants or other organizations without regard for Class Counsel and Google's suggestions.

### C. Objectors Reiterate Objections to the Pending Proposed Order

Objectors continue to assert that the entire settlement is improper for the

1  reasons set forth in their previous briefing and argument. This objection to
2  Proposed Order and Final Judgment is not offered as a waiver of any previous
3  objection, but only to express Objector's continuing concerns on behalf of the
4  class membership.
5  Specifically, Objectors continue to assert that, in addition to the above, the
6  relief in the settlement is inadequate and illusory, that there are defects in the
7  notices and the breadth of the class definition (including, but not limited to, the
8  inclusion of personal injury and other actual damage claims in the release), that *cy*
9  *pres*-only distribution is improper in a class action for statutory damages resulting
10  from violations of federal privacy statutes, and that the settlement appears to
11  demonstrate collusion between Class Counsel and Defendant.
12  ///
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In light of the foregoing, Objectors respectfully request the Court reject the settlement as previously proposed, or, in the alternative, at least select the *cy pres* recipients without regard for the nominees culled by Class Counsel and Defendant from the complete pool of applicants.

Dated: March 30, 2011        JOSHUA R. FURMAN LAW CORP.


By:   /s/ Joshua R. Furman
Joshua R. Furman
*Attorney for Plaintiff-Objector,*
Jon M. Zimmerman


STATMAN, HARRIS & EYRICH, LLC


By:   /s/ Jeffrey P. Harris
Jeffrey P. Harris
Alan J. Statman
Melinda S. Nenning
*Attorneys for Plaintiff-Objector,*
Alison Jackson

OSBORN LAW, PC


By:   /s/ Daniel A. Osborn
Daniel A. Osborn
*Attorneys for Plaintiff-Objector,*
Tanya Rudgayzer