Gary E. Mason (*pro hac vice*)
gmason@masonlawdc.com
Donna F. Solen (*pro hac vice*)
dscolen@masonlawdc.com
MASON LLP
1625 Massachusetts Ave., NW
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Michael F. Ram (SBN 104805)
mram@ramoson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

William B. Rubenstein (SBN 235312)
rubenstein@law.harvard.edu
1545 Massachusetts Avenue
Cambridge, Massachusetts 02138
Telephone: (617) 496-7320
Facsimile: (617) 496-4865

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE BUZZ USER PRIVACY LITIGATION<br><br>This Pleading Relates To:<br><br>ALL CASES | Case No. 5:10-CV-00672-JW<br><br>**CLASS COUNSEL'S RESPONSE TO (1) *CY PRES* APPLICANTS' OBJECTION TO CLASS COUNSEL'S PROPOSED *CY PRES* DISTRIBUTION AND TO (2) OBJECTIONS TO PROPOSED ORDER AND FINAL JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES** |

On February 16, 2011 this Court entered an Order in the above-captioned matter directing the parties to solicit nominations for *cy pres* organizations and ordering Class Counsel to consolidate the list and to submit the organization and distribution amount nominations to this Court, with specific information about each, by March 28, 2011. *See* Order Re Nomination Process for *Cy Pres* Recipients ("Order"), Dkt. 117, February 16, 2011. The parties carried out each of the directives contained in the Order. With the assistance of the Rose Foundation, the parties solicited and collectively received 77 applications for *cy pres* funding seeking a total of more than $35 million. Pursuant to the Settlement Agreement, counsel for the parties negotiated a list of final nominations and amounts. Class Counsel then consolidated the list and submitted the organization and distribution amount nominations to the Court for approval on March 25, 2011, attaching all of the requisite information ordered by the Court. *See* Class Counsel's Submission of *Cy Pres* Organizations and Distribution Amounts for Court Approval ("Counsel's Submission"), Dkt. 119, March 25, 2011, and Exhibits A & B.

The parties received requests for much more funding than there is money available under the settlement. Many deserving organizations applied, and the parties necessarily made some difficult decisions to determine the slate of *cy pres* nominations Class Counsel would submit to the Court. In submitting the proposed nomination list to the Court, the parties complied with (1) all aspects of this Court's Order of February 16; (2) the terms of the Settlement Agreement, as each nominee is an existing organization focusing on Internet privacy policy or privacy education agreed to by the parties, *see* Settlement Agreement, ¶ 3.4; and (3) the requirements of law, as the nominees are all organizations that conduct Internet privacy research and education, and each therefore pursues goals closely aligned with the interests of the class. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1303, 1308 (9th Cir. 1990). As set forth in Class Counsel's March 25, 2011 filing, Class Counsel have submitted to this Court a list of nominees that is fair, reasonable, and adequate, and funding Class Counsel's nominations would promote the interests

of the class.

Among the 65 groups that the parties did not recommend for funding, 8 have filed a pleading objecting to Class Counsel's nominations. *See Cy Pres* Applicants' Objection to Class Counsel's Proposed *Cy Pres* Distribution ("Applicants' Objection"), Dkt. 121, March 30, 2011. Additionally, three class members who previously objected to the Settlement have filed an additional objection to the *cy pres* nominations. Objections to Proposed Order and Final Judgment Granting Final Approval of Class Action Settlement and Awarding Attorneys' Fees ("Class Member Objection"), Dkt. 122, March 30, 2011. Both objections contend that Class Counsel should have nominated a different set of organizations for *cy pres* funding; the 8 disappointed applicants propose that 100% of the available funds should be distributed to their 8 groups alone and none should go to any of the 12 groups nominated by Class Counsel or to any other group. *See* Applicants' Objection, Appendix 1. The objectors argue (1) that the nominated groups suffer two harms: that they are too closely aligned with Google because some of them received funding from Google in 2010[1] and that they are ineffectual in addressing internet privacy;[2] (2) that awards to the nominated groups would violate some legal norm; and (3) that their alternative slate (in the case of the Applicant Objectors) is a better set of nominees. Each of these arguments is meritless and thus objectors do not come close to meeting their burden of proving any assertions they make in arguing against the reasonableness of settlement.[3]

---

[1] *See, e.g.,* Applicants' Objection, at 9 ("Six of the twelve groups designated by Class Counsel were funded by Google last year"); Class Member Objection, at 3 ("many of these groups, or the institutions with which they are affiliated, receive funding from Defendant or have other entanglements that were not reported to the Court.").

[2] Applicants' Objection at 9 ("Virtually none of the organizations receiving funds in the proposed *cy pres* settlement showed any interest in the circumstances of Class members prior to the announcement of the *cy pres* settlement in this matter,"); *id.* at 9-10 (stating that the nominated groups "stand by quietly while others do the actual work of safeguarding Internet privacy").

[3] *See U.S. v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990) ("[W]e have usually imposed

Case No. 10-00672-JW – CLASS COUNSEL'S RESPONSE TO (1) *CY PRES* APPLICANTS' OBJECTION TO CLASS COUNSEL'S PROPOSED *CY PRES* DISTRIBUTION AND TO (2) OBJECTIONS TO PROPOSED ORDER AND FINAL JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES

## I.
## THE NOMINATED GROUPS ARE WELL-SITUATED TO PURSUE THE CLASS'S INTERESTS

Objectors' contentions that the nominated groups are too close to Google or ineffectual are both unsupported and unsupportable. The *cy pres* organizations nominated by Class Counsel are not unusually connected to Google. Six of the 12 nominated organizations received no funding from Google in 2010; of the other 6 that did receive funding, four received a negligible amount of their annual funding from Google (Berkman Center, 5.6% of its annual budget; Brookings Institution, less than two-tenths of one percent of its annual budget; Center for Democracy & Technology, 9% of its annual budget; Electronic Frontier Foundation ("EFF"), less than one tenth of one percent of its annual budget). Only two recipients (Carnegie Mellon and Stanford) received what appears to be a significant budgetary amount from Google, but of course that is only if the Google contribution for 2010 is judged in terms of the unit receiving the grant and not in terms of the university's budget; obviously, Google funds but a minute fraction of these major universities' expenses and has little, indeed no, ability to control what these universities do or say.

Objectors not only incorrectly describe the extent of the nominated groups' Google funds, they also inaccurately report what those funds are used for, stating that the six groups that received 2010 funds from Google "are currently paid by Google to lobby for or to consult for the company." Applicants' Objection at 2; *id*. at 9. Objectors do not offer any support for this statement, and they cannot: there is no basis whatsoever to draw this conclusion. None of these organizations is paid to lobby or consult with Google.

---

the burden on the party objecting to a class action settlement"); *Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.").

Indeed, Class Counsel's nominees have repeatedly demonstrated their independence, not least by publishing materials and taking advocacy positions adverse to Google when they believed doing so would support the privacy interests of Internet users and consumers. Both the ACLU and EFF specifically criticized Google's launch of Buzz.[4] And the nominated groups' criticism of Google's launch of Buzz are not isolated examples. The ACLU, EFF, and Samuelson Law Clinic at Berkeley – which together account for nearly 50% of Class Counsel's proposed distribution – have done the following:

- EFF, ACLU, and the Samuelson Law, Technology & Public Policy Clinic jointly filed and argued an objection to a class settlement concerning Google's book scanning project, arguing in part that the settlement did not do enough to protect user privacy because Google may collect information on users' reading habits. See Privacy Authors and Publishers' Objection to Proposed Settlement, Authors Guild, Inc. v. Google Inc., No. 5-cv-8136-DC (S. D. N.Y. Sep. 8, 2009). The federal district court recently rejected this settlement and cited the privacy concerns raised by EFF, ACLU, and Samuelson in its order denying settlement approval. Opinion, 05-cv-8136 (DC), at 39-40 (S. D. N.Y. Mar. 22, 2011) (Dkt. 971).

- ACLU urged citizens to send letters to Google asking the company not to enter into a planned information-sharing agreement with the National Security Agency. http://www.aclu.org/blog/national-security-technology-and-liberty/tell-google-not-enter-agreement-nsa

- EFF published a warning and how-to guide for Gmail users seeking to disable the link between Google web searches and web advertising in their Gmail accounts. *See https://www.eff.org/deeplinks/2004/04/gmail-rough-guide-protecting-your-privacy*

- EFF published numerous blog posts critical of Google's privacy practices. *See, e.g. www.eff.org/deeplinks/2010/05/time-google-grow-make-open-wi-fi-privacy-mistake* (criticizing Google's accidental collection of wireless internet data while building street

---

[4]*See* Chris Conley, *Google's CEO Doesn't Get It* (Feb. 18, 2010) (ACLU post stating that Google "needs to take [the] lesson [of Buzz's launch] to heart. Instead of giving in to the temptation to leverage information that it already has about users of Google products, Google needs to recognize that it holds that information in trust for its users and respect their right to control how or whether that information is used for any other purposes" and urging readers to "keep up the pressure" by contacting Google to complain), available at: http://www.aclunc.org/issues/technology/blog/google's_ceo_doesn't_get_it.shtml; Kurt Opsahl, *Google Buzz Privacy Update* (Feb. 16, 2010) (EFF post stating that "Google leveraged information gathered in a popular service (Gmail) with a new service (Buzz), and set a default to sharing your email contacts to maximize uptake of the service. In the process, the privacy of Google users was overlooked and ultimately compromised."), available at: https://www.eff.org/deeplinks/2010/02/google-buzz-privacy-update.

view); *https://www.eff.org/deeplinks/2008/02/google-gets-healthy* (warning consumers that Google's beta project to collect personal health records might present privacy risks). The Applicant Objectors are inaccurate in characterizing the nominated groups as ones that are inordinately connected to Google.

Applicant Objectors' other swipe at the nominated slate is that it consists of groups that "stand by quietly while others do the actual work of safeguarding Internet privacy." *Id.* at 9-10. This characterization is disingenuous in light of the fact that these objectors work cooperatively with many of the nominated groups on a regular basis, conducting activities such as jointly filing amicus briefs, distributing joint press releases, participating in workshops sponsored by the nominated groups, co-authoring research, and co-signing letters to corporations and lawmakers. A partial list of these overlapping activities is attached as Exhibit A and that partial list alone contains more than 150 entries of overlapping activities among the groups. Applicant Objectors are fully aware that the nominated groups are not by-standers.

Worse than their failure to acknowledge to the Court the work of the nominated groups with which they are very familiar, the Applicant Objectors purposefully conceal this knowledge in their submission. For example, the Applicant Objectors write that:

> The organizations excluded from the Submission of Class Counsel have frequently cooperated to protect privacy rights of Internet users. For example, in June 2008, EPIC, WPF, PRC, and others sent a letter to Google demanding that the company comply with California law and place a prominent link to its privacy policy on its homepage. EPIC, WPF, and PRC were successful in this effort, and, within weeks, a "privacy" link appeared on Google's homepage.

Applicants' Objection at 7-8. What the Applicant Objectors fail to inform the Court is that among the "and others" in this effort were the nominated groups, EFF and the ACLU. *See* Letter to Eric Schmidt, CEO of Google Inc., dated June 3, 2008, available at http://www.worldprivacyforum.org/pdf/Google_Letter_June032008fs.pdf.

The Applicant Objectors' attacks on the work of the nominated groups as being either Google-connected or ineffectual are therefore both misleading and simply wrong.

## II.
## OBJECTORS PROVIDE NO LEGAL SUPPORT FOR THEIR CONCERNS

Beyond misrepresenting the nominated groups' links to Google, Objectors contend that the nominated groups are legally soiled because Google was involved in their selection[5] and/or because they previously received funds from Google.[6] Objectors have articulated no legal principle – and there is none – under which *cy pres* funds from a class settlement may not be distributed with the involvement of the defendant[7] or to organizations that have previously received charitable contributions from the defendant.[8] Last year, Google made over $150 million

---

[5] Class Member Objection, at 4-5 (asserting that the defendant should not have been involved in the selection of *cy pres* recipients).

[6] In fact, neither objection explains *why* prior receipt of funds from Google should make a group ineligible to receive *cy pres* funds. *See* Class Member Objection, at 3-4 (listing without argument nominated groups that have received charitable funding or support from Google); Applicants' Objection, at 9 (stating without argument that some nominated groups have previously received funding from Google).

[7] Courts commonly approve settlements that identify *cy pres* recipients in this manner. *See, e.g. In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 30 (1st Cir. 2009) (affirming approval of settlement in which up to $10 million went to "'mutually acceptable charitable organizations funding cancer research or patient care' that the court would approve in the future") (quoting settlement agreement); *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 WL 2712267 (C.D. Cal. July 6, 2010) (stating that unclaimed funds would be "donated to a charity mutually agreed-upon by the parties, subject to Court approval") (final approval granted Nov. 1, 2010, Dkt. No. 202); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (granting final approval to settlement providing for a "*cy pres* award totaling $197,970 to one or more mutually agreed-upon organizations") *and Bellows v. NCO Fin. Sys., Inc.*, 2009 WL 35466 (S. D. Cal. Jan 5, 2009) (approving and adopting the parties' recommendations regarding *cy pres* recipients).

[8] Indeed, courts in this circuit routinely approve *cy pres* distribution plans in which some funds go to organizations that have previously received charitable contributions from the defendant. *See, e.g., Nickel v. Bank of Am. Nat. Trust and Savings Ass'n*, No. 94-2716 (SBA), 2009 WL 1270473 (N. D. Cal. May 6, 2009) (approving plan of *cy pres* distribution in which at least two of the designated charities had previously received charitable donations from Bank of America); *compare* Declaration of Daniel Rosenthal re: Sources and Uses of the Nickel v. Bank of America Settlement Funds, No. 94-2716, Dkt. 972 (N. D. Cal. filed Apr. 30, 2009), Exhibit B (including University of San Diego and Senior Community Centers in list of *cy pres* beneficiaries), *with* "Bank of America 2003 Grants and Sponsors in San Diego", available at http://www.prnewswire.com/news-releases/bank-of-america-2003-grants-and-sponsorships-in-san-diego-total-18-million-company-provides-support-to-more-than-190-local-organizations-

Case No. 10-00672-JW – CLASS COUNSEL'S RESPONSE TO (1) *CY PRES* APPLICANTS' OBJECTION TO CLASS COUNSEL'S PROPOSED *CY PRES* DISTRIBUTION AND TO (2) OBJECTIONS TO PROPOSED ORDER AND FINAL JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES

in charitable donations, much of it distributed across a broad range of public interest and academic organizations engaged in technology-related research and education.[9] Hundreds of organizations received Google funding. There is no legal principle that categorically bars every group who received even a dollar of charitable funding from Google from receiving *cy pres* funds in this settlement, without regard to the merit of the group's proposal or whether the proposed program would advance the interests of the class.

The law requires that the *cy pres* distribution closely approximate the interests of the class, and that the settlement as a whole be fair, reasonable, and adequate. *See Six Mexican Workers*, 904 F.2d at 1308; Fed. R. Civ. Pr. 23(e). Here, Class Counsel have nominated 12 groups, each with an established record of independent service in the public interest. In compliance with this Court's Order and the Settlement Agreement, the nominations are all for established programs focusing on Internet privacy. Class Counsel's nominations are spread throughout the nation and represent a broad cross-section of advocacy, lobbying, education, and research organizations. Class's Counsel nominees approach internet privacy using a wide array of methodologies and they focus their work on disparate populations groups, including the underprivileged and the young. Class Counsel's list of nominations is fair, reasonable, and adequate, and the nominees are closely aligned with the interests of the class.

## III.
## THE OBJECTORS' PROPOSED SLATE PROVIDES NO ADVANTAGES FOR THE

---

71748812.html (University of San Diego and Senior Community Centers received charitable donations from Bank of America in 2003). *See also Zaldivar v. T-Mobile USA, Inc.*, No. 07-1695 (RAJ), 2010 WL 1611981 (W. D. Wash. Mar. 16, 2010) (granting final approval to settlement where *cy pres* funds would go to the Mobile Giving Foundation). T-Mobile has long supported the Mobile Giving Foundation by waiving texting fees for customers who make charitable donations to the Foundation via text. *See* "Frequently Asked Questions About the Mobile Giving Foundation", available at http://mobilegiving.org/?page_id=24 (listing T-Mobile USA among wireless carriers that support the Mobile Giving Foundation).

[9] *See http://www.google.org/googlers.html*

**CLASS, ONLY FOR THE OBJECTORS**

By contrast to Class Counsel's broad set of nominees, the Applicant Objectors propose a slate of nominees with these characteristics:

- Each of the 8 applicant objectors would receive funds from the settlement but no other group would.

- Each of the 8 applicant objectors would receive 100% of the money that their application sought.

- Each of the 8 applicant objectors' grants from this settlement would constitute a substantial portion of their entire annual funding – indeed four of the groups propose grants for themselves that are more than 150% of their entire 2010 budget, and only one grant would be for less than half (39%) of the group's entire 2011 budget:

| GROUP | 2011 Budget | Grant Proposed For Self | **Grant as % of 2011 Budget** |
|---|---|---|---|
| World Privacy Forum | 90,000 | 450,000 | **500%** |
| EPIC | 1,063,688 | 1,750,000 | **164%** |
| Patient Privacy Rights | 417,000 | 643,000 | **154%** |
| Center for Digital Democracy | 306,500 | 450,000 | **147%** |
| Privacy Rights Clearinghouse | 376,387 | 265,000 | **70%** |
| Privacy Activism | 223,000 | 153,000 | **69%** |
| US PIRG | 1,900,000 | 1,000,000 | **53%** |
| Consumer Action | 3,200,000 | 1,250,000 | **39%** |

The Applicant Objectors justify this self-allocation on the basis that, "Virtually none of the organizations receiving funds in the proposed *cy pres* settlement showed any interest in the circumstances of Class members prior to the announcement of the *cy pres* settlement in this matter," Applicants' Objection at 9, and that the nominated groups "stand by quietly while others do the actual work of safeguarding Internet privacy." *Id.* at 9-10. These characterizations by the Applicant Objectors are confusing in that, as noted above, the Applicant Objectors are aware of the significant privacy work done by the nominated groups. Perhaps the Applicant Objectors mean simply to limit their criticism of the nominated groups to the fact that few addressed

Google's launch of Buzz specifically. Again, as noted above, however, a number of the nominated groups did strongly criticize Google over the launch of Buzz. Moreover, what is odd about criticizing the nominated groups on the Buzz front is that this criticism applies as well, or perhaps even more, to 7 of the 8 Applicant Objectors, none of whom, as far as Class Counsel is aware, undertook any advocacy or public education work related to Buzz specifically. The lawyers at the eighth group, EPIC, elected to pursue the Buzz matter by filing a complaint with the Federal Trade Commission, a chosen route that appears not to enable the recovery of attorney's fees. Nothing, at the end of the day, distinguishes the 8 Applicant Objectors as a group among the 77 total applicants and 12 nominated groups such that the Court would be required to order their inclusion as *cy pres* recipients.

## CONCLUSION

In sum, the parties have complied with every aspect of this Court's Order, and Class Counsel have propounded a nomination list that meets the requirements of law and promotes the interests of the class. Objectors insist, perhaps inevitably, that a different slate of applicants should have been nominated. Among the 300,000,000,000,000,000,000,000 nomination slates that could be constructed with 77 different applicants and any number of possible combinations, the Applicant Objectors propose the one slate that provides 100% of the available funds to their 8 groups. Rather than indulge such attempts to micro-manage the *cy pres* selection process among the 77 applicants and nearly infinite possible slates, more of which may follow on the heels of this one, the Court's role is to ensure that the parties carefully followed the procedures set forth in its Order of February 16, and the terms of the Settlement Agreement, and that Class Counsel nominated a final slate of recipients consistent with the Class's interests. The parties have carefully followed the Court's ordered approach and Class Counsel's nominations are well-known, well-established, well-regarded privacy groups whose work is clearly in the Class's interests. The parties respectfully request that the Court, after reviewing these filings, enter the proposed Final Approval Order.

|  | Respectfully submitted, |
|---|---|
| DATED:   April 4, 2011 | /s/ Gary E. Mason |
|  | Gary E. Mason, Esq. (admitted *pro hac vice*) |
|  | MASON LLP |
|  | 1625 Massachusetts Ave., N.W., Suite 605 |
|  | Washington, D.C. 20036 |
|  | Tel. (202) 429-2290 |
|  | Fax. (202) 429-2294 |

Michael F. Ram (SBN 104805)
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Phone: (415) 433-4949
Fax: (415) 433-7311

William B. Rubenstein (SBN 235312)
1545 Massachusetts Avenue
Cambridge, Massachusetts 02138
Phone: (617) 496-7320
Fax: (617) 496-4865

Peter N. Wasylyk (pro hac vice)
LAW OFFICES OF PETER N. WASYLK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Phone: (401) 831-7730

Andrew S. Kierstead (SBN 132105)
LAW OFFICE OF ANDREW KIERSTEAD
1001 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Phone: (508) 224-6246

Peter W. Thomas
THOMAS GENSHAFT, P.C.
0039 Boomerand Rd, Ste 8130
Aspen, Colorado 81611
Phone: (970) 544-5900

Michael D. Braun (SBN 167416)
BRAUN LAW GROUP, P.C.
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Phone: (310) 836-6000

Donald Amamgbo
AMAMGBO & ASSOCIATES
7901 Oakport St., Ste 4900
Oakland, California 94261

Reginald Terrell, Esq.
THE TERRELL LAW GROUP
P.O. Box 13315, PMB # 149
Oakland, California 94661

Jonathan Shub (SBN 237708)
SEEGER WEISS LLP
1818 Market Street, 13th Floor
Philadelphia, Pennsylvania 19102
Phone: (610) 453-6551

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, New York
Phone: (212) 584-0700

Lawrence Feldman
LAWRENCE E. FELDMAN & ASSOC.
423 Tulpehocken Avenue
Elkins Park, Pennsylvania 19027
Phone: (215) 885-3302

Eric Freed (SBN 162546)
FREED & WEISS LLC
111 West Washington Street, Ste 1311
Chicago, IL 60602
Phone: (312) 220-0000

Howard G. Silverman
KANE & SILVERMAN, P.C.
2401 Pennsylvania Ave, Ste 1C-44
Philadelphia, PA 19130
Phone: (215) 232-1000

*Attorneys for Plaintiffs and
the Proposed Class*